# EXHIBIT 1

**CDK GLOBAL.**

**CDK Global, LLC**
**11809 Domain Drive**
**Austin, TX 78758**

## MASTER SERVICES AGREEMENT

Client (full legal name):

Address:

City:                                    State:                                    Zip Code:

## 1.      SCOPE OF AGREEMENT.

(a)      CDK Global, LLC ("CDK") agrees to provide Client and Client agrees to obtain from CDK, in accordance with the terms and conditions of this Agreement (which shall be deemed to include (1) any schedules ("Schedules") or addenda ("Addenda") hereto which may be executed from time to time, and (2) the Product Guide (as such term is defined below)), the following:

(i)      the services described in the Schedules (the "Services"), including any subscriptions to services provided by CDK remotely in a 'Software as a Service' ('SaaS') manner ("ASP Managed Services");

(ii)      licenses and/or sublicenses to the application software (the "Application Programs"), including any customized modifications to CDK's standard application software and any newly-created application software by CDK (the "Special Programs"), all as listed in the Schedules and which are provided by CDK  as an 'on-site' solution to be installed at Client's site ("Onsite");

(iii)      support services for the Application Programs, the Special Programs and the ASP Managed Services, to the extent that such services are specifically listed in the Schedules (collectively, the "Support Services");

(iv)      the equipment listed in the Schedules (the "Equipment") and the grant of licenses and/or sublicenses to the operating software therefor (the "Operating Programs"); and

(v)       maintenance services for the Equipment, to the extent that such services are specifically listed in the Schedules (collectively, the "Maintenance Services").

Each of the foregoing items is sometimes generically referred to herein as a "Product" or "Service", and all such items are sometimes collectively referred to herein as the "Products and Services". The Application Programs, Special Programs and Operating Programs are sometimes collectively referred to herein as the "Software". "Client", as used in this Agreement, includes the undersigned Client as well as the entities set forth on the Schedules hereto.

(b)      CDK may, from time to time, provide Client, at Client's request, with Products or Services that are not specifically covered by the Schedules hereto. The terms "Services", "Application Programs", "Special Programs", "Operating Programs", "Support Services", "Equipment" and "Maintenance Services" shall automatically be amended from time to time (as appropriate) to include any such additional Products or Services.

(c)      Client and CDK acknowledge and agree that in addition to the terms and conditions set forth in this Agreement and any Schedules or Addenda hereto, this Agreement shall also be governed by the terms and conditions of the most recent version of the CDK Global Product Guide (the "Product Guide"). Client acknowledges that it has received (or otherwise had the opportunity to review) the Product Guide prior to

executing this Agreement, and that the Product Guide (and any subsequent modifications made in accordance therewith) shall be binding upon Client. CDK agrees that: (i) no subsequent modification to the Product Guide shall modify the terms governing CDK's ability to increase fees owing by Client under this Agreement or any addendum hereto; and (ii) it shall notify Client pursuant to a CDK dealer management system ("DMS") logon alert or notification pursuant to Section 12(d) hereto when CDK makes any subsequent changes to the Product Guide, which notice will instruct Client on how it can view the modifications to the Product Guide.

(d)     To the extent that Client has purchased or licensed Products or Services that are endorsed or otherwise approved by the manufacturer(s) from which Client holds its retail franchise(s) ("OEM(s)") (such endorsement may be identified on the applicable Schedule, in the Product Guide or through CDK or OEM communications), additional terms and conditions may be imposed  by the OEM. Client agrees to comply with any such terms and conditions, whether such terms are communicated by CDK or directly by Client's OEM(s).

(e)     During the initial term of any Schedules hereto, CDK agrees that any CDK enhancements or upgrades to the Products or Services that Client has licensed on the Schedule(s) will be licensed to Client at no additional charge, except for any fees associated with training and implementation. Such enhancements or upgrades do not include future generations of the Products or Services.

## 2.    TERM OF AGREEMENT.

The term of this Agreement shall commence on the date of execution and shall continue until all Schedules hereto have completely terminated. The initial term of a particular Product or Service shall be for the period indicated in the Schedule therefor (the "Initial Term"), commencing upon substantial availability of such Product or Service to Client or, at CDK's option, after 120 days from the date of entry into the applicable Schedule for such Product or Service. Thereafter, the term shall continue on a month-to-month basis until terminated by either party on at least 30 days written notice, provided, however that any cancellations during a month-to-month term are subject to CDK's internal processes. Notwithstanding anything to the contrary herein, CDK may terminate the Schedule for a particular Product or Service at any time upon written notice to Client if CDK elects to cease providing such Product or Service on a general basis (i.e., if CDK elects to "sunset" such Product or Service). Client's and CDK's continuing obligations under this Agreement (including, without limitation, those relating to Client's payment of the charges referred to in Section 3 below and any "Confidential Information" and "Client Data" (all as defined below)) shall survive the termination of this Agreement.

## 3.    CHARGES.

(a)     The initial charges for the Products and Services shall be as set forth in the Schedules. For any Products or Services provided by CDK to Client which are not listed in the Schedules, the charges shall be as mutually agreed to by CDK and Client and shall be in addition to the charges listed in the Schedules.

(b)     CDK agrees, for a period of twelve (12) months from their respective installation dates, not to increase the charges for the Products and Services listed in the Schedules hereto. After such period and through the remainder of the respective Initial Terms, CDK agrees that the percentage increase to such monthly fees per each subsequent twelve month period shall not exceed the greater of (i) four percent (4.0%); or (ii) the sum of: (A) the percentage increase in Consumer Price Index for All Urban Consumers (CPI-U) for the United States as published by the U.S. Bureau of Labor Statistics, as compared to the immediately preceding year; plus (B) three percent (3.0%). Client acknowledges that this Section 3(b) specifically does not apply to any: (X) dealer communication system related Application Programs; (Y) Product or Service provided, directly or indirectly through CDK, by any third party (e.g., credit check services); or (Z) interfaces to third party systems.

(c)     Client will be invoiced for all freight charges and all forms, supplies and consumable items provided by CDK for utilization of all CDK services at CDK's then current prices.

(d)     Client will be invoiced for the reasonable costs CDK incurs producing Client Data in response to a third-party subpoena or other third-party legal request for Client Data.

(e)      There shall be added to all charges invoiced Client amounts equal to any and all applicable taxes, exclusive of taxes based on CDK's net income.

(f)      Client, by using any of the Products or Services, agrees to pay, within ten days after the date of the applicable invoice from CDK, the then-applicable charges therefor. All amounts which are not paid by Client within the time required for payment shall bear interest at the rate of 18% per annum compounded monthly.

(g)      Any deposit set forth in a Schedule shall be paid by Client to CDK concurrently with Client's execution of such Schedule. All deposits are non-refundable. Deposits to be applied against Equipment purchases will be first credited to Client's CDK account with any excess refunded to Client.  Deposits to be applied to Products or Services which are licensed or purchased by Client but are not installed shall be retained by CDK and shall be applied against CDK's losses. CDK may, at its option, apply Clients deposit balance to Client's final invoice relating to any terminated Products or Services.  Other types of deposits may be required by CDK as indicated by the Schedules.

## 4.      OWNERSHIP, USE AND CONFIDENTIALITY OF PRODUCTS AND SERVICES.

(a)      Client acknowledges that the Products and Services (which shall be deemed to include the databases which are part of the Products and Services, and related materials, and all copyrights, patents, trade secrets and other intellectual and proprietary rights therein and thereto) are and shall remain the exclusive and confidential property of CDK or the third parties for which CDK has obtained the right to use such Products and Services, and that all Products and Services are only licensed to Client during the term thereof.

(b)      Client agrees that it will use the Products and Services in accordance with the Product Guide and such reasonable policies as may be established by CDK from time to time as set forth in any materials furnished or made available by CDK to Client. Client assumes exclusive responsibility for its use of the Products and Services, and agrees to indemnify CDK with respect to any third party claims against CDK that arise from Client's use, misuse, sharing or transfer of the Products and Services. Client agrees that, except as otherwise permitted by CDK in writing, Client will use the Products and Services only for its own internal business purposes and will not sell or otherwise provide, directly or indirectly, any of the Products or Services, or any portion thereof, to any third party. CLIENT IS NOT AUTHORIZED TO CAUSE OR PERMIT ANY THIRD PARTY SOFTWARE TO ACCESS THE PRODUCTS AND SERVICES EXCEPT AS OTHERWISE PERMITTED BY THIS AGREEMENT.

(c)      Client shall not copy, in whole or in part, the Products or Services except to the extent expressly permitted by the Product Guide.  Client shall not make any alteration, change or modification to any of the Products and Services without CDK's prior written consent in each instance. CLIENT MAY NOT RECOMPILE, DECOMPILE, DISASSEMBLE, REVERSE ENGINEER, OR MAKE OR DISTRIBUTE ANY OTHER FORM OF, OR ANY DERIVATIVE WORK FROM, ANY OF THE PRODUCTS AND SERVICES.

(d)      Client shall treat as confidential and will not disclose or otherwise make available any of the Products and Services (including, without limitation, screen displays or user documentation) or any trade secrets, processes, proprietary data, information or documentation related thereto (collectively, the "Confidential Information"), in any form, to any person other than employees of Client with a need-to-know. Client will instruct its employees who have access to the Products, Services or the Confidential Information to keep the same confidential by using the same care and discretion that Client uses with respect to its own confidential property.  Client shall not allow access to any Products or Services by any third parties except as otherwise permitted by this Agreement. Upon the termination of a Schedule for any reason, Client shall return to CDK any and all copies of the Products and Services and the Confidential Information which are in its possession and to which such terminated Schedule relates.

## 5.      CONFIDENTIALITY OF CLIENT DATA; DATA SECURITY.

(a)      Any information created and input by Client into the Products or Services, or provided by Client to CDK for use with the Products and Services (collectively, the "Client Data") shall remain the exclusive and confidential property of Client. Except to the limited extent set forth in Section 5(d) below (or as otherwise consented to by Client), CDK shall treat as confidential and will not disclose or otherwise make available any Client Data to any person other than employees, subcontractors and suppliers of CDK with a need-to-

know and who are under proper burden of confidentiality. Client acknowledges that it retains responsibility for producing Client Data to satisfy its subpoenas and other legal requests for Client Data. Client acknowledges and agrees that CDK, in order to better secure and protect such Client Data from unauthorized access and use, may prohibit or restrict any third party access to Client's CDK DMS unless: (i) such third party has been granted approved access in, and remains in compliance with its applicable obligations to CDK, and (ii) there is no actual or perceived data security threat as determined by CDK in its reasonable determination. CDK intends to permit all third party computing service vendors in the automotive industry that meet CDK's requirements and that enter into an agreement with CDK governing access to Client's CDK DMS. Notwithstanding the foregoing, CDK may disclose any Client Data in the event it is legally required to disclose such Client Data.

(b)     CDK maintains reasonable security measures designed to: (i) prevent unauthorized access to, or loss or alteration of, Client Data; and (ii) protect Client Data consistent with applicable state and federal laws, but in no event does CDK guarantee against any unauthorized access, loss or alteration of Client Data. Unless otherwise noted in an addendum hereto or the Product Guide, CDK agrees to use commercially reasonable data backup procedures to create backups of Client Data as a part of its data backup and data safeguard procedures. If any Client Data is lost or damaged, CDK will use commercially reasonable efforts to restore the most recent copy of such Client Data; provided, however that CDK cannot guarantee that it will be able to restore or recover any such Client Data.

(c)     CDK will maintain Client Data relating to a particular Product or Service for the period set forth in the Product Guide (but with the option to extend such retention period for additional fees as and to the extent set forth in the Product Guide), after which Client Data shall be deleted or otherwise destroyed automatically; provided, however, that regardless of any such period(s) set forth in the Product Guide, CDK will delete or otherwise destroy all Client Data relating to such Product or Service as soon as practical (and in any event no later than 12 months) following any termination or expiration of the term for such Product or Service.

(d)     Notwithstanding Sections 5(a) and 5(e), Client grants CDK the right and license to access and use and/or distribute or otherwise provide to third parties any Client Data that is provided by Client to CDK in connection with any products or services licensed by Client from time to time (or to which CDK has access in connection therewith), so long as any Client Data that is distributed or otherwise provided to third parties is done in statistical, compilation or otherwise anonymized fashion that does not identify Client or any of Client's customers or prospective customers.  Client acknowledges that such statistics, compilations and/or otherwise anonymized forms of such data will be the property of CDK. CDK will obtain Client's authorization to distribute identifiable Client Data to third parties; provided, however, that certain Products and Services licensed by Client entail disclosures of identifiable Client Data, and Client's use of such Products and Services shall be deemed to be Client's authorization to use and distribute identifiable Client Data in relation to such Services. In addition, to the extent that Client has purchased or licensed Products or Services that are endorsed or otherwise approved by the OEM(s) from which Client holds its retail franchise(s) ("OEM(s)") (such endorsement or approval may be identified on the applicable Schedule, in the Product Guide or through CDK or OEM communications), Client specifically acknowledges and agrees that CDK or its affiliates may transfer information obtained from or derived from Client's use of such Products and Services to its OEM(s) or its/their designate(s) at the OEM(s)'s request. If any circumstance arises under which Client believes any of the information shall not be transferred to the OEM(s), Client shall notify CDK in writing with specific instructions.

(e)     CDK agrees that it will not disclose or use Non-Public Personal Information of any Consumer provided to it by Client pursuant to this Agreement, except: (i) to the extent necessary to perform, effect, administer or enforce any transactions or services authorized or requested by Client or the applicable Consumer (including without limitation disclosures to Client's other service providers authorized or requested by Client); and (ii) under an exception to the privacy regulations promulgated pursuant to Title V of the Graham-Leach-Bliley Act of 1999 (the "Privacy Rule"), which permits the disclosure of Non-Public Personal Information without initial notice to Consumer. For purposes of this Section 5(e), other than the terms otherwise defined herein, the capitalized terms used in this Section shall have the meanings given to them in the privacy regulations applicable to Client which were promulgated pursuant to the Privacy Rule. Client will ensure that any privacy notices which Client is required to deliver to its Consumers describes, to the extent it is required by law to do so, any disclosures or uses of Non-Public Personal Information which may be made by CDK in accordance with the terms of this Agreement.

(f)    CDK acknowledges that Client is subject to the safeguarding regulations promulgated pursuant to Title V of the Graham-Leach-Bliley Act of 1999 (the "Safeguards Rule"). CDK agrees, to the extent it is a Service Provider to Client under the Safeguards Rule, to implement and maintain appropriate safeguards as CDK may determine to be reasonably necessary to protect the confidentiality of customer information provided by Client to CDK pursuant to the terms of this Agreement and in CDK's possession and control. Client acknowledges and agrees that it is solely responsible for its compliance with the Safeguards Rule and that neither any review by CDK of Client's DMS nor the provision of the Products or Services will be deemed to constitute a guarantee or representation by CDK that such review or Product or Service will bring Client into compliance with the Safeguards Rule. Client specifically agrees that with respect to ASP Managed Services, CDK shall only be responsible for the safeguarding of its own computing facilities and that Client shall remain obligated to comply with the Safeguards Rule with respect to its computing and communication devices used to access CDK's hosting facilities. Client further agrees to transmit all customer information via secure channels as designated by CDK. Other than the terms otherwise specifically defined in this Agreement, terms used in this Section shall have the meaning given to them in the Safeguards Rule.

(g)    When processing personal information or personal data, as such terms are defined under applicable State Privacy Laws (as defined herein), CDK shall comply with the legal requirements of State Privacy Laws applicable to service providers, including the California Consumer Privacy Act (the "CCPA"), as amended by the California Privacy Rights Act (the "CPRA"), the Colorado Privacy Act, the Connecticut Data Privacy Act, the Virginia Consumer Data Protection Act, the Utah Consumer Privacy Act and other similar laws (collectively, the "State Privacy Laws"). CDK shall not, except as otherwise authorized and agreed to by Client, (i) sell the personal information, (ii) retain, use or disclose the personal information other than as needed to perform the services and for appropriate Business Purposes (as defined herein), or (iii) retain, use or disclose the personal information outside of its direct business relationship with Client. Notwithstanding anything to contrary contained herein, CDK shall be permitted to use Client Data for the following purposes ("Business Purposes"): (A) to prevent, detect, or investigate data security incidents or protect against malicious, deceptive, fraudulent or illegal activity, (B) to comply with federal, state, or local laws, or a court order or subpoena to provide information, (C) to comply with a civil, criminal, or regulatory inquiry, investigation, subpoena, or summons by federal, state, or local authorities, (D) to cooperate with law enforcement agencies concerning conducts or activities that Company reasonably and in good faith believes may violate federal, state, or local law, (E) to exercise or defend legal claims, (F) to use Client Data that is deidentified or aggregated, or (G) for internal use to build or improve the quality of the Products or Services.

## 6.    REPRESENTATIONS AND WARRANTIES.

(a)    Each party represents and warrants as follows with respect to this Agreement and each Addendum and Schedule:  (i) it has the right and authority to enter into such agreements and to perform its obligations as described therein, and, in the case of Client, Client has the right to enter into the agreements for and on behalf of the entities set forth in the Schedules; (ii) its execution and the performance by it of its obligations thereunder, does not and will not violate any law, court order or other agreement or obligation to which it is a party or by which it is otherwise bound; and (iii) its execution has been duly authorized by all necessary corporate action of such party and they constitute the legal, valid and binding obligation of such party, enforceable against such party in accordance with its terms, in each case except to the extent that enforceability may be limited by bankruptcy, insolvency or similar laws affecting the enforcement of creditors' rights in general. Client further agrees to supply to CDK certificates of formation, incorporation or good standing as reasonably requested from time to time, and to notify CDK of any changes to itself or the other entities subject to this Agreement.

(b)    In addition, CDK represents and warrants as follows:

(i)    The Services and the Software will conform to their respective functional and technical specifications.  Such specifications are subject to amendment, from time to time, by CDK in which case the Services and Software will conform to their modified respective functional and technical specifications. This warranty shall not extend to Software or Services which has been altered, changed, or modified in any way not permitted by the provisions of this Agreement;

(ii)      Subject to the exceptions described in this Agreement, CDK represents and warrants that the Equipment and any additional equipment that is maintained by CDK or its designee, will be in good working order during the period it is maintained by CDK hereunder and will, in all material respects, operate in accordance with the material specifications set forth in CDK's user manuals. Such material specifications in the user manuals are subject to amendment, from time to time, by CDK, in which case the Equipment and any additional equipment that is maintained by CDK or its designee will conform to the modified material specifications. This warranty shall not extend to Equipment and/or additional equipment that has been subjected to misuse, neglect or accident, which shall have been altered or repaired other than by CDK or its designee, or which has experienced any of the problems described in this Agreement or in the Product Guide which cause such warranty to be inapplicable;

(iii)     Good title to Equipment purchased from CDK shall be transferred to Client upon shipment, free and clear of all liens, claims, encumbrances and security interests whatsoever;

(iv)     The configuration of the ASP Managed Services acquired by Client on the date hereof as set forth on the Schedule(s) to the MSA is sufficient to run the Application Programs subscribed by Client on the date hereof at the locations set forth in the Schedule executed on the date hereof for the initial term of such Schedule, provided that Client: (x) provides CDK with Client's current computing usage requirements; and (y) uses the CDK DMS and Application Programs in accordance with CDK's standard operating procedures as outlined in CDK's technical user documentation;

(v)      If the configuration capacity of any ASP Managed Services is not sufficient, then CDK will provide, at no charge, the additional disk capacity or modifications to Client's ASP Managed Services required to operate the Application Programs in accordance with CDK's standard operating procedures; and

(vi)     All Equipment purchased on the date hereof and installed at Client's location will be the latest make and model available to CDK from its preferred hardware manufacturer or distributor that CDK obtains for general release to its clients, unless otherwise stated in the Schedule as refurbished, reconditioned or used.

(c)      In addition, Client represents and warrants as follows:

(i)       Client owns, and will continue to own throughout the term of this Agreement, either directly or through subsidiaries that it controls, the business operations at each and every site where the Products and Services are used, and is responsible for any charges incurred at such sites;

(ii)      Client and its owners are not, nor will they be, on the U.S. Treasury Department's OFAC (Office of Foreign Asset Control) list of entities with which U.S. companies are forbidden to conduct business; and

(iii)     It owns (or otherwise has all necessary rights to) any materials (including, but not limited to, website and advertising content) provided by it to CDK in connection with the Products and Services, and such materials do not and will not (x) violate any law, statute, ordinance or regulation or (y) infringe upon or misappropriate any copyright, patent, trademark, trade secret or other intellectual property right of any third party.

(d)      Each of the foregoing representations and warranties by the parties shall be continuing and shall be deemed remade concurrently with the execution of each additional Addendum or Schedule.

(e)      EXCEPT AS SPECIFICALLY PROVIDED IN THIS AGREEMENT, NEITHER PARTY MAKES ANY REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, WITH RESPECT TO THE PRODUCTS AND SERVICES, ANY IMPLIED WARRANTIES OF MERCHANTABILITY, NON-INFRINGEMENT OR FITNESS FOR A PARTICULAR PURPOSE, OR ANY WARRANTIES ARISING FROM A COURSE OF DEALING, USAGE, OR TRADE PRACTICE.  EACH PARTY WAIVES THE RIGHT TO RELY UPON ANY REPRESENTATION OR WARRANTY NOT EXPRESSLY SET FORTH HEREIN.

**7.      LIMITATION OF LIABILITY.**

(a)      CDK's sole obligation and Client's sole remedy in case of any breach of CDK's representations and warranties set forth in Section 6 above shall be for CDK: (i) to use reasonable efforts to correct any Services or Software which is not in compliance with the warranties provided in Section 6(b)(i) above; and/or (ii) to repair or replace, at CDK's option, any defective item of Equipment which is not in compliance with the warranties set forth in Section 6(b)(ii) above.

(b)      CDK shall not have any liability under this Agreement for any damages resulting from claims made by Client or any third party for any and all causes covered by Section 7(a) above. CDK's sole liability under this Agreement for damages resulting from claims made by Client or any third party arising from or related to any and all causes not covered by Section 7(a) above shall not exceed the lesser of (i) the amount of actual damages incurred by Client, or (ii) an amount which will not exceed one month's average total monthly charges paid by Client for the particular Products or Services as to which Client's claim relates during the 12 months preceding the month in which the damage or injury is alleged to have occurred, or such lesser number of months if Client has not received 12 months of the applicable Products or Services. Such damages shall be the full extent of CDK's monetary liability under this Agreement regardless of the form in which any such legal or equitable claim or action may be asserted against CDK and shall constitute Client's sole monetary remedy.  No action, regardless of form or legal theory asserted, arising out of, related to or in connection with this Agreement may be brought more than one year after the cause of action has arisen.

(c)      CDK shall not be liable or deemed to be in default for any delay or failure to perform under this Agreement or for interruption to the Products or Services resulting directly or indirectly from any cause beyond CDK's reasonable control.

(d)      As used in Sections 7(a), (b) and (c) above, the term "CDK" shall be deemed to include each third party that provides CDK with any portion of the Products and Services.  Each such third party is an intended third party beneficiary of Client's undertakings hereunder, but shall not have any direct or indirect liability to Client for monetary damage hereunder.

(e)      IN NO EVENT WILL CDK BE RESPONSIBLE FOR SPECIAL, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES, LOSS OF PROFITS, REVENUE, INTEREST, GOODWILL, HARM TO REPUTATION OR FOR ANY LOSS OR INTERRUPTION TO CLIENT'S BUSINESS, WHICH CLIENT MAY INCUR OR EXPERIENCE ON ACCOUNT OF ENTERING INTO OR RELYING ON THIS AGREEMENT, EVEN IF CDK HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

**8.      LAWS AND GOVERNMENTAL REGULATIONS.**

(a)      Client shall be responsible: (i) for compliance with all laws and governmental regulations affecting its business; and (ii) for any use it may make of the Services and Software to assist it in complying with such laws and governmental regulations (including, without limitation, with respect to the content of websites and digital advertising and compliance with marketing, privacy and consumer disclosure laws and regulations), and CDK shall not have any responsibility relating thereto (including, without limitation, advising Client of Client's responsibilities in complying with any laws or governmental regulations affecting Client's business).

(b)      If, after the date hereof, any modifications to any Products and Services shall, in the reasonable opinion of CDK, be legally required, CDK may modify the Products and Services appropriately.  If providing any Product or Service to Client hereunder violates, or in CDK's opinion is likely to violate, any laws or governmental regulations, CDK may, upon written notice to Client, immediately cease providing the affected Product or Service.

**9.      PROPRIETARY RIGHTS INFRINGEMENT.**

(a)      With respect to Software developed by CDK, CDK shall indemnify and hold Client harmless from any and all losses, claims, damages, liabilities, costs and expenses (including reasonable attorney's fees) arising out of third party claims alleging any infringement by such Software of any United States patent, copyright, trademark or trade secret of any third party provided that:

                                                    © 2024 CDK Global, LLC

(i)        promptly after becoming aware of the existence of any claim or litigation for which indemnity may be sought under this Section 9(a), Client shall give CDK written notice thereof, together with any and all documentation related to such claim or litigation;

(ii)        CDK shall have full control over the defense and settlement of any claim or litigation for which indemnification is sought under this Section 9(a); and

(iii)        Client shall cooperate with CDK in every reasonable way, at CDK's expense, to facilitate the defense or settlement of any such claim or litigation.

If Client is enjoined or otherwise prohibited from using such Software, CDK may, at its sole expense and at CDK's option, (x) procure for Client the right to continue using such Software, or (y) substitute a non-infringing version of such Software so that such Software becomes non-infringing and still conforms to its applicable functional and technical specifications. In the event that neither (x) nor (y) is feasible, CDK may terminate the license to the affected Software.

(b)        CDK shall have no liability for any claims of infringement: (i) based on Client's use of  such Software in combination with software, equipment, data or services not supplied by CDK as part of this Agreement (even if the procedures set forth in Section 9(a) above have been complied with in connection therewith); (ii) that results from any modification or attempted modification of such Software made by anyone other than CDK; or (iii) that results from a use by Client of such Software in a manner not authorized by the terms of this Agreement or the Product Guide.  Client shall indemnify and hold CDK harmless from any and all losses, claims, damages, liabilities, costs and expenses (including reasonable attorney's fees) arising out of any action described in subsection (i), (ii) or (iii) of this Section.

## 10.    DEFAULT; REMEDIES; EXPENSES.

(a)        Should Client (i) fail to pay when due any sum of money due hereunder or pursuant to any of the Schedules hereof, (ii) default in the performance of any of its other obligations under this Agreement or any of the Schedules hereto, (iii) default in the performance of any of its obligations under any agreement with any affiliate of CDK (or any assignee thereof or successor thereto), or (iv) become the subject of any proceeding under the Bankruptcy Code or any state bankruptcy law, or become insolvent, enter receivership or have any substantial part of its property become subject to any levy, seizure, assignment, application or sale for or by any creditor or governmental agency, then, in any such event, CDK, at its option, may, upon written notice thereof, (A) terminate this Agreement and/or any or all of the Schedules hereto, (B) declare all amounts due and to become due under this Agreement (including in particular, Sections 10(b) and (c) below) and/or any or all of the Schedules hereto immediately due and payable, (C) whether or not this Agreement or a Schedule is terminated, render any Services or portions thereof inoperable and/or inaccessible to Client, which actions may be taken without advance notice, (D) take immediate possession of any or all of the Software and items of Equipment not fully paid for, wherever situated, and for such purposes enter upon any premises without liability for so doing, (E) sell, dispose of, hold, use or lease any items of Equipment not fully paid for, as CDK, in its sole discretion, may decide, and (F) refrain from honoring a request by Client to transfer the data of that Client electronically to, among others, another provider of similar products or services.

(b)        Client specifically acknowledges and agrees that if Client terminates this Agreement and/or any Schedule (or any Product or Service set forth on any Schedule) or CDK terminates this Agreement or any Schedule (or any Product or Service set forth on any Schedule) due to Client's default pursuant to Section 10(a) above or Client's failure to install any Product or Service, or allow CDK to install any Product or Service within a reasonable period of time, CDK shall be entitled to recover agreed upon liquidated damages in an amount equal to the product of: (i)(A) in the event of termination after installation: the number of full monthly periods remaining after the date of termination until the then end of the applicable Schedule(s) of this Agreement, as applicable; or (B) in the event of termination prior to installation of the Product or Services:  the number of full monthly periods stated as the term set forth on the applicable Schedule(s) to this Agreement; (ii) the applicable monthly charges for the applicable Products and Services as of the effective time of any such termination (and if termination is prior to installation of the Product or Service, the amount set forth on the applicable Schedule); and (iii) 0.70 (representing a reduction factor which the parties have mutually determined to be fair and reasonable in the light of the

anticipated harm to be caused by the breach, the difficulties of proof of loss, and the unavailability of an adequate remedy).

(c)    Client shall pay all of CDK's reasonable attorneys' fees, court costs, expenses and disbursements (collectively, the "Expenses") arising out of, or related to: (i) the enforcement of any of CDK's remedies or Client's obligations hereunder; (ii) the successful defense of any claim or action brought against CDK; or (iii) any bankruptcy filing of Client, including the protection of CDK's interests in any bankruptcy filing of Client. Should Client fail to return (or allow CDK to collect from its premises) within a reasonable period of time after termination of this Agreement for any reason any: (i) CDK property leased or rented to Client; or (ii) other CDK property not purchased by Client from CDK, then Client shall, within 30 days of notice from CDK, pay CDK's cost to replace any such item of CDK property. Client is responsible for the proper disposal of any such unreturned and uncollected Equipment, and Client agrees that any penalties or costs associated therewith are Client's responsibility. The remedies contained in this Section 10(c) are cumulative and are in addition to all other rights and remedies available to CDK under this Agreement, by operation of law or otherwise.

## 11.    DISPUTE RESOLUTION BY ARBITRATION; CHOICE OF LAW; CLASS ACTION WAIVER.

(a)    All disputes arising out of or relating to this Agreement or a party's performance hereunder, including, but not limited to, disputes involving conduct and representations made during this Agreement's formation and negotiation, and based on any legal theory (including but not limited to contract, warranty, tort and fraud) will be resolved solely through binding and confidential arbitration in Cook County, Illinois by a single arbitrator, under the International Institute for Conflict Prevention & Resolution Rules for Non-Administered Arbitration then in effect. Unless otherwise required by the arbitrator, each party to the lawsuit shall be limited to no more than five depositions. The arbitrator may issue temporary, preliminary, or permanent injunctive or declaratory relief, but may not award punitive damages. Any issue concerning the extent to which a dispute is subject to arbitration, shall be governed by the Federal Arbitration Act and resolved by the arbitrator. Nothing in this Section will prevent CDK from resorting directly to judicial proceedings for injunctive relief, if CDK deems a lawsuit necessary or advisable to prevent irreparable injury to CDK or to protect its intellectual property rights. The parties consent to the jurisdiction of state and federal courts sitting in Cook County, Illinois, in addition to any other court of competent jurisdiction for such judicial injunctive relief, and for enforcement of any judgment or arbitration award. The arbitration decision shall also remain confidential, except to the extent necessary to enforce the award in a judicial action. The parties waive any right to a trial by jury.

(b)    This Agreement, including, but not limited to, its formation, execution and interpretation, shall be governed by Delaware law, without regard to its conflicts of laws rules.

(c)    RESOLUTION OF ALL DISPUTES, AS DESCRIBED IN SECTION 11(a), WHETHER BY ARBITRATION, LAWSUIT, ACTION OR OTHER LEGAL PROCEEDING,  SHALL BE CONDUCTED AND RESOLVED ON AN INDIVIDUAL BASIS ONLY, AND NOT ON A CLASS-WIDE, MULTIPLE PLAINTIFF, MULTIPLE CLAIMANT, CONSOLIDATED OR SIMILAR BASIS.  CLIENT WAIVES ANY RIGHT TO PARTICIPATE IN ANY WAY IN A CLASS ACTION LAWSUIT AGAINST CDK, OR TO ACT IN ANY ARBITRATION, LAWSUIT, ACTION OR OTHER LEGAL PROCEEDING AGAINST CDK IN THE INTEREST OF THE PUBLIC OR IN ANY PRIVATE ATTORNEY GENERAL CAPACITY.

## 12.    GENERAL.

(a)    This Agreement contains the entire agreement of the parties with respect to their subject matter and supersedes all existing agreements and all other oral, written or other communications between them concerning their subject matter. No reliance is placed on any warranty, representation, opinion, advice or assertion of fact made either prior to, contemporaneous with, or after entering into this Agreement, or any amendment or supplement thereto, by any party or its directors, officers, employees or agents, to any other party or its directors, officers, employees or agents, except to the extent that the same has been reduced to writing and included as a term of this Agreement, and none of the parties has been induced to enter into this Agreement or any amendment or supplement by reason of any such warranty, representation, opinion, advice or assertion of fact. This Agreement shall not be modified in any way except by a writing signed by both parties.

(b)      Client may not assign any of its rights or delegate any of its duties under this Agreement without the prior written consent of CDK. This Section shall be deemed, without limitation, to apply to any direct or indirect change in the control of Client. Any attempted assignment in violation of this provision shall be void and shall be grounds for immediate termination by CDK. This Agreement shall be binding upon and shall inure to the benefit of CDK and Client and their respective successors and permitted assigns.

(c)      If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality or enforceability of the remainder of this Agreement shall not in any way be affected or impaired thereby.

(d)      Any notice to CDK shall be sent Attention: Chief Executive Officer, CDK Global, LLC and Attention: General Counsel, CDK Global, LLC, with a copy sent via email to billing.info@cdk.com. Notices to Client may be given by any reasonable means designated by Client, including to the Client principal email contact designated by Client; provided, however, that in the event CDK has reason to believe such method is inadequate, CDK may deliver notices to Client's president with a cc to General Counsel at its address as first set forth above.

(e)      Client agrees to provide CDK with an e-mail address and to accept electronic communications from CDK regarding specific Products and Services; and Client agrees to be bound by any affirmation, assent or agreement Client transmits through e-mail with respect to specific Products and Services.

(f)      The headings in this Agreement are intended for convenience of reference and shall be disregarded in construing this Agreement.

(g)      Facsimile signatures and signatures sent electronically via email or otherwise (including via "e-signature") shall have the same effect as original signatures. This Agreement (and any Addendum, Schedule or amendment hereto or thereto) may also be executed in any number of counterparts.

(h)      Client may notify CDK in writing specifying additional persons authorized to sign on Client's behalf for future Schedules and Addenda to this Agreement.

(i)      The individuals executing this Agreement on behalf of CDK and Client each represent and warrant that they are duly authorized by all necessary action to execute this Agreement on behalf of their respective principals, including, to the extent set forth on the Schedules or Addenda hereto, on behalf of affiliates of Client.

CDK                                               CLIENT

APPROVED BY:                                      APPROVED BY:


Signature – Authorized Officer                    Signature – Authorized Officer

NAME:                                             NAME:
          Type or Print                                     Type or Print

TITLE:                                            TITLE:
          Type or Print                                     Type or Print

DATE:                                             DATE:

---

**THIS AGREEMENT SHALL BECOME EFFECTIVE UPON BEING SIGNED BY AN AUTHORIZED OFFICER OF BOTH CDK AND CLIENT. CDK SALES REPRESENTATIVES DO NOT HAVE THE AUTHORITY TO BIND CDK.**

---