Joshua Hafenbrack (*pro hac vice*)
jhafenbrack@winston.com
**WINSTON & STRAWN LLP**
1901 L Street NW
Washington, DC 20036-3506
Telephone: (202) 282-5017
Fax: (202) 282-5100

Jeanifer E. Parsigian (SBN: 289001)
jparsigian@winston.com
**WINSTON & STRAWN LLP**
101 California Street, 35th Floor
San Francisco, CA 94111
Telephone: (415) 591-1000
Fax: (415) 591-1400

Jade Briana Baker (*pro hac vice*)
jbbaker@winston.com
**WINSTON & STRAWN LLP**
1901 L Street NW
Washington, DC 20036-3506
Telephone: (202) 282-5872
Fax: (202) 282-5100

*Counsel for Defendant INDESIGN DATA, LLC*

**IN THE UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **CDK GLOBAL, LLC,**<br><br>                    Plaintiff,<br><br>    **v.**<br><br>**TEKION CORP.**, a Delaware corporation, and<br><br>**INDESIGN DATA, LLC**, a Florida limited liability company,<br><br>                    Defendants. | **Case No. 3:25-cv-01394-JSC**<br><br>**DEFENDANT INDESIGN DATA, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: June 26, 2025<br>Time: 10:00 am<br>Judge: Hon. Jacqueline Scott Corley<br>Courtroom 8, 19th Floor |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................................... 1

II.   BACKGROUND .................................................................................................... 3

III.  LEGAL STANDARDS ........................................................................................ 5

IV.   ARGUMENT ........................................................................................................ 5

A.    CDK's claim under the CFAA (Count 1) must be dismissed ............................ 5

i.    CDK has not alleged InDesign "intentionally" accessed the DMS "without authorization" ....... 6

ii.   CDK's CFAA claim turns on an alleged violation of the dealers' contractual terms of use, not on conduct that is analogous to "breaking and entering" ........................ 9

iii.  CDK has not alleged cognizable harm or financial loss under the CFAA .............. 11

B.    CDK's claims under the CCDAFA (Count 5) must be dismissed ........................... 12

C.    CDK's claim under the DMCA (Count 2) must be dismissed .................................. 12

i.    Using valid dealer credentials to log in to CDK's DMS is not "circumvention" of a "technological measure" under the DMCA ......................... 12

ii.   CDK has not alleged InDesign circumvented any technological measure "to obtain access" to any "copyrighted work" ......................... 14

iii.  CDK has not alleged that InDesign's service is "primarily designed" to circumvent technological measures ......................... 16

D.    CDK's claim under the SCA (Count 3) must be dismissed ......................... 17

E.    CDK's trade secrets claims under the DTSA (Count 4) and the CUTSA (Count 6) must be dismissed ......................... 18

F.    CDK's tortious interference claim (Count 7) must be dismissed ......................... 20

G.    CDK's claim under California's UCL (Count 8) must be dismissed ......................... 21

V.    CONCLUSION ......................... 24

**TABLE OF AUTHORITIES**

*123 Los Robles LLC v. Metzler*,
    2017 WL 10311209 (C.D. Cal. Oct. 26, 2017)................................................................23

*Abu v. Dickson*,
    107 F.4th 508 (6th Cir. 2024)...................................................................................................17

*Acculmage Diagnostics Corp. v. Terarecon, Inc.*,
    260 F. Supp. 2d 941 (N.D. Cal. 2003).....................................................................................19

*Adhav v. Midway Rent A Car, Inc.*,
    37 Cal. App. 5th 954 (Cal. Ct. App. 2019)..............................................................................23

*In re Adobe Sys., Inc. Priv. Litig.*,
    66 F. Supp. 3d 1197 (N.D. Cal. 2014).....................................................................................23

*Agfa Corp. v. Richard*,
    2018 WL 3078585 (C.D. Cal. June 1, 2018.............................................................................21

*Allergan USA Inc. v. Imprimis Pharms., Inc.*,
    2017 WL 10526121 (C.D. Cal. Nov. 14, 2017).......................................................................22

*Alta Devices, Inc. v. LG Elecs., Inc.*,
    343 F. Supp. 3d 868 (N.D. Cal. 2018).....................................................................................18

*Aquilina v. Certain Underwriters at Lloyd's*,
    407 F. Supp. 3d 978 (D. Haw. 2019).......................................................................................16

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...................................................................................................................5

*Ass'n for Information Media and Equip. v. Regents of the Univ. of Calif.*,
    2012 WL 7683452 (C.D. Cal. Nov. 20, 2012).........................................................................16

*Assessment Techs. of WI, LLC v. WIREdata, Inc.*,
    350 F.3d 640 (7th Cir. 2003)....................................................................................................16

*ATPAC, Inc. v. Aptitude Sols., Inc.*,
    2010 WL 1779901 (E.D. Cal. Apr. 29, 2010)..........................................................................10

*Authenticom, Inc. v. CDK Global, LLC*,
    874 F.3d 1019 (7th Cir. 2017)....................................................................................................5

*Axts Inc. v. Gy6vids LLC*,
    2018 WL 5284203 (D. Or. Sept. 24, 2018)...............................................................................9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................................................................5, 18

*Brodsky v. Apple Inc.*,
  445 F. Supp. 3d 110 (N.D. Cal. 2020) ....................................................... 12

*Catch Curve, Inc. v. Venali, Inc.*,
  519 F. Supp. 2d 1028 (C.D. Cal. 2007) ..................................................... 20

*CDK Glob. LLC v. Brnovich*,
  16 F.4th 1266 (9th Cir. 2021) .................................................... 14, 15, 19

*CDK Glob. LLC v. Brnovich*,
  461 F. Supp. 3d 906 (D. Ariz. 2020) ........................................................... 9

*Cloudpath Networks, Inc. v. SecureW2 B.V.*,
  157 F. Supp. 3d 961 (D. Colo. 2016) ......................................................... 17

*In re Dealer Mgmt. Sys. Antitrust Litig.*,
  362 F. Supp. 3d 558 (N.D. Ill. 2019) ......................................................... 14

*In re Dealer Mgmt. Sys. Antitrust Litig.*,
  680 F. Supp. 3d 919 (N.D. Ill. 2023) ........................................................... 5

*DirecTV, LLC v. E&E Enters. Glob., Inc.*,
  2017 WL 6888500 (C.D. Cal. Nov. 20, 2017).......................................... 21

*Dish Network L.L.C. v. World Cable Inc.*,
  893 F. Supp. 2d 452 (E.D.N.Y. 2012) ....................................................... 16

*Domain Name Comm'n Ltd. v. DomainTools, LLC*,
  449 F. Supp. 3d 1024 (W.D. Wash. 2020)........................................ 5, 8, 11

*Egilman v. Keller & Heckman, LLP*,
  401 F. Supp. 2d 105 (D.D.C. 2005) ........................................................... 14

*Epic Games, Inc. v. Apple, Inc.*,
  67 F.4th 946 (9th Cir. 2023) ..................................................................... 21

*ESS Tech., Inc. v. PC-Tel, Inc.*,
  1999 WL 33520483 (N.D. Cal. Nov. 4, 1999) .......................................... 21

*Facebook, Inc. v. Power Ventures, Inc.*,
  844 F.3d 1058 (9th Cir. 2016) ................................................................. 6, 7

*Hills Transp. Co. v. Sw. Forest Indus., Inc.*,
  266 Cal. App. 2d 707 (1968) ..................................................................... 24

*Hinojos v. Kohl's Corp.*,
  718 F.3d 1098 (9th Cir. 2013) ................................................................... 22

*hiQ Labs, Inc. v. LinkedIn Corp.*,
  31 F.4th 1180 (9th Cir. 2022) ............................................................*passim*

*Inquiry Mgmt. Sys. v. Berkshire Info. Sys.*,
    307 F. Supp. 2d 521 (S.D.N.Y. 2004) ................................................... 14

*Inteliclear LLC v. ETC Global Holdings, Inc.*,
    978 F.3d 653 (9th Cir. 2020) ............................................................... 18

*iSpot.TV, Inc. v. Teyfukova*,
    2023 WL 3602806 (C.D. Cal. May 22, 2023) ...................................... 13

*Ixchel Pharma, LLC v. Biogen Inc.*,
    2018 WL 558781 (E.D. Cal. Jan. 25, 2018) ......................................... 20

*Kendall v. Visa U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008) ............................................................. 13

*Konop v. Hawaiian Airlines, Inc.*,
    302 F.3d 868 (9th Cir. 2002) ............................................................... 17

*KT Enters. LLC v. Comp360, LLC*,
    751 F. Supp. 3d 999 (C.D. Cal. 2023) ................................................. 22

*LVRC Holdings LLC v. Brekka*,
    581 F.3d 1127 (9th Cir. 2009) ........................................................... 6, 8

*Mattel, Inc. v. MGA Ent., Inc.*,
    782 F. Supp. 2d 911 (C.D. Cal. 2011) ................................................. 19

*McGarity v. Sun-Maid Growers*,
    2024 WL 4370578 (S.D. Cal. Oct. 1, 2024) ........................................... 5

*Moonlight Mountain Recovery, Inc. v. McCoy*,
    2024 WL 4027972 (D. Idaho Sept. 3, 2024).......................................... 11

*Motogolf.com, LLC v. Top Shelf Golf, LLC*,
    528 F. Supp. 3d 1168 (D. Nev. 2021) .................................................. 12

*Navistar, Inc. v. New Baltimore Garage, Inc.*,
    2012 WL 4338816 (N.D. Ill. Sept. 12, 2012) ...................................... 14

*Pellerin v. Honeywell Int'l, Inc.*,
    877 F. Supp. 2d 983 (S.D. Cal. 2012).................................................. 18

*Power v. Connectweb Techs., Inc.*,
    740 F. Supp. 3d 39 (D. Mass. 2024) .................................................... 14

*Republic of Gambia v. Meta Platforms, Inc.*,
    588 F. Supp. 3d 1 (D.D.C. 2022) ........................................................ 18

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
    442 F.3d 741 (9th Cir. 2006) ................................................................. 4

*Rosenthal & Rosenthal of California, Inc. v. Hilco Trading, LLC*,
    2020 WL 12948055 (C.D. Cal. Dec. 29, 2020) ................................................... 20

*Sandvig v. Barr*,
    451 F. Supp. 3d 73 (D.D.C. 2020) ........................................................................ 10

*Santana v. BSI Fin. Servs., Inc.*,
    495 F. Supp. 3d 926 (S.D. Cal. 2020) .................................................................. 21

*Schmitt v. SN Servicing Corp.*,
    2021 WL 3493754 (N.D. Cal. Aug. 9, 2021) ................................................... 22, 23

*SecureInfo Corp. v. Telos Corp.*,
    387 F. Supp. 2d 593 (E.D. Va. 2005) ................................................................... 10

*Silicon Knights, Inc. v. Crystal Dynamics, Inc.*,
    983 F. Supp. 1303 (N.D. Cal. 1997) ..................................................................... 23

*Silverlit Toys Manufactory Ltd. v. Rooftop Grp., USA, Inc.*,
    2010 WL 11509314 (C.D. Cal. Jan. 21, 2010) ..................................................... 21

*Soil Retention Prods., Inc. v. Brentwood Indus., Inc.*,
    521 F. Supp. 3d 929 (S.D. Cal. 2021) .................................................................. 18

*Sonoma Foods, Inc. v. Sonoma Cheese Factory, LLC*,
    634 F. Supp. 2d 1009 (N.D. Cal. 2007) ................................................................ 23

*Stern v. Weinstein*,
    2010 WL 11459791 (C.D. Cal. Jan. 6, 2010) .......................................................... 7

*Sylabs, Inc. v. Rose*,
    2024 WL 4312719 (N.D. Cal. Sept. 26, 2024) ........................................................ 5

*Tekion Corp v. CDK Global, LLC*,
    No. 3:24-cv-08879-JSC ................................................................................. 3, 7, 8

*Texaco Inc. v. United States*,
    528 F.3d 703 (9th Cir. 2008) ................................................................................ 13

*UFCW Loc. 1500 Pension Fund v. Mayer*,
    895 F.3d 695 (9th Cir. 2018) .................................................................................. 5

*United States v. Nosal*,
    676 F.3d 854 (9th Cir. 2012) ................................................................... 6, 9, 10, 11

*United States v. Nosal*,
    844 F.3d 1024 (9th Cir. 2016) ............................................................................ 8, 9

*Vardazaryan v. Liberty Mut. Fire Ins. Co., et al.*,
    2023 WL 8884391 (C.D. Cal. Nov. 2, 2023) .................................................... 23, 24

*Vendavo, Inc. v. Price f(x) AG*,
    2018 WL 1456697 (N.D. Cal. Mar. 23, 2018) ................................................................ 19

*Watters v. Breja*,
    2024 WL 201356 (N.D. Cal. Jan. 18, 2024) ........................................................... 6, 7, 9

*Williams v. Facebook, Inc.*,
    384 F. Supp. 3d 1043 (N.D. Cal. 2018) ........................................................................ 4

**Statutes**

15 U.S.C. § 2 ...................................................................................................................... 3

17 U.S.C. § 1201(a)(1)(A) ............................................................................................ 12, 14

17 U.S.C. § 1201(a)(2) ...................................................................................................... 16

17 U.S.C. § 1201(a)(3)(A) ........................................................................................ *passim*

18 U.S.C. § 1030 .......................................................................................................... 5, 24

18 U.S.C. § 1030(a)(2) ...................................................................................................... 6

18 U.S.C § 1030(g) ........................................................................................................... 11

18 U.S.C. § 1831 ..................................................................................................... 2, 18, 19

18 U.S.C. §§ 2701-2713 .................................................................................................... 17

18 U.S.C. § 2701(a) ................................................................................................. 2, 17, 18

18 U.S.C. § 2701(c)(2) ................................................................................................. 2, 17

Ariz. Rev. Stat. § 28-4651 ................................................................................................. 4

Ariz. Rev. Stat. § 28-4652 ................................................................................................. 4

Ariz. Rev. Stat. § 28-4653 ................................................................................................. 4

Ariz. Rev. Stat. § 28-4654 ................................................................................................. 4

Ariz. Rev. Stat. § 28-4655 ................................................................................................. 4

Cal. Bus. & Prof. Code § 17200 ....................................................................................... 23

Cal. Bus. & Prof. Code § 17204 ....................................................................................... 22

Cal. Bus. & Prof. Code § 17535 ....................................................................................... 22

Cal. Civ. Code § 3426 ....................................................................................................... 18

Cal. Civ. Code § 3426.1(a) ............................................................................................... 19

Cal. Penal Code §§ 502(c)(1)–(8) .................................................................................. 2, 12

California Unfair Competition Law ...................................................................................... 3, 21

Computer Fraud and Abuse Act ............................................................................................... 1

Mont. Code Ann. § 30-11-701 ................................................................................................. 4

Mont. Code Ann. § 30-11-718 ................................................................................................. 4

Mont. Code Ann. § 30-11-719 ................................................................................................. 4

N.C. Gen. Stat. § 20-305.7 ....................................................................................................... 4

Or. Rev. Stat. § 650.123 ........................................................................................................... 4

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ........................................................................................................ 3, 5

Mike Scarcella, "Auto tech firm CDK reaches $630 million settlement in US dealer data case,"
  Reuters (Jan. 28, 2025) ...................................................................................................... 4

Orin S. Kerr, Norms of Computer Trespass, 116 Colum. L. Rev. 1143 (2016) ...................... 8

Restatement (Second) of Torts § 766 (American Law Institute, 1965) .................................. 20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**NOTICE OF MOTION AND MOTION TO DISMISS**

**PLEASE TAKE NOTICE THAT** on June 26, 2025, or as soon thereafter as the matter may be heard, in the United States District Court, Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, CA 94102, before the Honorable Jacqueline Scott Corley, Defendant InDesign Data, LLC ("InDesign") will and hereby does move to dismiss CDK Global LLC's complaint pursuant to Fed. R. Civ. P. 12(b)(6). This Court has already scheduled a hearing on CDK Global, LLC's Motion for Preliminary Injunction and InDesign's Motion to Dismiss for June 26, 2025, Dkt. 49 (Order granting Stipulation Extending Briefing Schedule and Continuing Hearings).

This Motion will be based on this Notice, the accompanying Memorandum of Points and Authorities, the pleadings and papers on file with the Court, and such evidence and argument as may be presented at the hearing.

Dated:  April 9, 2025

WINSTON & STRAWN LLP

*/s/ Joshua Hafenbrack*
Joshua Hafenbrack

Counsel for InDesign Data, LLC

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    <u>INTRODUCTION</u>**

CDK Global LLC is the dominant firm in the automotive software industry, operating the leading Dealer Management System (or DMS) in the United States.  CDK has engaged in a long-running campaign to eliminate competition from so-called "independent data integrators" such as InDesign Data, LLC, which provide low-cost and innovative software services that help auto dealerships access and use the data they store on the DMS.  CDK has now monopolized the once-thriving market for data integration services, allowing it to charge dealers vastly inflated prices to access their own data—and prompting an antitrust MDL that resulted in CDK paying eye-popping settlements as well as legislative action from states around the country to curb CDK's market abuses.

CDK's complaint against InDesign is the latest salvo in that campaign.  CDK, in short, alleges a laundry list of unsupported claims against InDesign, which CDK is trying to eliminate as one of the last vestiges of competition in the market for data integration services at auto dealerships.  CDK's claims are contrary to law and unsupported by well-pled factual allegations, as described below.  CDK's complaint against InDesign should be dismissed in its entirety.

**<u>Computer Fraud and Abuse Act (CFAA), Count 1</u>**:  CDK fails to plead a claim under the CFAA, which is a criminal anti-hacking statute that only proscribes conduct "analogous to breaking and entering."  *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1197 (9th Cir. 2022).  CDK alleges nothing of the kind with respect to InDesign.  Since its founding in 2013, InDesign has accessed dealer data on the DMS with dealer authorization, using login credentials provided by the dealer—without incident or complaint from CDK.  CDK does not allege that, prior to filing its complaint against Tekion Corporation and naming InDesign as a co-defendant, it ever affirmatively revoked or refuted InDesign's dealer authorization to access the DMS.  Indeed, CDK specifically alleged in its complaint that it sent letters to Tekion—but not to InDesign—warning about purported unauthorized access before filing its complaint in this case.  CDK, at bottom, is seeking to hold InDesign liable on the same terms as a criminal computer hacker for conduct that bears no resemblance to breaking and entering, based on CDK's after-the-fact

claim that dealers violated their terms of service with CDK by authorizing InDesign's access to the DMS. Because controlling law forecloses that theory of liability, CDK's CFAA claim must be dismissed.[1]

**Digital Millennium Copyright Act (DMCA), Count 2**:  CDK's claim under the DMCA likewise fails.  CDK cannot allege that InDesign "circumvented" any "technological measures" protecting access to a copyrighted work, as required to plead a claim under the DMCA.  InDesign accessed the DMS by using standard login credentials created by the dealer.  Entering a username and password does not violate the DMCA as a matter of law, because the statute defines circumvention as conduct to "avoid, bypass, remove, deactivate, or impair a technological measure."  17 U.S.C. § 1201(a)(3)(A).  InDesign did none of the above; it merely entered a valid username and password.  Further, CDK has not alleged that InDesign circumvented a technological measure to access a "copyrighted work."  On the contrary, CDK only alleges that InDesign accessed and copied dealer data, over which CDK has no copyright.

**Stored Communications Act (SCA), Count 3**:  CDK's claim under the SCA fails for the same reason as its CFAA claim, because the SCA is an analogous statute that only prohibits intentional unauthorized access.  Additionally, CDK's SCA claim fails because InDesign was authorized by dealers—the "users" of the DMS—to access the DMS.  For purposes of the SCA, dealer authorization exempts InDesign from liability as a matter of law, 18 U.S.C. §§ 2701(a), (c)(2), and forecloses CDK's claim.

**Trade secret claims, Counts 4 and 6**:  CDK's trade secrets claims under the federal Defend Trade Secrets Act (DTSA) and the California state-law analogue must be dismissed because CDK fails to allege, with the required specificity, that InDesign misappropriated any of CDK's alleged trade secrets.  CDK's allegations in this regard are entirely bereft of specifics.  CDK fails to allege even a single instance where InDesign accessed or possessed a trade secret belonging to CDK—much less that InDesign misappropriated such a trade secret to CDK's detriment.

**Tortious interference, Count 7**:  CDK's tortious interference claim, too, must be dismissed because the complaint does not allege any factual basis for that claim.  CDK does not identify any specific dealers that purportedly breached their contract with CDK at InDesign's behest.  Nor does CDK allege

---

[1] CDK's claim under California's computer-hacking statute, the Comprehensive Data Access and Fraud Act (Count 5), likewise must be dismissed for the same reasons.

any facts showing that InDesign intended for any such breach to occur. On the contrary, CDK does not and cannot allege that InDesign was even privy to CDK's confidential dealer contracts.

**California Unfair Competition Law (UCL), Count 8**: Finally, CDK's claim under the California UCL fails at the outset because CDK does not allege harm to competition, distinct from harm to CDK as a competitor. Indeed, CDK's lawsuit is designed to eliminate InDesign, a lower-cost rival, from the market; CDK's aim is to reduce consumer choice, which is the opposite of antitrust injury. Further, CDK has not alleged economic injury or any unlawful, unfair, or fraudulent conduct by InDesign, as required to state a claim under the UCL.

The Court should dismiss CDK's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.    **BACKGROUND**

**1.**    CDK is the "leading automotive retail software provider" in the United States. Dkt. 1, Compl., ¶ 2. CDK is the leading providing of Dealer Management System, or DMS, software, which auto dealerships use to automate many of their daily business functions, such as payroll, inventory, customer relationship management, service, and other areas at the dealership. *Id.* ¶ 26. Importantly, the DMS also includes a database, where dealers store the data they generate in their daily operations, including information about dealership finances, inventory and parts, service records, and customer information and leads, among others. *Id.* ¶ 34.

**2.**    InDesign is an "independent data integrator" that helps dealerships efficiently access—and use for the dealer's business purposes—the data they store on the DMS. Compl., ¶ 74; *id.* ¶ 75 (CDK citing InDesign's dealer agreement, which states that "InDesign shall extract Dealer Data"). InDesign has operated since 2013. *Id.* ¶ 72. To provide data integration services, dealers download the InDesign data integration software on "a Dealership computer," *id.* ¶ 75, and then access the dealer data on the DMS using "a newly created account by a user" with an email domain associated with InDesign, *id.* ¶ 108; *id.* ¶ 75 (alleging that dealerships provide InDesign with access to the DMS); *id.* ¶ 122 (alleging that InDesign uses "Dealership-issued login credentials").

**3.**    On December 9, 2024, Tekion Corporation—a competitor to CDK in the DMS market—filed an antitrust lawsuit against CDK in this Court, alleging that CDK violated Section 2 of the Sherman Act and the California UCL. *Tekion Corp v. CDK Global, LLC*, No. 3:24-cv-08879-JSC, Dkt. 1 ¶ 15. On

February 10, 2025, CDK filed a countersuit against Tekion and named InDesign as a co-defendant. *CDK Global, LLC v. Tekion Corp. et al*, No. 3:25-cv-01394-JSC, Dkt. 1 ("Compl.").

CDK's complaint alleges that, in April 2024, CDK sent a letter to Tekion, stating that CDK's contracts with dealers prohibit third-party access to the DMS. *See* Compl., ¶¶ 64–71. In December 2024, CDK sent Tekion a cease-and-desist letter. *Id.* ¶¶ 90–92, 130. CDK does not allege that it sent any such correspondence to InDesign prior to filing its complaint. On the contrary, on February 11, 2025—the day *after* CDK filed its complaint against Tekion and named InDesign as a co-defendant—CDK sent InDesign a cease-and-desist letter.[2] Ex. A.

Moreover, while CDK alleges that Tekion accessed the DMS through certain technological methods such as building a "VPN tunnel," Compl., ¶¶ 81(c), 82, 130, 154, CDK makes no similar allegations against InDesign. CDK solely alleges that InDesign uses "Dealership-issued login credentials," *id.* ¶ 122, to access the dealer data on the DMS, not through any other means.

4.    Prior to filing its lawsuit against Tekion and InDesign, CDK was embroiled in a wide-ranging MDL in which dealerships, automotive software vendors, and a data integration competitor (Authenticom, Inc.) brought antitrust claims against CDK for conspiring with its biggest DMS competitor, Reynolds & Reynolds, to drive out competition from independent integrators.[3] CDK paid huge amounts to settle those antitrust cases, including recent publicly reported settlements of $630 million and $100 million.[4] Additionally, various state legislatures enacted laws to prevent CDK from blocking competition from independent integrators and charging dealers exorbitant fees for access to their data. A.R.S. § 28-4651, 4652, 4653, 4654, 4655 (Arizona); Mont. Code Ann. §§ 30-11-701, 718, 719 (Montana); O.R.S. § 650.123 (Oregon); G.S. § 20-305.7 (North Carolina).

Notably, up until its conspiracy with Reynolds, CDK for many years supported and championed the right of dealers to authorize independent data integrators to access the DMS, using login credentials

---

[2] The Court can take judicial notice of CDK's Feb. 11 letter to InDesign, because documents whose existence cannot reasonably be questioned are subject to judicial notice. *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1051 (N.D. Cal. 2018).

[3] The Court can take judicial notice of matters of public record and court proceedings. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n. 6 (9th Cir. 2006).

[4] *See* Mike Scarcella, "Auto tech firm CDK reaches $630 million settlement in US dealer data case," *Reuters* (Jan. 28, 2025), https://www.reuters.com/legal/auto-tech-firm-cdk-reaches-630-million-settlement-us-dealer-data-case-2025-01-28/.

created and provided by the dealer—the same practices CDK now alleges amount to criminal computer hacking. *In re Dealer Mgmt. Sys. Antitrust Litig.*, 680 F. Supp. 3d 919, 945 (N.D. Ill. 2023) ("CDK historically supported dealers' right to use data integrators."). Indeed, until recent years, CDK itself operated two of the largest independent data integrators in the market—which employed the same dealer-authorized access methods as InDesign. *Authenticom, Inc. v. CDK Global, LLC*, 874 F.3d 1019, 1022 (7th Cir. 2017) ("CDK also had two subsidiaries, Digital Motorworks and IntegraLink, which operated in the same way . . . An interested dealer would provide its log-in credentials to the integrator, which would then be able to pull data from the dealer's management system and provide it to an app vendor.").

## III.    LEGAL STANDARDS

To survive a Rule 12(b)(6) challenge, CDK's claims "must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Sylabs, Inc. v. Rose*, 2024 WL 4312719, at *2 (N.D. Cal. Sept. 26, 2024) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard "requires a plaintiff to allege facts resulting in 'more than a sheer possibility that a defendant has acted unlawfully.'" *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Where a complaint "fails to state a cognizable legal theory or fails to provide sufficient facts to support a claim . . . dismissal is appropriate." *Domain Name Comm'n Ltd. v. DomainTools, LLC*, 449 F. Supp. 3d 1024, 1026 (W.D. Wash. 2020).

In considering a motion to dismiss, this Court may consider "the complaint, materials incorporated into the complaint by reference, and matters [subject to] judicial notice." *McGarity v. Sun-Maid Growers*, 2024 WL 4370578, at *2 (S.D. Cal. Oct. 1, 2024) (citing *UFCW Loc. 1500 Pension Fund v. Mayer*, 895 F.3d 695, 698 (9th Cir. 2018)).

## IV.    ARGUMENT

### A.    CDK's claim under the CFAA (Count 1) must be dismissed

CDK's CFAA claim against InDesign should be dismissed under Rule 12(b)(6) because CDK: (1) does not allege that it expressly revoked InDesign's authorization to access the DMS that dealers have granted for many years; (2) has only alleged that InDesign's dealer-authorized access violated the contract between CDK and dealers, which does not state a claim for criminal computer hacking against InDesign under the CFAA; and (3) has failed to allege any cognizable harm under the CFAA.

The CFAA is a criminal anti-hacking statute that makes it unlawful to "intentionally access[] a computer without authorization." 18 U.S.C. § 1030(a)(2). "The CFAA was enacted to prevent intentional intrusion onto someone else's computer—specifically, computer hacking." *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1196 (9th Cir. 2022); *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1130 (9th Cir. 2009) (the CFAA was "designed to target hackers who accessed computers to steal information or to disrupt or destroy computer functionality, as well as criminals who possessed the capacity to access and control high technology processes vital to our everyday lives"). The Ninth Circuit has repeatedly held courts must apply "a narrow interpretation of the CFAA's 'without authorization' provision so as not to turn a criminal hacking statute into a 'sweeping Internet-policing mandate.'" *hiQ Labs*, 31 F.4th at 1200–01 (quoting *United States v. Nosal*, 676 F.3d 854, 862 (9th Cir. 2012) ("*Nosal I*")).

### i.    CDK has not alleged InDesign "intentionally" accessed the DMS "without authorization"

The Ninth Circuit has held that a person accesses a computer "without authorization" under the CFAA when: (1) "the person has not received permission to use the computer for any purpose (such as when a hacker accesses someone's computer without any permission); or [(2)] when the [plaintiff] has rescinded permission to access the computer and the defendant uses the computer anyway." *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1066 (9th Cir. 2016) (quoting *LVRC Holdings, Inc.*, 581 F.3d at 1135).

CDK's complaint alleges neither basis for showing unauthorized access.

*First*, CDK makes no allegation that InDesign somehow hacked into the CDK DMS. Rather, CDK alleges that InDesign accesses the DMS with the express authorization of dealers and using valid login credentials created by the dealer. Compl., ¶¶ 75, 108, 122. Indeed, while CDK alleges that Tekion accessed the DMS through certain technological methods such as building a "VPN tunnel," Compl., ¶ 82, CDK makes no allegation that InDesign has ever accessed the dealer data on the DMS by any method other than using valid dealer-created login credentials. *See, e.g.*, *Watters v. Breja*, 2024 WL 201356, at *3 (N.D. Cal. Jan. 18, 2024) (dismissing CFAA claim where "there is no indication that in his effort to get the money refunded, Breja used false credentials to improperly gain access to the nominal defendant bank's websites").

*Second*, CDK makes no allegation that—prior to filing its complaint—CDK ever purported to rescind the permission to access the DMS that dealers granted to InDesign.

Here, CDK makes no allegation that it expressly rescinded InDesign's longstanding, dealer-authorized permission to access dealer data. On the contrary, in April 2024, CDK sent a letter to Tekion—but not to InDesign—telling Tekion that CDK's contracts with dealers prohibited third-party access. *See* Compl., ¶¶ 64–71. And then in December 2024, CDK sent Tekion—but not InDesign—a cease-and-desist letter. *Id.* ¶¶ 90–92; *see also id.* ¶ 130 ("Since putting **Tekion** on notice . . . Tekion appears to have doubled down") (emphasis added). CDK nowhere alleges it sent any such correspondence to InDesign. Indeed, CDK does not allege that it *ever* objected about InDesign's dealer-authorized access in any form (even through informal means such as email or phone call) prior to filing its complaint.

CDK's lack of objection to InDesign's dealer-authorized access forecloses CDK's CFAA claim, because the Ninth Circuit "requir[es] affirmative conduct terminating authorization before the defendant can be held accountable on the same terms as a computer 'hacker.'" *Stern v. Weinstein*, 2010 WL 11459791, at *2 (C.D. Cal. Jan. 6, 2010), *aff'd*, 512 F. App'x 701 (9th Cir. 2013); *Watters*, 2024 WL 201356, at *3 (dismissing CFAA claim where there was "no 'more' alleged, such as AmEx's revocation of authorized access followed by Breja's continued access").

*Power Ventures* is instructive. There, the Ninth Circuit held that Power Ventures had implied permission from Facebook to access Facebook's system, based upon Facebook users granting Power Ventures access to their profiles. *Power Ventures*, 844 F.3d at 1062; *id.* at 1067 ("Here, initially, Power users arguably gave Power permission to use Facebook's computers to disseminate messages. Power reasonably could have thought that consent from *Facebook users* to share the promotion was permission for Power to access *Facebook's* computers."). The Ninth Circuit held that CFAA liability only attached after Facebook "expressly rescinded that permission," by: (1) sending Power Ventures a cease-and-desist letter and (2) "impos[ing] IP blocks in an effort to prevent Power's continued access." *Id.* at 1067; *hiQ Labs*, 31 F.4th at 1199 ("After Facebook sent a cease-and-desist letter, Power Ventures continued to circumvent IP barriers and gain access to password-protected Facebook member profiles.").[5]

---

[5] As another example, CDK's allegations starkly contrast with those in *Nosal II*. There, the plaintiff Korn/Ferry revoked the computer access credentials of Nosal, a former employee—who then borrowed

Here, by contrast, CDK never alleges that it rescinded InDesign's dealer-authorized access, either through a cease-and-desist letter, technological blocking, or any other means. CDK's lack of notice is especially glaring given that InDesign has used dealer-authorized access methods since 2013, Compl., ¶ 72, and for many years, CDK's own subsidiaries engaged in the same dealer-authorized access that CDK now alleges amounts to criminal computer hacking. *See* Orin S. Kerr, *Norms of Computer Trespass*, 116 Colum. L. Rev. 1143, 1178 (2016) ("If the agent accesses the account on the account holder's behalf, the agent is acting in the place of the account holder and is authorized.").[6]

Although CDK's complaint focuses largely on Tekion, CDK's few allegations against InDesign do not even attempt to show that CDK expressly revoked InDesign's dealer-authorized access methods. CDK largely relies on a single December 13, 2024 email chain, in which one dealership employee told InDesign that "[w]e certainly will not be giving you a login as it violates our MSA." Compl., ¶ 99. But InDesign never accessed that dealer's DMS. And regardless of this one-off email about a single dealer's reading of its contract, the complaint includes no allegations that ***CDK*** ever affirmatively and expressly objected to InDesign's access methods (even after being forwarded the email chain cited in the complaint). *Domain Name*, 449 F. Supp. 3d at 1027 ("[W]hether access is authorized or unauthorized 'depends on ***actions taken by the employer***.' If the computer owner has not affirmatively rescinded the defendant's right to access the computer, any existing authorization/permission remains.") (quoting *Brekka*, 581 F.3d at 1134–35) (emphasis added).[7]

---

accessed credentials for another employee to "surreptitiously" steal his former employer's data to start a competing firm. 844 F.3d 1024, 1038 (9th Cir. 2016). The Ninth Circuit upheld Nosal's CFAA conviction because Korn/Ferry had "affirmatively revoked" Nosal's access credentials and gave Nosal "particularized notice of his revoked access following a prolonged negotiation" regarding the termination of his employment. *Id.* at 1036; *id.* ("By revoking Nosal's login credentials on December 8, 2004, Korn/Ferry unequivocally conveyed to Nosal that he was an 'outsider' who was no longer authorized to access Korn/Ferry computers and confidential information, including Searcher."). CDK did nothing of the kind with respect to InDesign.

[6] The computer owner's affirmative, express revocation of authorization is necessary but not sufficient for CFAA liability to attach. *hiQ Labs*, 31 F.4th at 1195–1202 (rejecting CFAA claim despite cease-and-desist letter, where conduct was not analogous to breaking and entering); *Domain Name*, 449 F. Supp. 3d at 1029–30.

[7] CDK's reference to an indemnification provision in InDesign's contracts with dealers, Compl., ¶ 157, does not change the calculus. A garden-variety indemnification provision does nothing to establish that CDK affirmatively and expressly revoked the authorization that dealers have provided to InDesign, without incident, for more than a decade. A standard business term like an indemnification—which is commonplace in service contracts—cannot establish the intent required for criminal computer hacking.

### ii.    CDK's CFAA claim turns on an alleged violation of the dealers' contractual terms of use, not on conduct that is analogous to "breaking and entering"

CDK's CFAA claim must be dismissed because it is not based on conduct that is "analogous to breaking and entering," *hiQ Labs*, 31 F.4th at 1197, but rather turns on InDesign's use of legitimate access credentials that CDK claimed after the fact violated its contractual terms of service with dealers. Ninth Circuit law forecloses that theory of CFAA liability.

Under Ninth Circuit law, only conduct that is "analogous to that of 'breaking and entering'" can form the basis for a CFAA claim. *E.g., CDK Glob. LLC v. Brnovich*, 461 F. Supp. 3d 906, 915 (D. Ariz. 2020). In contrast, a defendant "violating use restrictions, like a website's terms of use, is insufficient without more to form the basis for liability under the CFAA." *United States v. Nosal*, 844 F.3d 1024, 1038 (9th Cir. 2016) ("*Nosal II*"); *Nosal I*, 676 F.3d 854, 862 (9th Cir. 2012) ("We remain unpersuaded by the decisions of our sister circuits that interpret the CFAA broadly to cover violations of corporate computer use restrictions."); *Watters*, 2024 WL 201356, at *3 (dismissing CFAA claim where "Plaintiff just pleads that Breja's conduct violates AmEx's terms of service"); *Axts Inc. v. Gy6vids LLC*, 2018 WL 5284203, at *5 (D. Or. Sept. 24, 2018) (same).

Here, CDK does not allege conduct analogous to breaking and entering—rather, its CFAA claim is based on a purported contract breach by the dealers that authorized InDesign's access. Compl., ¶¶ 28, 43, 47, 50, 55–60 69, 150. CDK acknowledges that InDesign accessed the DMS "through a Dealership computer" using "a newly created account by a user with the e-mail domain @mail.1dms.com." Compl., ¶ 108; *see also id.* ¶¶ 75, 122. CDK does not allege that InDesign accessed the DMS through any method other than using valid accounts established by the dealer. CDK may argue, as a matter of contract law, that the dealer violated its contract with CDK in authorizing InDesign's access, but that does not transform InDesign into a criminal computer hacker (and certainly not where InDesign has relied on the industry standard dealer authorization since 2013, without objection from CDK until after CDK filed its complaint). Because CDK does not allege conduct analogous to breaking and entering, and instead alleges that InDesign's access was unauthorized "due to breach of a software license by a licensee,"

---

*Nosal II*, 844 F.3d at 1032–33 (holding that the "mens rea element of the statute is critical" because the CFAA only targets "knowing and specific conduct"). (Indeed, the CDK DMS contract that CDK attached to its complaint also has an indemnification provision, *see* CDK's Master Service Agreement, Dkt. 1-1, at 8.)

CDK's CFAA claim must be dismissed. *SecureInfo Corp. v. Telos Corp.*, 387 F. Supp. 2d 593, 609 (E.D. Va. 2005); *ATPAC, Inc. v. Aptitude Sols., Inc.*, 2010 WL 1779901, at *6 (E.D. Cal. Apr. 29, 2010) (citing *SecureInfo* and holding that "subterfuge" by the defendant is required to "find a defendant not party to a license agreement civilly liable under the CFAA where the licensee grants it authority to access information in violation of the license agreement.").[8]

Policy considerations prevent expanding CFAA liability to contract disputes between computer owners and their licensees. *Nosal I*, 676 F.3d at 860 (noting that "company-consumer relationships are traditionally governed by tort and contract law" and rejecting a CFAA interpretation that would "turn these relationships into ones policed by the criminal law"). If CFAA liability were expanded to situations like this one—where InDesign used valid login credentials provided by the system licensee, which CDK never expressly terminated or revoked prior to filing its complaint—the CFAA "would make criminals of large groups of people who would have little reason to suspect they are committing a federal crime." *Id.* at 859. Under CDK's theory, anyone who accesses a computer as an agent of the licensee, using standard login credentials, could face criminal liability if the licensee is later found to have violated its contract in providing those credentials. *Id.* at 861 ("[I]t's very common for people to let close friends and relatives check their email or access their online accounts. Some may be aware that, if discovered, they may suffer a rebuke from the ISP or a loss of access, but few imagine they might be marched off to federal prison for doing so.").

Moreover, the rule of lenity requires the Court to apply a "narrow interpretation of the CFAA's 'without authorization' provision so as not to turn a criminal hacking statute into a 'sweeping Internet-policing mandate.'" *hiQ Labs*, 31 F.4th at 1200–01; *Sandvig v. Barr*, 451 F. Supp. 3d 73, 88 (D.D.C. 2020) (applying the rule of lenity to "interpret the provision narrowly and as not [to] encompass[] terms-of-service violations"). For this additional reason, CDK's CFAA theory should be rejected as a matter of law.

---

[8] Although CDK alleges that Tekion has "obscured user accounts to evade detection," Compl., ¶ 129, CDK makes no such allegation against InDesign. Far from hiding anything, dealerships set up InDesign's login credentials using the name of InDesign's software—1DMS. *Id.* ¶¶ 108–109.

### iii.    CDK has not alleged cognizable harm or financial loss under the CFAA

Finally, CDK's CFAA claim fails because CDK has not alleged cognizable loss under the CFAA, which is required to state a claim. Although the CFAA is largely a criminal statute, the statute creates a private right of action if the plaintiff alleges at least $5,000 in damages or loss in a one-year period "by reason of a violation" of the CFAA. *See* 18 U.S.C § 1030(g); *id.* § 1030(c)(4)(A)(i)(I).

CDK's allegations that it suffered the required loss under the CFAA fail at the outset because all those alleged losses occurred *before* CDK sent its cease-and-desist letter to InDesign and are therefore not cognizable under the statute. *Domain Name*, 449 F. Supp. 3d at 1030. CDK alleges loss, for example, from its pre-complaint investigation into the purportedly unauthorized access of Tekion and InDesign. Compl., ¶¶ 105–06, 162. But that investigation took place before CDK sent its post-complaint cease-and-desist letter to InDesign. Similarly, any purported financial loss of at least $5,000 allegedly caused by "lost or deleted data or corrupted systems" from the "Defendants" likewise occurred before CDK purported to revoke InDesign's dealer authorization to access the DMS.[9] Because "the only potential violations of the CFAA" occurred after CDK expressly revoked InDesign's authorization to access the DMS, CDK's complaint fails to allege the requisite financial loss as a matter of law. *Domain Name*, 449 F. Supp. 3d at 1030.

Further, CDK's allegation that it suffered financial loss, under the CFAA, based on customers choosing to use InDesign rather than CDK for data integration services fails for two reasons. Compl., ¶ 162 (claiming harm from "diverted customers" and "consequential damages"). *First*, any such financial loss from diverted customers occurred before CDK's Feb. 11 revocation letter and so is not cognizable under the CFAA, for the reasons described above. *Second*, damages for consequential business losses are not available under the CFAA. *Moonlight Mountain Recovery, Inc. v. McCoy*, 2024 WL 4027972, at *5 (D. Idaho Sept. 3, 2024) (holding that a plaintiff's consequential business harms are not compensable loss because "[u]nder the CFAA, it is not the costs related to the *release* of the information that are recoverable, but the costs related to the *unauthorized access*") (*citing Nosal I*, 676 F.3d at 862).

---

[9] CDK's allegation of financial loss from lost or deleted data or corrupted systems should be disregarded because it is impermissible group pleading and is entirely conclusory in any event. CDK, at most, alleges that InDesign's dealer-authorized access creates a risk of a security, data corruption, or performance issue. Compl., ¶ 124, 163. But tellingly, CDK cannot point to a single concrete example where InDesign ***actually caused*** such an issue—even though InDesign has been in business since 2013.

The Court should dismiss CDK's CFAA claim.

**B.    CDK's claims under the CCDAFA (Count 5) must be dismissed**

Because CDK's claim under the CFAA must dismissed, CDK's claim under California's analogue computer-hacking statute—the Comprehensive Data Access and Fraud Act ("CCDAFA")—also must be dismissed.  Compl., ¶¶ 215–253.

As with the CFAA, the CCDAFA is a criminal statute that makes it illegal to "knowingly and without permission" access a computer for certain purposes.  Cal. Penal Code §§ 502(c)(1)–(8).  For the same reasons CDK has failed to allege that InDesign accessed the DMS knowingly and without authorization with respect to the CFAA, CDK has failed to allege that InDesign accessed the DMS knowingly and without permission with respect to the CCDAFA.  *Brodsky v. Apple Inc*., 445 F. Supp. 3d 110, 131 (N.D. Cal. 2020) ("Case law suggests that Plaintiffs' [CCDAFA] claims rise or fall with Plaintiffs' CFAA claims because the necessary elements of Section 502 do not differ materially from the necessary elements of the CFAA, except in terms of damages.") (internal quotation marks omitted); *Motogolf.com, LLC v. Top Shelf Golf, LLC*, 528 F. Supp. 3d 1168, 1176 (D. Nev. 2021) (same).

**C.    CDK's claim under the DMCA (Count 2) must be dismissed**

CDK's DMCA claim must be dismissed for three reasons.  *First*, InDesign's use of standard credentials to log into the DMS is not "circumvention" of a "technological measure" under the DMCA.  *Second*, CDK has not alleged that InDesign ever gained access to or copied any "copyrighted work" on the DMS.  *Third*, CDK fails to allege that InDesign's longstanding, dealer-authorized integration service is primarily designed to circumvent technological measures.

**i.    Using valid dealer credentials to log into CDK's DMS is not "circumvention" of a "technological measure" under the DMCA**

To state a claim under the DMCA, CDK must allege that (i) the work at issue was protected under the Copyright Act, (ii) the copyrighted work was protected by a "technological measure," and (iii) the defendant "circumvented" the technological measure to obtain access to the copyrighted work.  17 U.S.C. § 1201(a)(1)(A).  "Circumvention" is "to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner."  17 U.S.C. § 1201(a)(3)(A).

CDK fails to state a DMCA claim because it has not alleged that InDesign took any steps to "avoid, bypass, remove, deactivate, or impair" the dealer credentials required to log into the DMS. The analysis of whether CDK has alleged "circumvention" under the DMCA "must begin with the text of the DMCA." *iSpot.TV, Inc. v. Teyfukova*, 2023 WL 3602806, at \*5 (C.D. Cal. May 22, 2023); *Texaco Inc. v. United States*, 528 F.3d 703, 707 (9th Cir. 2008) ("[T]he first step in interpreting a statute 'is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.'").

CDK's DMCA claim must be dismissed because CDK makes no allegations that InDesign took any steps to "avoid, bypass, remove, deactivate, or impair" the username and password system required to log into the DMS. 17 U.S.C. § 1201(a)(3)(A). CDK, instead, only alleges that InDesign logged into the DMS using valid login credentials created and issued by the dealer.[10] *See supra* p. 3; Compl., ¶¶ 75, 108, 122. CDK does not allege that InDesign removed or bypassed the password system; rather, InDesign complied with that system by entering a valid username and password (as created and provided by the dealer). Nor has CDK alleged that InDesign did anything to remove, deactivate, or impair CDK's password system. Notably, while CDK alleges that Tekion built "new access channels" or a "tunnel" into the CDK DMS, *id.* ¶¶ 123, 130, 154, the complaint makes no such allegations against InDesign.

In light of the DMCA's plain text, courts have repeatedly held that the use of valid login credentials is not "circumvention" under the DMCA. "The wording of the statute indicates that 'circumvention' requires some manipulation of the technological measure at hand and ***certainly more than that a username and password was simply transferred into the hands of another***." *iSpot.TV*, 2023 WL 3602806, at \*6 (emphasis added); *Egilman v. Keller & Heckman, LLP*, 401 F. Supp. 2d 105, 113 (D.D.C. 2005) (holding that "using a username/password combination as intended—by entering a valid

---

[10] CDK implausibly alleges that InDesign "hid their tracks by deleting CDK's DMS data and records of Defendants' actions from CDK's and Dealerships' computer systems." Compl., ¶ 157. But the InDesign dealer contract that CDK cites merely states that "[o]nce the extraction of Dealer Data is complete, InDesign shall uninstall 1DMS software from the ***Dealer computers***," *id.* ¶ 75 (emphasis added), which has nothing to do with the DMS. In that example, InDesign helps dealerships transfer over their historical data when they are switching DMSs (i.e., from the CDK DMS to the Tekion DMS). When the DMS switch is complete, InDesign's service contract is over; it is entirely sensible to remove software when it is no longer needed. CDK provides no basis for ascribing a nefarious motive to something so unremarkable. *See, e.g.*, *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1049 (9th Cir. 2008) ("Allegations of facts that could just as easily suggest rational, legal business behavior by the defendants as they could suggest an illegal conspiracy are insufficient to plead a violation of the antitrust laws.").

username and password, albeit without authorization—does not constitute circumvention under the DMCA"); *Navistar, Inc. v. New Baltimore Garage, Inc.*, 2012 WL 4338816, at *5 (N.D. Ill. Sept. 12, 2012) (same); *Power v. Connectweb Techs., Inc.*, 740 F. Supp. 3d 39, 59 (D. Mass. 2024) (same); *Inquiry Mgmt. Sys. v. Berkshire Info. Sys.*, 307 F. Supp. 2d 521, 532 (S.D.N.Y. 2004) (same).  Indeed, in the antitrust MDL against CDK—where CDK raised without success these same DMCA claims against another independent integrator, Authenticom—the Court explained: "If [using dealer-provided login credentials to obtain access to CDK's DMS] is all that CDK alleged, ***the Court would agree that such an allegation would be insufficient to establish circumvention***" under the DMCA.  *In re Dealer Mgmt. Sys. Antitrust Litig.*, 362 F. Supp. 3d 558, 571 (N.D. Ill. 2019) (emphasis added).[11]  Because CDK alleges that InDesign did nothing more than use a valid username and password to access the DMS, it cannot show circumvention under the DMCA.

### ii.    CDK has not alleged InDesign circumvented any technological measure that "controls access" to any "copyrighted work"

Even if CDK had alleged circumvention (and it has not), CDK's claim must be dismissed because it cannot allege that InDesign circumvented any technological measure that "controls access" to any "[copyrighted] work."  17 U.S.C. § 1201(a)(1)(A).

CDK has already litigated and lost its copyright argument when it challenged Arizona's Dealer Data Law.  *See supra* p. 4.  In that case, CDK argued—just as it alleges here—that access to the DMS by dealer-authorized independent integrators violates CDK's copyright.  But the Ninth Circuit explained, CDK does "not hold a copyright in the [dealer] data itself, which consists of facts about dealers' customers and business operations."  *CDK Glob. LLC v. Brnovich*, 16 F.4th 1266, 1278 (9th Cir. 2021).  Accordingly, "dealers and authorized integrators would not infringe a DMS provider's copyright by making copies of the raw data in DMS databases, or even by copying subsets of that data arranged in particular ways by the provider."  *Id.* at 1279.  Moreover, the Ninth Circuit rejected CDK's argument that dealer-authorized independent integrators violate CDK's copyright by using CDK's own software, within the CDK system,

---

[11] The MDL court permitted CDK's DMCA claim against Authenticom to proceed to discovery based on allegations that Authenticom "implemented a software tool that automatically renewed user IDs that CDK had disabled" and used an "automated program to bypass" CAPTCHA prompts imposed by CDK.  *In re Dealer Management Sys.*, 362 F. Supp. 3d at 571–72.  CDK does not (and cannot) make any such allegations against InDesign.  In the MDL, CDK ultimately settled Authenticom's antitrust claims, notwithstanding CDK's CFAA and DMCA counterclaims.

to access dealer data on the DMS. *Id.* at 1276 ("We are unaware of any authority suggesting that causing a copyright holder to make a copy of its own copyrighted work and keep it within the copyright holder's exclusive possession would violate the Copyright Act.").

*Brnovich* forecloses CDK's DMCA claim against InDesign. CDK fails to allege even a single instance in which InDesign accessed or copied anything other than (non-copyrightable) dealer data on the CDK DMS. On the contrary, CDK's only allegation that InDesign copies anything from the CDK DMS is that InDesign "create[es] a copy *of the data* on its servers." Compl., ¶ 127 (emphasis added). Further, the InDesign dealer agreement that CDK cites in its complaint specifically states that "InDesign shall *extract Dealer Data*," *id.* ¶ 75, nothing else. As *Brnovich* held, 16 F.4th at 1279, CDK has no copyright over dealer data. Similarly, CDK's apparent allegation that, by accessing dealer data, InDesign violates CDK's copyright by creating random-access memory copies of CDK's software (within CDK's system) is foreclosed by *Brnovich*. Compl., ¶ 127; *Brnovich*, 16 F.4th at 1275–77.

Otherwise, CDK vaguely claims that InDesign's data integration software—which is installed on dealership-owned computers, not the CDK DMS, Compl., ¶ 75—"necessarily requires that InDesign obtain information about CDK's systems and infrastructure." *Id.* ¶ 77; *see also id.* ¶ 110. Those allegations are entirely conclusory; CDK simply does not identify any specific copyrighted works (under *Brnovich*) that InDesign accessed or copied onto InDesign's servers. Indeed, CDK's resort to selectively quoting an old InDesign webpage, *id.* ¶ 126, just drives home that InDesign accesses dealer data, not copyrighted expression. CDK alleges that InDesign told customers its data integration service can "access every part of the DMS," but CDK tellingly omitted the second half of the statement. The webpage in fact said that InDesign's service can "access every part of the DMS *that your application demands*," citing "Sales, Service, Parts, Accounting, and CRM *data*." Ex. B (emphasis added).

CDK, at bottom, is attempting to misuse copyright law by preventing dealers from working with independent integrators to access their own raw, non-copyrightable data—which is why states like Arizona, Oregon, and Montana enacted laws to protect dealers from CDK's market abuses. *Brnovich*, 16 F.4th at 1276 (noting that any incidental copying by dealer-authorized integrators may constitute fair use in any event); *Assessment Techs. of WI, LLC v. WIREdata, Inc.*, 350 F.3d 640, 641–42 (7th Cir. 2003)

(Posner, J.) ("The owner is trying to secrete the data in its copyrighted program . . . It would be appalling if such an attempt could succeed.").

### iii. CDK has not alleged that InDesign's service is "primarily designed" to circumvent technological measures

Finally, to the extent that CDK alleges InDesign has violated the DMCA because its data integration service is "primarily designed or produced" to circumvent technological measures, 17 U.S.C. § 1201(a)(2), that argument too fails as a matter of law.

As an initial matter, CDK's allegations with respect to Section 1201(a)(2) refer generically to Defendants, and do not identify conduct specific to InDesign. Compl., ¶ 177. To the extent CDK claims that Tekion's alleged "new access channels" and "tunnel" into the DMS violate Section 1201(a)(2), those allegations do not apply to InDesign. *See supra* p. 4; Compl., ¶¶ 123, 130, 154; *see, e.g., Aquilina v. Certain Underwriters at Lloyd's*, 407 F. Supp. 3d 978, 996 (D. Haw. 2019) (dismissing complaint that relies on impermissible group pleading).

Regardless, CDK has not alleged a violation of Section 1201(a)(2) with respect to InDesign. Because CDK has failed to allege that InDesign circumvents a technological measure with respect to the CDK DMS, it necessarily follows that CDK has not alleged that InDesign's data integration is "primarily designed" to circumvent such barriers and has no other "commercially significant purpose." 17 U.S.C. § 1201(a)(2); *Dish Network L.L.C. v. World Cable Inc.*, 893 F. Supp. 2d 452, 463–68 (E.D.N.Y. 2012) (holding that because defendants did not circumvent the plaintiff's system, plaintiff also failed to allege a Section 1201(a)(2) violation).

Nor does CDK adequately allege that InDesign's longstanding business has no other "commercially significant purpose" beyond circumventing technological access measures. § 1201(a)(2); *Ass'n for Information Media and Equipment v. Regents of the Univ. of Calif.*, 2012 WL 7683452, at *9 (C.D. Cal. Nov. 20, 2012) (dismissing DMCA claim where plaintiff failed to plead that the service at issue lacked a commercially significant purpose aside from circumventing technological protection measures). The InDesign webpage cited in CDK's complaint notes that InDesign's data integration services "fully supports the major Dealer Management Systems." Ex. B. Yet CDK only (incorrectly) alleges that InDesign's access circumvents ***CDK's*** technological access measures—it includes no

allegations explaining why InDesign's service with respect to dealer clients on other DMSs is not a "commercially significant purpose."

### D.    CDK's claim under the SCA (Count 3) must be dismissed

CDK's claim under the Stored Communications Act ("SCA"), 18 U.S.C. § 2701(a), must be dismissed because: (1) CDK has not alleged InDesign intentionally accessed CDK's system without authorization; and (2) dealers—who are undisputedly "users" of the CDK DMS—authorized InDesign's access, and so InDesign is exempt from SCA liability under the plain terms of the statute.

*First*, the SCA—just like the CFAA—requires CDK to allege (and then prove) that InDesign "intentionally accessed without authorization" CDK's system. *Id.* Accordingly, for the same reasons that CDK's CFAA claim must be dismissed based on its failure to allege that InDesign intentionally accessed CDK's system without authorization, CDK's SCA claim likewise must be dismissed. *See, e.g., hiQ Labs*, 31 F.4th at 1199–1200 (interpreting CFAA's "without authorization" provision consistently with the SCA); *Abu v. Dickson*, 107 F.4th 508, 520–21 (6th Cir. 2024) (dismissing SCA claim because the plaintiff failed to plead a claim under CFAA, as they have the "same theories of liability" and the "authorization and intent requirements in both Acts apply in the same way here"); *Cloudpath Networks, Inc. v. SecureW2 B.V.,* 157 F. Supp. 3d 961, 987 (D. Colo. 2016) ("[T]he CFAA's 'exceeds authorized access' phrase and the SCA's 'exceeds an authorization to access' phrase are analogous.").

*Second*, CDK fails to state a claim under the SCA because dealers—the users of the DMS—authorized InDesign's access to dealer data on the DMS. *See supra* p. 3. Dealer authorization forecloses SCA liability under the statute.

The SCA by its plain terms "does not apply with respect to conduct authorized . . . by a user of that service with respect to a communication of or intended by that user." 18 U.S.C. §§ 2701(a), (c)(2). As the Ninth Circuit has explained, the ordinary, unambiguous definition of "user" is someone who "put[s] action or service, avail oneself of, employ" the facility at issue, *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 880 (9th Cir. 2002)—here, the CDK DMS, Compl., ¶ 187–88. CDK's allegations show that dealers are undisputedly "users" of the DMS under *Konop*. Compl., ¶ 28 ("CDK grants dealerships who purchase its DMS services a personal, non-transferable license to *use* CDK's DMS") (emphasis added); *see also id.* ¶¶ 33, 47. And the information stored on the DMS is either created by or intended

for the dealer; indeed, CDK's entire case is built upon the assertion that only dealer employees—and not third parties or even the dealer's agents—are entitled to access the information on the DMS (at least without paying CDK for such access).  Compl., ¶¶ 28, 43, 47, 50, 55–60, 69, 150.

Accordingly, the § 2701 exemption to the SCA applies and forecloses CDK's claim under the SCA, regardless of the fact that CDK disputes dealers' contractual authority to authorize InDesign's access.  *Republic of Gambia v. Meta Platforms, Inc.*, 588 F. Supp. 3d 1, 7 (D.D.C. 2022) (holding that the exemption to liability under the SCA, under § 2701, "simply means" that the licensee used the service, even if that licensee later "exceeded the scope of that permission"); *id.* ("[I]t would make little sense to find these entities were not 'users' of Meta's ECS because they eventually violated the terms Meta imposed on their use of the platform.").

### E.    CDK's trade secrets claims under the DTSA (Count 4) and the CUTSA (Count 6) must be dismissed

CDK's trade secrets claims under the Defend Trade Secrets Act, 18 U.S.C. § 1831 ("DTSA") and the California Uniform Trade Secrets Act, Cal. Civ. Code § 3426 ("CUTSA"), must be dismissed.  CDK fails to meet the *Twombly* pleading standard on its trade secrets claims, because CDK has failed to allege that InDesign misappropriated any trade secrets to CDK's detriment.

To plead a claim under the DTSA or the CUTSA, a plaintiff must adequately allege that: (1) the plaintiff possessed a trade secret; (2) the defendant misappropriated the trade secret; and (3) the misappropriation caused or threatened damage to the plaintiff.  *Inteliclear LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653, 657–78 (9th Cir. 2020); *see also Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 877 (N.D. Cal. 2018) (noting that the elements required under the DTSA and CUTSA are the same).  CDK has alleged neither that InDesign misappropriated any trade secret nor any harm to CDK.

To allege misappropriation, "[a]lleging mere possession of trade secrets is not enough." *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 989 (S.D. Cal. 2012).  Rather, CDK must allege facts showing not only that InDesign had access to and possessed CDK's trade secrets, but that it used or disclosed those trade secrets to CDK's detriment.  *Id.*; *see also, e.g., Soil Retention Prods., Inc. v. Brentwood Indus., Inc.*, 521 F. Supp. 3d 929, 966 (S.D. Cal. 2021) (dismissing trade secret claim for failure to allege misappropriation, where the plaintiff only alleged the defendant possessed trade secrets, not that the defendant used the trade secrets).

CDK has failed to allege that InDesign has misappropriated any of CDK's trade secrets.  CDK alleges (albeit with little detail) that the DMS includes CDK's trade secrets such as forms, algorithms, and software code.  Compl., ¶ 35.  But with respect to the element of misappropriation, CDK, at most, vaguely claims that InDesign "necessarily" "obtained information about CDK's systems and infrastructure."  Compl., ¶¶ 77, 110.  Those allegations should be rejected as conclusory.  *See Mattel, Inc. v. MGA Entertainment, Inc.*, 782 F. Supp. 2d 911, 968 (C.D. Cal. 2011) (stating that "[a] plaintiff must do more than just identify a kind of technology and then invite the court to hunt through the details in search of items meeting the statutory definition [of a trade secret]," and dismissing an entire category of trade secrets for lack of particularity).  But even accepting them as true, mere possession of a trade secret is not sufficient to state a claim.  CDK has not alleged that InDesign ***misappropriated*** any particular CDK trade secret.  On the contrary, CDK's only specific allegation is that InDesign copies the data it pulls (at the dealer's request) from the DMS, *id.* ¶ 77, 127—but that data is owned by the dealer, not CDK, and certainly is not a CDK trade secret.  *Brnovich*, 16 F.4th at 1278–79; Compl., ¶ 293 (alleging that InDesign "misled Dealerships about their ability to retrieve ***their data***") (emphasis added); *see also Vendavo, Inc. v. Price f(x) AG*, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018) (dismissing trade secret misappropriation claims where the complaint failed to "sufficiently delineate timelines of the alleged acts of misappropriation and use of purported trade secrets").[12]

Because CDK has failed to allege with any particularity that InDesign misappropriated any CDK trade secrets, its claims under the DTSA and the CUTSA must be dismissed.  *See also Acculimage Diagnostics Corp. v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 951 (N.D. Cal. 2003) (dismissing plaintiff's misappropriation of trade secrets claim because plaintiff failed to allege sufficient specific conduct by defendant to state a claim for statutory trade secret misappropriation).

---

[12] CDK makes one passing reference to the "Defendants" using "improper means" to acquire CDK's alleged trade secrets.  Compl., ¶ 262.  But "improper means" is defined in the statute as referring to conduct such as theft, bribery, and espionage.  Cal. Civ. Code § 3426.1(a).  CDK provides no factual allegations of any such extreme conduct by InDesign.

1

### F.    CDK's tortious interference claim (Count 7) must be dismissed

2

CDK's claim for tortious interference with existing business relations must be dismissed, because

3

CDK fails to allege that InDesign committed intentional acts with the purpose of inducing a breach of

4

CDK's contracts with dealers, as well as its failure to allege facts supporting actual breach.

5

To state a claim for tortious interference with existing business relations, CDK must "plead facts

6

that if true, would establish (1) a valid contract between [CDK] and a third party, (2) [InDesign's]

7

knowledge of the contract, (3) [InDesign's] intentional acts designed to induce a breach or disruption of

8

the contractual relationship, (4) actual breach of the contractual relationship, and (5) resulting damage."

9

*Catch Curve, Inc. v. Venali, Inc.*, 519 F. Supp. 2d 1028, 1039 (C.D. Cal. 2007).  Critically, CDK fails on

10

both prongs three (intentional acts) and four (actual breach).

11

To allege intentional acts designed to induce a breach of an existing contract, plaintiffs must plead

12

that the defendant *knew* "that contractual interference or breach [was] a 'necessary consequence of his

13

action.'" *Rosenthal & Rosenthal of California, Inc. v. Hilco Trading, LLC*, 2020 WL 12948055, at *3

14

(C.D. Cal. Dec. 29, 2020), *aff'd*, 2022 WL 18906 (9th Cir. Jan. 3, 2022).  CDK provides no concrete

15

allegations to support its bare assertion, *see* Compl., ¶ 281, that InDesign had any specific knowledge

16

about the terms of CDK's contracts with dealers.  CDK did not object to InDesign's dealer-authorized

17

access method until **after** filing the complaint, *see supra* p. 2, and CDK otherwise alleges no facts

18

showing how and why InDesign would have seen or known about the specific terms of CDK's

19

confidential contracts with dealers.  *Rosenthal*, 2020 WL 12948055, at *3 ("At the very least, however,

20

the defendant must know that contractual interference or breach is a 'necessary consequence of his

21

action.'") (citing Restatement (Second) of Torts § 766); *see also Ixchel Pharma, LLC v. Biogen Inc.,* 2018

22

WL 558781, at *2 (E.D. Cal. Jan. 25, 2018) (dismissing tortious interference claim where "plaintiff has

23

not identified any evidence that indicates that defendant specifically told [party] to terminate its contract

24

with plaintiff . . . or to breach its contract in any other way").

25

Moreover, CDK fails to plead any specific instances of dealers breaching their contracts at

26

InDesign's behest.  To survive a motion to dismiss, CDK "must not only specify the [] contracts at issue,

27

but adequately allege how [InDesign's] intentional pre-termination conduct led to the disruption of these

28

contracts." *DirecTV, LLC v. E&E Enters. Glob., Inc.*, 2017 WL 6888500, at *5 (C.D. Cal. Nov. 20, 2017).

CDK alleges no such specifics.  The only example recited by CDK is a dealer that did **not** use InDesign's services.  Compl., ¶¶ 99–102.  CDK's tortious interference claim must be dismissed.  *See Agfa Corp. v. Richard*, 2018 WL 3078585, at *4 (C.D. Cal. June 1, 2018), *report and recommendation adopted*, 2018 WL 3078563 (C.D. Cal. June 20, 2018) (dismissal of tortious interference claim that "allege[d] in a conclusory manner that Defendant intentionally solicited Plaintiff's customers," without alleging "that Defendant's conduct actually disrupted a relationship with one of its customers, resulting in economic harm").

### G.    CDK's claim under California's UCL (Count 8) must be dismissed

CDK's claim under the California UCL must be dismissed because: (1) CDK lacks standing to assert a UCL claim, and (2) it has not alleged any cognizable unlawful, unfair, or fraudulent practices by InDesign.

***CDK has not alleged injury to competition and lacks standing under the UCL***:  As an initial matter, CDK's UCL claim must be dismissed because CDK lacks standing to assert that claim.  It is well established that California's UCL "has a major purpose [of] the preservation of fair business competition."  *Santana v. BSI Fin. Servs., Inc.*, 495 F. Supp. 3d 926, 951 (S.D. Cal. 2020) (internal quotations omitted).    "A plaintiff alleging a violation of unfair competition must allege harm **to competition**, not harm to an individual competitor."  *Silverlit Toys Manufactory Ltd. v. Rooftop Grp., USA, Inc.*, 2010 WL 11509314, at *7 (C.D. Cal. Jan. 21, 2010) (emphasis added).  CDK's UCL fails at the outset, because CDK has not alleged harm to competition, distinct from purported harm to CDK as a competitor.    *See* Compl., ¶¶ 290–297 (CDK's UCL claim, providing no allegations of harm to competition).

Harm to competition is conduct that harms the competitive process and thereby harms consumers through higher prices, lower quality, or reduced output.  *ESS Tech., Inc. v. PC-Tel, Inc.*, 1999 WL 33520483, at *3 (N.D. Cal. Nov. 4, 1999) (dismissing UCL claim because "[t]here is no allegation that consumers have been forced to pay higher prices or that the quality of the choices available to them has been adversely affected.");  *Epic Games, Inc. v. Apple, Inc.,* 67 F.4th 946, 1001 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 681 (2024) (affirming the district court's determination that Apple harmed competition

and violated the UCL where its conduct "decrease[d] consumer information, enabling supercompetitive profits and resulting in decreased innovation.") (cleaned up).

Here, CDK makes no attempt to allege that InDesign's dealer-authorized integration services somehow results in higher prices or reduced output. And CDK doesn't make any such allegation for good reason, because quite the opposite is true: InDesign is a lower-cost rival that CDK makes no bones about trying to eliminate from the market. *See* Compl., ¶ 299(a), (c) (CDK seeking to prevent InDesign from providing independent data integration services). The aim of CDK's lawsuit is therefore to ***reduce*** consumer choice, by depriving auto dealerships of the option to work with InDesign for data integration services. CDK is trying to inflict antitrust injury; it does not suffer from it.

Moreover, to establish standing under the UCL, a plaintiff also must allege lost money or property. *Schmitt v. SN Servicing Corp.*, 2021 WL 3493754, at *8 (N.D. Cal. Aug. 9, 2021); Cal. Bus. & Prof. Code §§ 17204, 17535. The "'lost money or property' requirement [] requires a plaintiff to demonstrate 'some form of economic injury' as a result of [its] transactions with the defendant." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 (9th Cir. 2013). Here, CDK does not allege that InDesign's purported unfair competition has caused CDK any cognizable economic injury. CDK cites no examples of lost customers or lost profits from allegedly unfair business practices by InDesign. On the contrary, the one dealer example that CDK cites with respect to InDesign concerned a dealer that did ***not*** use InDesign for data integration services. *Id.* ¶¶ 99–101; *KT Enters. LLC v. Comp360, LLC*, 751 F. Supp. 3d 999, 1005 (C.D. Cal. 2023) (dismissing a competitor UCL claim based on a lack of standing, where the plaintiff did not provide examples of "lost profits and a reduced customer base" due to the defendant's allegedly unfair practices).[13]

***CDK has not alleged unlawful, unfair, or fraudulent business practices***: To state a claim under the UCL, a "plaintiff must establish that the practice is either unlawful (i.e., is forbidden by law), unfair (i.e., harm to victim outweighs any benefit) or fraudulent (i.e., is likely to deceive members of the

---

[13] To the extent CDK argues that it lost money by investigating InDesign's access to the DMS, *see* Compl., ¶ 297, that is not cognizable injury under the UCL. Courts only permit competitor standing under the UCL when the plaintiff has lost sales or market share due to the defendant's allegedly unfair practice. *Allergan USA Inc. v. Imprimis Pharms., Inc.*, 2017 WL 10526121, at *13 (C.D. Cal. Nov. 14, 2017) (holding competitors may have standing under the UCL where they experienced "loss of market share and sales"); *Schmitt*, 2021 WL 3493574, at *8.

public).ʺ *Sonoma Foods, Inc. v. Sonoma Cheese Factory*, LLC, 634 F. Supp. 2d 1009, 1022 (N.D. Cal. 2007) (citing Cal. Bus. & Prof. Code § 17200).

CDK has not alleged unfair competition under any of these three prongs.

Unlawful conduct: ʺUnlawfulʺ conduct includes any business practice or act forbidden by local, state or federal statutes or by regulations of case law. *Adhav v. Midway Rent A Car, Inc.*, 37 Cal. App. 5th 954, 970 (Cal. Ct. App. 2019). Because CDKʹs other claims fail as a matter of law, CDK necessarily has failed to plead unlawful conduct for purposes of the UCL. *Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F. Supp. 1303, 1316 (N.D. Cal. 1997) (holding that where the other ʺcauses of action fail to state claims for relief,ʺ ʺthere is no underlying basis for the unfair competition claims as allegedʺ).

Unfair conduct: For purposes of the UCL, ʺunfairness must be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition.ʺ *Schmitt*, 2021 WL 3493754, at *11. To allege unfair conduct, CDK must identify business conduct that is ʺcomparable to or the same as a violation of the law,ʺ or that ʺotherwise significantly threatens or harms competition.ʺ *In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d 1197, 1227 (N.D. Cal. 2014) (cleaned up). CDK has not shown that InDesignʹs conduct is comparable to a violation of any law, with reference, for example, to legislative findings showing the public policy animating the law at issue. *Compare with In re Adobe Systems*, 66 F. Supp. 3d at 1227. On the contrary, CDK is the dominant firm, Compl., ¶ 2, trying to crush a much smaller business competitor. *123 Los Robles LLC v. Metzler*, 2017 WL 10311209, at *5 (C.D. Cal. Oct. 26, 2017) (ʺUnder the unfair prong of the UCL, the focus is on harm to competition, not to the competitor.ʺ). In short, CDK is a monopolist that has relentlessly sought to eliminate competition from independent data integrators, *see supra* pp. 1, 4–5; it is a serial perpetrator of unfair competition, not a victim. *See also hiQ Labs*, 31 F.4th at 1193–94 (noting that allowing companies ʺwhose servers hold vast amounts of public dataʺ to selectively exclude competitors ʺmay well be considered unfair competition under California lawʺ).

Fraudulent conduct: Under the UCLʹs ʺfraudulentʺ prong, plaintiffs must allege facts showing that the defendant ʺmade a knowingly false or misleading statementʺ with the ʺrequisite specificity.ʺ *Vardazaryan v. Liberty Mut. Fire Ins. Co., et al.*, 2023 WL 8884391, at *4 (C.D. Cal. Nov. 2, 2023). Here, CDK does not allege any false statements of fact by InDesign—much less a knowingly false or

misleading statement.  Nor does CDK allege the "how, when, where, to whom, and what and by what means the representations were tendered." *Vardazaryan*, 2023 WL 8884391, at *4 (quoting *Hills Transp. Co. v. Sw. Forest Indus.*, Inc., 266 Cal. App. 2d 707, 707 (1968)).

CDK's UCL claim should be dismissed.

## V.    <u>CONCLUSION</u>

The Court should dismiss CDK's complaint under Rule 12(b)(6).

Dated:  April 9, 2025                              **WINSTON & STRAWN LLP**


By: */s/ Joshua Hafenbrack*
     Joshua Hafenbrack (pro hac vice)
     jhafenbrack@winston.com
     1901 L Street NW
     Washington, DC 20036-3506
     Telephone: (202) 282-5017
     Fax: (202) 282-5100

     Jeanifer E. Parsigian (SBN: 289001)
     jparsigian@winston.com
     101 California Street, 35th Floor
     San Francisco, CA 94111
     Telephone: (415) 591-1000
     Facsimile: (415) 591-1400

     Jade Briana Baker (pro hac vice)
     jbbaker@winston.com
     1901 L Street NW
     Washington, DC 20036-3506
     Telephone: (202) 282-5872
     Fax: (202) 282-5100

     Counsel for Defendant INDESIGN DATA, LLC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I certify that on April 9, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all registered parties.


Dated:  April 9, 2025                    */s/ Joshua Hafenbrack*
                                         Joshua Hafenbrack

                                         Counsel for InDesign Data, LLC