Joshua Hafenbrack (*pro hac vice*)
jhafenbrack@winston.com
Jade Briana Baker (*pro hac vice*)
jbbaker@winston.com
Sydney Hartman (*pro hac vice*)
shartman@winston.com
**WINSTON & STRAWN LLP**
1901 L Street NW
Washington, DC 20036-3506
Telephone: (202) 282-5017
Fax: (202) 282-5100

Jeanifer E. Parsigian (SBN: 289001)
jparsigian@winston.com
**WINSTON & STRAWN LLP**
101 California Street, 35th Floor
San Francisco, CA 94111
Telephone: (415) 591-1000
Fax: (415) 591-1400

Bethany Ao (*pro hac vice*)
bao@winston.com
**WINSTON & STRAWN LLP**
35 West Wacker Drive
Chicago, IL 60601
Telephone: (312) 558-5600
Fax: (312) 558-5700

*Counsel for Defendant INDESIGN DATA, LLC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO

| | |
|---|---|
| **CDK GLOBAL, LLC,** | **Case No. 25-CV-01394-JSC** |
| Plaintiff, | **DEFENDANT INDESIGN DATA, LLC'S REPLY IN SUPPORT OF INDESIGN'S MOTION TO DISMISS** |
| vs. | |
| **TEKION CORP.**, a Delaware corporation, and **INDESIGN DATA, LLC**, a Florida limited liability company, | Date:     June 26, 2025<br>Time:     10:00 a.m.<br>Judge:    Hon. Jacqueline Scott Corley<br>              Courtroom 8, 19th Floor |
| Defendant. | |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 1

    A.    CDK fails to adequately plead a claim under the Computer Fraud and Abuse Act. ............. 1

    B.    CDK fails to adequately plead a claim under the Digital Millenium Copyright Act. ........... 7

    C.    CDK's claim under the Stored Communications Act must be dismissed .......................... 10

    D.    CDK's trade secret claims under the DTSA and CUTSA must be dismissed.................... 11

    E.    CDK's tortious interference claim must be dismissed ........................................ 12

    F.    CDK's claim under California's UCL must be dismissed.................................. 14

CONCLUSION.................................................................................................................. 15

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*7EDU Impact Academy Inc. v. You,*
   760 F. Supp. 3d 981 (N.D. Cal. 2024) ...................................................................11

*Actuate Corp. v. Internat'l Bus. Machines Corp.,*
   2010 WL 1340519 (N.D. Cal. Apr. 5, 2010) ...........................................................9

*ACW Flex Pack LLC v. Wrobel,*
   2023 WL 4762596 (N.D. Ill. July 26, 2023) ..........................................................11

*Adobe Sys. Inc. v. A & S Elecs., Inc.,*
   2015 WL 13022288 (N.D. Cal. Aug. 19, 2015) ....................................................8, 9

*Agfa Corp. v. Richard,*
   2018 WL 3078585 (C.D. Cal. June 1, 2018) ..........................................................14

*AtPac, Inc. v. Aptitude Sols., Inc.,*
   730 F. Supp. 2d 1174 (E.D. Cal. 2010)...............................................................3, 5

*Axia Fin., LLC v. Mason McDuffie Mortg. Co.,*
   2023 WL 7280443 (N.D. Cal. Sept. 20, 2023) .....................................................13

*CDK Global LLC v. Brnovich,*
   16 F.4th 1266 (9th Cir. 2021) ...............................................................................12

*CDK Global LLC v. Brnovich,*
   461 F. Supp. 3d 906 (D. Ariz. 2020) ......................................................................3

*Cel-Tech Comm. v. Los Angeles Cellular Tel. Co.,*
   20 Cal. 4th 168 (1999) ...........................................................................................15

*In re Dealer Mgmt. Sys. Antitrust Litig.,*
   362 F. Supp. 3d 558 (N.D. Ill. 2019) ......................................................................8

*In re Dealer Mgmt. Sys. Antitrust Litig.,*
   680 F. Supp. 3d 919 (N.D. Ill. 2023) ....................................................................14

*Domain Name Comm'n Ltd. v. Domain Tools, LLC,*
   449 F. Supp. 3d 1024 (W.D. Wash. 2020).........................................................5, 7

*Egilman v. Keller & Heckman, LLP,*
   401 F. Supp. 2d 105 (D.D.C. 2005) ........................................................................8

*Elevation Point. v. Gukasyan,*
   2022 WL 345647 (S.D. Cal. Feb. 3, 2022) .............................................................5

*Facebook, Inc. v. Power Ventures, Inc.*,
  844 F.3d 1058 (9th Cir. 2016) ..........................................................................2, 3

*First Advantage Background Servs. Corp. v. Priv. Eyes, Inc.*,
  2007 WL 2572191 (N.D. Cal. Sept. 5, 2007) .......................................................15

*In re Google Assistant Priv. Litig.*,
  546 F. Supp. 3d 945 (N.D. Cal. 2021) ..................................................................15

*Hatter v. Dyer*,
  154 F. Supp. 3d 940 (C.D. Cal. 2015) .....................................................................9

*hiQ Labs, inc. v. LinkedIn Corp.*,
  31 F.4th 1180 (9th Cir. 2022) ........................................................................2, 3, 5

*I.M.S. Inquiry Mgmt. Sys., Ltd. v. Berkshire Info. Sys., Inc.*,
  307 F. Supp. 2d 521 (S.D.N.Y. 2004) .....................................................................8

*iSpot.TV, Inc. v. Teyfukova*,
  2023 WL 3602806 (C.D. Cal. May 22, 2023) .....................................................7, 8

*Ixchel Pharma, LLC v. Biogen Inc.*,
  2018 WL 558781 (E.D. Cal. Jan. 25, 2018) ..........................................................13

*King v. Navy Federal Credit Union*,
  699 F. Supp. 3d 864 (C.D. Cal. 2023) .....................................................................9

*LVRC Holdings LLC v. Brekka*,
  581 F.3d 1127 (9th Cir. 2009) ............................................................................2, 4

*Meta Platforms, Inc. v. BrandTotal Ltd.*,
  605 F. Supp. 3d 1218 (N.D. Cal. 2022) ...................................................................4

*Microsoft Corp. v. EEE Bus. Inc.*,
  555 F. Supp. 2d 1051 (N.D. Cal. 2008) ...................................................................9

*Multiven, Inc. v. Cisco Sys., Inc.*,
  725 F. Supp. 2d 887 (N.D. Cal. 2010) .....................................................................5

*Niantic, Inc. v. Global++*,
  2019 WL 8333451 (N.D. Cal. Sept. 26, 2019) ........................................................6

*NNG, KFT. v. AVA Enters., Inc.*,
  2015 WL 5442725 (C.D. Cal. July 8, 2015) ...........................................................10

*Republic of Gambia v. Meta Platforms, Inc.*,
  588 F. Supp. 3d 1 (D.D.C. 2022) ...........................................................................11

*Rockwell Collins, Inc. v. Wallace*,
  2017 WL 5502775 (C.D. Cal. Nov. 10, 2017) .......................................................12

*Rosenthal & Rosenthal of Cal., Inc. v. Hilco Trading, LLC*,
    2020 WL 12948055 (C.D. Cal. Dec. 29, 2020) ...................................................12

*Sandvig v. Barr*,
    451 F. Supp. 3d 73 (D.D.C. 2020) ...................................................................4, 5

*Shamrock Foods Co. v. Gast*,
    535 F. Supp. 2d 962 (D. Ariz. 2008) .....................................................................5

*Silicon Knights, Inc. v. Crystal Dynamics, Inc.*,
    983 F. Supp. 1303 (N.D. Cal. 1997) ....................................................................15

*Silverlit Toys Manufactory Ltd. v. Rooftop Grp., USA, Inc.*,
    2010 WL 11509314 (C.D. Cal. Jan. 21, 2010) ....................................................14

*State Analysis, Inc. v. American Financial Services Assoc..*,
    621 F. Supp. 2d 309 (E.D. Va. 2009) ...................................................................5

*Synopsys, Inc. v. InnoGrit Corp.*,
    2019 WL 4848387 (N.D. Cal. Oct. 1, 2019) ..........................................................8

*Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*,
    315 F. Supp. 3d 1147 (C.D. Cal. 2018) .................................................................6

*TMX Funding, Inc. v. Impero Techs., Inc.*,
    2010 WL 2509979 (N.D. Cal. June 17, 2010) .....................................................12

*Tradeshift, Inc. v. BuyerQuest, Inc.*,
    2020 WL 8920622 (N.D. Cal. May 20, 2020) .....................................................13

*United States v. Nosal*,
    844 F.3d 1024 (9th Cir. 2016) ......................................................................2, 3, 4

*Variblend Dual Dispensing Sys. LLC v. Crystal Int'l (Grp.) Inc.*,
    2022 WL 17156550 (S.D.N.Y. Nov. 22, 2022) ...................................................13

*WalkMe Ltd. v. Whatfix, Inc.*,
    2024 WL 1221960 (N.D. Cal. Mar. 21, 2024).............................................3, 4, 5, 6

*WalkMe Ltd. v. Whatfix, Inc.*,
    No. 23-cv-03991-JSW (N.D. Cal. Aug. 8, 2023) ...................................................6

**Statutes**

17 U.S.C. § 1201(a)(1)(A) ...........................................................................................7

17 U.S.C. § 1201(a)(2).............................................................................................9, 10

17 U.S.C. § 1201(a)(2)(C) ..........................................................................................10

17 U.S.C. § 1201(a)(3)(A) ........................................................................................... 7

18 U.S.C. § 1030(c)(4)(A)(i)(I) .................................................................................. 7

18 U.S.C § 1030(g) ...................................................................................................... 6

18 U.S.C. § 2701 ........................................................................................................ 11

18 U.S.C. § 2701(c)(2) ............................................................................................... 11

Computer Fraud and Abuse Act ......................................................................... *passim*

Digital Millenium Copyright Act ........................................................................ *passim*

Stored Communications Act .................................................................................. 1, 11

1

**INTRODUCTION**

2      Plaintiff CDK Global, LLC's ("CDK") complaint against InDesign Data, LLC ("InDesign")

3  should be dismissed in its entirety.  CDK's complaint is a thinly veiled bid to drive out one of the last

4  remaining data integration competitors, based on flawed legal theories and insufficient allegations.

5      ***First***, CDK's claim under the Computer Fraud and Abuse Act ("CFAA") must be dismissed

6  because CDK has not alleged that InDesign intentionally accessed the Dealer Management System

7  ("DMS") dealer database without authorization.  On the contrary, InDesign has always had express

8  permission from dealers to access the DMS dealer database—and CDK never objected to, much less

9  sought to rescind, that permission prior to filing its lawsuit.  Nor has CDK alleged any conduct that is

10 analogous to breaking and entering, as required to state a claim under the CFAA.  CDK's argument that

11 InDesign was never authorized, because it lacked CDK's affirmative permission, ignores the well-

12 established caselaw that permission from a system licensee is sufficient to negate criminal liability under

13 the CFAA, especially where (as here) the owner never objected to that permission.

14     ***Second***, CDK's claim under the Digital Millenium Copyright Act ("DMCA") must be dismissed

15 because CDK has not alleged InDesign "circumvented" any technical barrier to access.  Entering a valid

16 username and password satisfies rather than circumvents CDK's technical access requirements.  CDK's

17 opposition fails to engage with the DMCA's plain text and flies in the face of the overwhelming

18 authority on this question, in this District and elsewhere.

19     ***Third***, CDK's remaining claims likewise should be dismissed for the reasons described below.

20

**ARGUMENT**

21  **A.      CDK fails to adequately plead a claim under the Computer Fraud and Abuse Act.**

22     CDK's CFAA claim must be dismissed because CDK has not alleged that InDesign

23 "intentionally" accessed the CDK DMS "without authorization."  Because CDK never revoked or even

24 objected to InDesign's dealer-authorized access to dealer data on the DMS, its CFAA claim fails as a

25 matter of law under Ninth Circuit precedent.  Using valid dealer-provided login credentials for more

26 than a decade, without a word of objection from CDK, bears no resemblance to the "breaking and

27 entering" conduct required to support a CFAA claim.  Nor can CDK show the required loss under the

28

statute.

1.    CDK's CFAA claim must be dismissed because CDK did not expressly and affirmatively revoke InDesign's dealer authorization to access the DMS, as required to state a CFAA claim.  CDK has not alleged that InDesign "intentionally" accessed the CDK DMS "without authorization," such that InDesign can be treated on equal terms with a criminal computer hacker.

CDK's complaint shows that InDesign has provided dealer-authorized data integration services since 2013, using authorization and login credentials provided by the dealer.  Dkt. 1, Compl., ¶¶ 75, 108, 122.  CDK makes no allegation that, prior to filing its complaint, CDK ever objected to InDesign's dealer-authorized access, whether through a formal letter, email, phone call, or any other means.  Indeed, while CDK sent cease-and-desist letters to Tekion in 2024, it never sent any such correspondence to InDesign.  Dkt. 52, InDesign's Motion to Dismiss ("Mot."), at 7.

Ninth Circuit law forecloses CDK's CFAA claim under these circumstances.  In *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058 (9th Cir. 2016), for example, the Ninth Circuit "distill[ed]" "general rules" for when the CFAA can apply: "a defendant can run afoul of the CFAA when he or she has no permission to access a computer or when such permission has been revoked explicitly."  *Id.* at 1067.  Here, CDK's complaint alleges neither basis for CFAA liability.[1]  Mot. at 6–8; *see also United States v. Nosal*, 844 F.3d 1024, 1034 (9th Cir. 2016) ("*Nosal II*") (noting that "unauthorized access" is "getting into the computer after categorically being barred from entry"); *id.* at 1035–36 (CFAA liability attached after Nosal "received particularized notice of his revoked access").[2]

---

[1] CDK tries to label InDesign an outside "hacker," but CDK has not alleged that InDesign somehow broke into the DMS without **any** permission.  Rather, as noted, InDesign accesses the DMS with dealer authorization and using login credentials provided by the dealer.  *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1135 (9th Cir. 2009) (defining "without authorization" as "when the person has not received permission to use the computer for any purpose (such as when a hacker accesses someone's computer without any permission)").

[2] CDK notes (at 9–10) *Power Ventures* was a summary judgment decision, but the Ninth Circuit's analysis did not turn on factual development into whether Power Ventures reasonably relied on user permission, as CDK incorrectly frames the analysis.  Rather, the Ninth Circuit looked to **Facebook's** conduct in explicitly revoking that user permission as the minimum starting point for CFAA liability.  *Power Ventures*, 844 F.3d at 1068.  hiQ, meanwhile, did not obtain permission from any party to scrape data from LinkedIn's servers—yet the Ninth Circuit took it as a given that CFAA liability could only arise after LinkedIn sent its cease-and-desist letter.  *hiQ Labs*, 31 F.4th at 1195 ("The pivotal CFAA question here is whether once hiQ received LinkedIn's cease-and-desist letter, any further scraping and use of LinkedIn's data" violated the CFAA).

CDK (at 7) vaguely asserts that InDesign "was made aware" that CDK "would not" authorize InDesign's access—but CDK does not allege that it ever said so to InDesign, much less expressly and explicitly.  Indeed, CDK's opposition cites complaint allegations referencing confidential contract terms (Compl., ¶¶ 28, 57, 61, 153) between CDK and dealers that CDK never alleges it raised with InDesign.  And CDK's contractual allegations only underscore why CDK's CFAA claim is fatally flawed.  Because CDK never rescinded (or even objected to) InDesign's dealer-authorized access, CDK's only basis for claiming that access was "without authorization" is that dealers ran afoul of CDK's contractual policies by authorizing InDesign's access.  Compl., ¶¶ 55–57, 150.  But the Ninth Circuit has squarely foreclosed the contract theory of CFAA liability.  *Nosal II*, 844 F.3d at 1034; *WalkMe Ltd. v. Whatfix, Inc.*, 2024 WL 1221960, at *5 (N.D. Cal. Mar. 21, 2024) (rejecting contractual argument); *AtPac, Inc. v. Aptitude Sols., Inc.*, 730 F. Supp. 2d 1174, 1182 (E.D. Cal. 2010) ("*AtPac II*") ("[T]he court is unwilling to stretch the scope of the CFAA to encompass [the defendant's] alleged exploitation of Nevada County's violation of its license agreement with plaintiff.").

CDK's core argument—that InDesign access was never authorized because it did not have CDK's blessing—misses the crux of the argument:  InDesign had permission ***from dealers***.  The CFAA "does not limit how access might be authorized," *CDK Global, LLC v. Brnovich*, 461 F. Supp. 3d 906, 915 (D. Ariz. 2020), and courts have repeatedly found that permission from a licensee or customer is sufficient to negate criminal CFAA liability at minimum until the system owner explicitly revokes that permission.  *See, e.g.*, *WalkMe*, 2024 WL 1221960, at *5 (dismissing CFAA claim where the defendant "used customer credentials to access the WalkMe platform"); *Power Ventures*, 844 F.3d at 1067 (permission from users was sufficient until Facebook sent a cease-and-desist and implemented IP blocks); *AtPac II*, 730 F. Supp. 2d at 1182 (dismissing CFAA claim where the defendant used login credentials provided by the licensee and with the licensee's "express permission").[3]

---

[3] CDK's argument (at 7–8) that "[o]nly CDK has the authority to grant access to its DMS computer systems" has no support in the CFAA's text and is the same argument the court rejected in *Brnovich*. 461 F. Supp. 3d at 915.  As noted, many cases have found authorization by licensees sufficient to negate CFAA liability and, here, CDK does not allege that it ever repudiated or rescinded InDesign's dealer authorization before filing the complaint.  CDK cites (at 7–8) *Nosal II*, but the employer in that case had "affirmatively revoked" its former employee's credentials.  844 F.3d at 1028.

CDK's claim that InDesign's dealer-created login credentials were somehow "fictitious," (Dkt. 69, CDK's Opposition to InDesign's Motion to Dismiss ("Opp.") at 8; Compl., ¶ 237), is entirely conclusory. *WalkMe*, 2024 WL 1221960, at *5 (disregarding conclusory claims that account credentials were "fake"). CDK's complaint alleges that dealers create standard DMS credentials for InDesign, which are labeled 1DMS. Compl., ¶ 108. CDK provides no evidence (because there is none) that InDesign has ever tricked dealers into providing those credentials.

The requirement that the system owner explicitly rescind access, in circumstances where the defendant previously had unrevoked permission, cabins the CFAA to its purpose of targeting criminal hackers. *Meta Platforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp. 3d 1218, 1260 (N.D. Cal. 2022) (noting the "Ninth Circuit has favored an interpretation of the statute that maintains the CFAA's focus on hacking rather than turning it into a sweeping Internet-policing mandate"); *Nosal II*, 844 F.3d at 1033 (the "mens rea element of the statute is critical" to ensuring the law "targets knowing and specific conduct" and avoids the "parade of hypotheticals"). The facts as alleged here illustrate the danger: InDesign has operated since 2013 using dealer authorization and dealer-provided credentials, Compl., ¶¶ 72, 75, 122, without objection from CDK. CDK thus claims the extraordinary power to sleep on its purported rights for a decade-plus and then invoke the criminal machinery of the CFAA out of the blue, with no notice to InDesign, based on its (disputed) claim that dealers had no right to authorize InDesign's access as they have done for 13 years. *Sandvig v. Barr*, 451 F. Supp. 3d 73, 87 (D.D.C. 2020) ("[E]nabling private website owners to define the scope of criminal liability does raise concerns for the Court."); *see also Brekka*, 581 F.3d at 1134–35 (holding that the CFAA "is primarily a criminal statute" and its interpretation must be guided by the rule of lenity).

CDK's opposition does not cite a single case from this District imposing CFAA liability in circumstances like this one, where a defendant used valid login credentials and express authorization provided by the system licensee (i.e., dealers) without objection or a cease-and-desist letter from the system owner (i.e., CDK). CDK's discussion of *AtPac*, 2010 WL 1779901 ("*AtPac I*") (at 11–12) fails to note that, after the court dismissed the initial CFAA claim, the plaintiff amended the complaint to allege that the defendant Aptitude had specific knowledge that the system licensee (Nevada County)

1  lacked the contractual authority to create Aptitude's login.  *AtPac II*, 730 F. Supp. 2d at 1182.  The court

2  still dismissed the CFAA claim, because Aptitude accessed the system "openly with its own log-in and

3  with Nevada County's express permission."  *Id.*  The same is true here.   Compl., ¶¶ 75, 108, 122.[4]

4          CDK's other cases are inapposite.  In *Elevation Point v. Gukasyan*, 2022 WL 345647 (S.D. Cal.

5  Feb. 3, 2022), the plaintiff had "rescinded permission" by explicitly informing the defendant that "her

6  access to company documents and files would be removed," after which the system owner "turned off

7  her access to electronic data."  *Id.* at *5.  In *Multiven, Inc. v. Cisco Sys., Inc.*, 725 F. Supp. 2d 887 (N.D.

8  Cal. 2010), a former employee was given permission by a Cisco employee to access the system on a

9  single occasion—but the former employee in fact accessed Cisco's system on many other occasions,

10  unbeknownst to the employee who provided the login credentials.  *Id.* at 894.  In contrast, CDK does not

11  allege InDesign ever acted without the dealer's express authorization.

12          **2.**       CDK's CFAA claim should be dismissed because the complaint does not allege that

13  InDesign engaged in conduct "analogous to breaking and entering," as required to support a CFAA

14  claim.  *hiQ Labs*, 31 F.4th at 1196–97.

15          The CFAA is primarily a criminal law that is trained on conduct analogous to "physical-world

16  crimes," such as "forced entry" and "theft."  *Sandvig*, 451 F. Supp. 3d at 86; *Domain Name*, 449 F.

17  Supp. 3d at 1029 ("The forbidden conduct is analogous to 'breaking and entering,' where defendant has

18  unlawfully intruded into otherwise inaccessible computers (or portions thereof) in a form of trespass.");

19  *Shamrock Foods Co. v. Gast*, 535 F. Supp. 2d 962, 965–66 (D. Ariz. 2008) ("Simply stated, the CFAA

20  is a criminal statute focused on criminal conduct.  The civil component is an afterthought.").  Here,

21  however, InDesign accessed the DMS dealer database using accounts and credentials created by the

22  dealer.  Compl., ¶¶ 75, 108, 122.  Entering a valid username and password, provided by the system

23  licensee without objection, bears no resemblance to the physical-world crime of breaking and

24  entering—any more than entering an apartment at the invitation of the tenant does.

25  _____

26  [4] CDK relies on *State Analysis v. American Financial Servs.*, 621 F. Supp. 2d 309, 316 (E.D. Va. 2009),
   but that case cited no authority for its reasoning—which courts in this District have declined to follow.

27  *AtPac II*, 730 F. Supp. 2d at 1182; *WalkMe*, 2024 WL 1221960, at *5.  Notably, a WestLaw search
   shows that the only two courts to cite the relevant one-paragraph analysis in *State Analysis* are the two

28  *AtPac* decisions declining to follow it.

*WalkMe* is on all fours with this case. There, the defendant, Whatfix, like InDesign, "used customer credentials to access the WalkMe platform." 2024 WL 1221960, at *5. And the computer owner WalkMe, like CDK, claimed that "Whatfix's use of the credentials was not allowed under the customers' contracts or authorized in any way." *Id.* The court nevertheless dismissed the CFAA claim, because the complaint did not allege that Whatfix had "tricked WalkMe customers into providing them with credentials" or gained those credentials through some other nefarious method, such as "phishing." *Id.* Using valid customer-supplied credentials, the court held, is not "the type of breaking and entering prohibited by the CFAA." *Id.* The same is true here: InDesign's use of valid dealer login credentials, without objection from CDK, is not the type of breaking and entering prohibited by the CFAA.[5]

CDK's cited cases (at 11) are far afield from the facts alleged here, as they all involved defendants that circumvented technological measures specifically preventing their access to the system without ***any*** form of authorization by the system's users. The defendant in *Niantic, Inc. v. Global++*, 2019 WL 8333451 (N.D. Cal. Sept. 26, 2019), was an "association of hackers" that "circumvent[ed]" technical security measures guarding the plaintiff's mobile games, in order to create "Cheating Programs" to sell to users. *Id.* at *1. The defendant did not access the games with user login credentials and, what's more, Niantic sent the defendants a cease-and-desist letter prior to the litigation. *Id.* at *6. *Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*, 315 F. Supp. 3d 1147 (C.D. Cal. 2018) is similarly inapt. Ticketmaster sent the defendant cease-and-desist letters prior to filing suit, *id.* at 1171, and the defendant accessed the Ticketmaster system not with user credentials but rather through various technological schemes involving software bots, cookie trading, and CAPTCHA farms, *id.* at 1155.

**3.** Finally, CDK's CFAA claim also must be dismissed because CDK has not alleged at least $5,000 in damages or loss in a one-year period "by reason of a violation" of the CFAA. *See* 18 U.S.C § 1030(g); *id.* § 1030(c)(4)(A)(i)(I). CDK does not dispute that its alleged losses (taking them as true for purposes of the motion to dismiss) necessarily occurred *before* CDK sent any cease-and-desist

---

[5] Indeed, in *WalkMe*, the court dismissed the CFAA claim even though the plaintiff (unlike CDK) sent a cease-and-desist letter to the defendant prior to filing suit. Dkt. 1, Compl., ¶¶ 62–66, *WalkMe Ltd. v. Whatfix, Inc.*, No. 23-cv-03991-JSW (N.D. Cal. Aug. 8, 2023). Additionally, in *WalkMe* the defendant sought an indemnification regarding its access, 2024 WL 1221960, at *5, which made no difference to the court's analysis.

letter to InDesign.  Because "the only potential violations of the CFAA" occurred after CDK filed its lawsuit, the complaint fails to allege the requisite financial loss as a matter of law.  *Domain Name*, 449 F. Supp. 3d at 1030.  CDK's sole argument on this point (at 13) is that *Domain Name* is distinguishable because the defendant there had a "limited license" to use the system until the defendant revoked that permission.  But the same is true here: InDesign had permission (from dealers) to access the DMS, which CDK never rescinded or objected to before filing suit.

**B.      CDK fails to adequately plead a claim under the Digital Millenium Copyright Act.**

CDK's DMCA claims must be dismissed because InDesign only accessed the DMS by entering a valid username and password, which is not "circumvention."  CDK also fails to allege that InDesign has violated the anti-trafficking prong of the DMCA because InDesign's products are not "primarily designed" to circumvent access barriers or marketed for that purpose.

**1.**      CDK's DMCA claim must be dismissed because it has not alleged that InDesign "circumvent[ed]" any technological measures to obtain access to the CDK DMS.  17 U.S.C. § 1201(a)(1)(A).  Rather, CDK only alleges that InDesign accesses the DMS database by entering a dealer-created username and password, Compl., ¶¶ 75, 96, 108, 122—which is not circumvention under either the DMCA's plain text nor the cases applying the DMCA.

***First***, the DCMA defines "circumvention" as actions "to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner."  17 U.S.C. § 1201(a)(3)(A); *iSpot.TV, Inc. v. Teyfukova*, 2023 WL 3602806, at *5 (C.D. Cal. May 22, 2023) (circumvention analysis "must begin with the text of the DMCA").  Entering a valid username and password does not meet any of the statutory criteria.  CDK's opposition offers no textual argument that entering a valid password somehow avoids, bypasses, removes, deactivates, or impairs CDK's password system.

***Second***, as InDesign showed in its motion to dismiss, courts have consistently held that merely entering a username and password is not "circumvention" under the DMCA.  *See* Mot. at 13–14 (citing cases); *iSpot.Tv., Inc.*, 2023 WL 3602806, at *6 ("The wording of the statute indicates that 'circumvention' requires some manipulation of the technological measure at hand and certainly more

than that a username and password was simply transferred into the hands of another."); *Adobe Sys. Inc. v. A & S Elecs., Inc.*, 2015 WL 13022288, at *8 (N.D. Cal. Aug. 19, 2015) (similar and citing cases); *Egilman v. Keller & Heckman, LLP*, 401 F. Supp. 2d 105, 113 (D.D.C. 2005) (similar).  Indeed, in the Antitrust MDL against CDK, the Northern District of Illinois held that entering dealer-provided login credentials "would be insufficient to establish circumvention" under the DMCA.  *In re Dealer Mgmt. Sys. Antitrust Litig.*, 362 F. Supp. 3d 558, 571 (N.D. Ill. 2019) ("Antitrust MDL").  CDK's DMCA claim proceeded to discovery only because CDK alleged that Authenticom engaged in ***other*** circumvention conduct—such as using software tools to automatically renew disabled user IDs and bypass CAPTCHA prompts.  *Id.* at 571–72.  Those allegations are conspicuously missing from CDK's complaint against InDesign.  CDK responds (at 17 n.6) that InDesign's 1DMS software is automated software to bypass IP restrictions, but that is incorrect (*see infra* pp. 9–10) and just begs the question:  the 1DMS software only gains access to the DMS through login credentials provided by the dealer.  *E.g.*, *I.M.S. Inquiry Mgmt. Sys., Ltd. v. Berkshire Info. Sys., Inc.*, 307 F. Supp. 2d 521, 532 (S.D.N.Y. 2004) (dismissing DMCA claim where the complaint "never accuses defendant of accessing the e-Basket system without first entering a plaintiff-generated password").

Tellingly, CDK does not cite any case where a court held that entering a valid username and password constitutes circumvention under the DMCA.  CDK's reliance (at 16) on *Synopsys, Inc. v. InnoGrit Corp.*, 2019 WL 4848387 (N.D. Cal. Oct. 1, 2019), is misplaced because the defendant there engaged in circumvention conduct far beyond entering a username and password.  The defendant "affirmatively manipulated the identifying information of at least 15 InnoGrit computers . . . to bypass" restrictions, *id.* at *2, and "altered identifying information on [Synopsys'] computers and servers located in California," *id.* at *8.  The court explicitly distinguished *Egilman* (cited above), because *Egilman* "concern[ed] the mere use or distribution of unauthorized passwords and license keys, without any additional actions taken on the part of the defendants."  *Id.* at *9.

*Actuate* and *321 Studios* are inapplicable because they involved DMCA claims that the defendant, unlike InDesign, *distributed* passwords to third parties, allegedly violating Section 1201(a)(2).  *See Actuate Corp. v. Internat'l Bus. Machines Corp.*, 2010 WL 1340519, at *2 (N.D. Cal.

1   Apr. 5, 2010) (defendant posted plaintiff's software and related materials, including license keys, on the

2   internet); *Microsoft Corp. v. EEE Bus. Inc.*, 555 F. Supp. 2d 1051, 1059 (N.D. Cal. 2008) (defendant

3   distributed a code used to unlock media programming).  CDK has not alleged that InDesign distributed

4   dealer-created login credentials.  Regardless, the more recent *Adobe* decision from this District

5   dismissed a DMCA claim after holding that "allegedly unauthorized distribution of otherwise genuine

6   and valid serial license keys" is "not covered by the DMCA."  2015 WL 13022288, at *8.

7       ***Third***, CDK attempts (at 16–17) to salvage its DMCA claim by arguing that InDesign's software

8   enables dealers to "bypass the private network restrictions through the Dealerships' IP addresses."  As

9   an initial matter, that allegation does not appear in CDK's complaint, which alleges that InDesign

10  accessed the DMS through login credentials provided by the dealer.  Compl., at ¶¶ 75, 96, 108, 122.

11  None of the complaint paragraphs that CDK cites in its opposition mention the purported use of the

12  dealers' IP address to somehow bypass private network restrictions.  *See* Opp. at 16 (citing Compl., at

13  ¶¶ 96, 105–109, 237).  CDK cannot add new allegations in its opposition brief.  *See King v. Navy*

14  *Federal Credit Union*, 699 F. Supp. 3d 864, 870 (C.D. Cal. 2023) ("Plaintiff may not amend his

15  allegations through facts raised in an opposition to a motion to dismiss."); *Hatter v. Dyer*, 154 F. Supp.

16  3d 940, 943 n. 2 (C.D. Cal. 2015) (similar).

17      Regardless, the fact that dealerships download InDesign's software on dealership computers does

18  nothing to show that InDesign is circumventing any CDK technological measures.  CDK does not allege

19  that it has imposed (or could impose) any technological measure that prevents dealers from installing the

20  1DMS software ***on their own computers***.  To the extent CDK now says it has imposed a technological

21  measure requiring DMS access to originate from dealership computer IP addresses—which is not

22  alleged in the complaint—InDesign complies with rather than bypasses that requirement, because

23  InDesign's software accesses the DMS database from dealership computers.  *See* Compl., ¶ 75.

24      **2.**    CDK also fails to allege that InDesign violated the anti-trafficking provision of the

25  DMCA.  17 U.S.C. § 1201(a)(2).

26      ***First***, CDK makes no real attempt to argue it has adequately alleged that InDesign's data

27  integration software is "primarily designed" to circumvent access barriers and has no other

28

1  "commercially significant purpose."  § 1201(a)(2).  As InDesign noted in its motion (at 16–17), it has

2  provided data integration services for 13 years, across all different DMS types; CDK makes no attempt,

3  in either its complaint or opposition brief, to allege or explain why InDesign's longstanding business is

4  not a commercially significant purpose.  CDK thus has offered ***no*** plausible allegations—or any

5  argument—to show that InDesign's software is primarily designed to circumvent access barriers.

6    ***Second***, CDK also has not alleged that InDesign traffics in or markets circumventing technology

7  under § 1201(a)(2)(C).  CDK's sole allegation (at 18) in this regard quotes a partial snippet from an old

8  webpage advertising InDesign's 1DMS software.  But on its face, that webpage marketed InDesign's

9  data integration service—not any technology to surmount CDK's password protections.  On the

10  contrary, 1DMS can only access the DMS and perform its data integration tasks with separate login

11  credentials provided by the dealer.  Compl., ¶¶ 75, 122; *NNG, KFT. v. AVA Enters., Inc.*, 2015 WL

12  5442725, at *4–5 (C.D. Cal. July 8, 2015) (dismissing § 1201(a)(2) claim where the product did not

13  perform the circumvention, as "the purpose of Section 1201(a)(2) [is] to prevent the trafficking of

14  devices that allow consumers to conduct the circumvention themselves").

15    **C.**  **CDK's claim under the Stored Communications Act must be dismissed**

16    CDK fails to allege a claim under the SCA for two reasons: (1) CDK has not alleged that

17  InDesign intentionally accessed the DMS without authorization; and (2) the "users" of the DMS

18  (dealers) authorized InDesign's access, so InDesign is exempt from liability under 18 U.S.C. § 2701.

19    ***First***, the parties agree that "without authorization" has the same meaning under the CFAA and

20  the SCA.  Opp. at 19.  Accordingly, CDK's SCA claim should be dismissed for the same reasons as its

21  CFAA claim.  *See supra* pp. 2–7.

22    ***Second***, the SCA exempts from liability conduct authorized "by a user of that service with

23  respect to a communication of or intended for that user."  18 U.S.C. § 2701(c)(2).  CDK (at 19) does not

24  dispute that the dealer is the "user" of the DMS.  *See Republic of Gambia v. Meta Platforms, Inc.*, 588 F.

25  Supp. 3d 1, 7 (D.D.C. 2022).  CDK instead argues (at 19) that the § 2701 exception does not apply

26  because InDesign purportedly accessed files containing "CDK or third-party proprietary data" not

27  intended for the user.  That contention does not make sense and is not supported by any plausible factual

28

allegations.  CDK's entire case is premised on the assertion that ***only*** dealership employees can access and use the DMS.  Compl., ¶¶ 47–50.  If data was stored on the DMS that was not intended for the dealer, it would serve no purpose at all.  The two complaint paragraphs CDK cites (at 19) for the proposition that InDesign accessed CDK or third-party proprietary data are entirely conclusory and refer to "Defendants" generically, Compl., ¶¶ 110, 112, and are inconsistent with other allegations in the complaint, see id. ¶ 75 ("InDesign shall extract the Dealer Data"), ¶ 98.  CDK's cited case, ACW Flex Pack LLC v. Wrobel, 2023 WL 4762596 (N.D. Ill. July 26, 2023), is distinguishable because the "user" there was one employee who gave the defendant access to the "entire system." Id. at *11.  In this case, by contrast, the "entire system" is intended for use by the dealership, see Compl., ¶¶ 47–50, and CDK does not allege that dealers grant InDesign access to the entire system in any event.6

### D.    CDK's trade secret claims under the DTSA and CUTSA must be dismissed

CDK's trade secret claims under state and federal law must be dismissed because CDK has not made any plausible factual allegations that InDesign "misappropriated" any trade secrets to CDK's detriment.  *7EDU Impact Academy Inc. v. You*, 760 F. Supp. 3d 981, 992 (N.D. Cal. 2024).

CDK argues in its opposition brief (at 20–21) that InDesign misappropriated CDK's trade secrets by disclosing them to Tekion.  But CDK's complaint allegations do not support that assertion.  None of CDK's cited complaint paragraphs (at 20) say that InDesign somehow extracted CDK's proprietary code or algorithms and transferred that over to Tekion.  The complaint at most claims that the "Defendants" (again lumping them together) ***accessed*** CDK trade secrets, not that InDesign ever ***extracted*** any trade secrets, much less extracted and then disclosed those trade secrets to Tekion.  Compl., ¶ 110 (alleging in conclusory fashion that "Defendants" "access and use" "CDK Trade Secrets"); *id.* ¶ 112 (alleging in conclusory fashion that "Defendants" "data-scraping queries regularly access filings containing proprietary information").

To be sure, InDesign extracts ***dealer data*** from the DMS and transfers that data to the dealer's chosen business partners, including for dealers converting to the Tekion DMS—but dealer data does not

---

6 While CDK alleges that Tekion asked for administrator-level credentials in some instances, Compl., ¶¶ 47, 91, it makes no such allegations against InDesign.

belong to CDK and is not CDK's trade secret. *CDK Glob. LLC v. Brnovich*, 16 F.4th 1266, 1278 (9th Cir. 2021) (holding that CDK does "not hold a copyright in the [dealer] data itself, which consists of facts about dealers' customers and business operations"). Because CDK has not alleged that InDesign misappropriated any CDK trade secret, its trade secrets claims must be dismissed. *See* Mot. at 18–19.[7]

### E.    CDK's tortious interference claim must be dismissed

CDK's claim for tortious interference with contractual relations must be dismissed because CDK fails to allege InDesign had the requisite knowledge or engaged in intentional acts designed to induce dealers to breach their contracts with CDK. *See* Mot. at 20.

***First,*** CDK's tortious interference claim must be dismissed because CDK has not alleged that InDesign knew that "contractual interference or breach [was] a 'necessary consequence of [its] action.'" *Rosenthal & Rosenthal of Cal., Inc. v. Hilco Trading, LLC*, 2020 WL 12948055, at *3 (C.D. Cal. Dec. 29, 2020). CDK claims (at 21–22) that its MSA terms are not confidential so InDesign must have known about them. But CDK only cites an unsigned contract template that it attached to its complaint; CDK does not allege it ever publicized its MSA contract terms prior to filing the complaint. And when CDK submitted a handful of signed dealer contracts with its motion for preliminary injunction, CDK filed those contracts under seal—accompanied by a declaration from a CDK senior executive representing to the Court that they are highly proprietary. *See* Dkt. 44-2, ¶¶ 5, 8.

CDK otherwise points (at 21–22) to an indemnity clause in InDesign's contracts with dealers and an email with one dealership in December 2024. But those allegations do not show that InDesign had ever seen or knew about any of CDK's specific contract terms with dealers. Moreover, the indemnity clause and one-off email chain say nothing about CDK's contract provision requiring dealers to pay CDK early termination fees (Opp. at 21), so CDK has offered ***no*** allegations as to

---

[7] CDK's two cited cases on trade secrets just highlight the type of allegations regarding trade secret misappropriation that are missing from CDK's complaint. In *Rockwell Collins, Inc. v. Wallace*, 2017 WL 5502775 (C.D. Cal. Nov. 10, 2017), the plaintiff alleged that a former employee downloaded 20,000 company documents, containing the company's proprietary information, onto his personal computer. *Id.* at *1, 3. And in *TMX Funding, Inc. v. Impero Techs., Inc.*, 2010 WL 2509979 (N.D. Cal. June 17, 2010), the plaintiff alleged misappropriation on a specific date in connection with the theft of its computers, servers, and hard files. *Id.* at *4. Here, by contrast, CDK makes no allegation that InDesign ever extracted any CDK trade secrets from the DMS.

InDesign's knowledge of that portion of the contract.[8]  In CDK's cited case, *Axia Fin., LLC v. Mason McDuffie Mortg. Co.*, 2023 WL 7280443 (N.D. Cal. Sept. 20, 2023), the plaintiff made far more robust allegations as to the knowledge element—including that 40 former employees of the plaintiff (including a former senior leader) had moved over to the defendant's business and had clear knowledge of the agreement at issue. *Id.* at *11.  CDK makes no comparable allegations here.

    **Second**, CDK has not alleged that InDesign intended to disrupt any contractual relationship with CDK and its dealers.  CDK has not alleged, for example, that InDesign "specifically told [the party] to terminate its contract with plaintiff . . . or to breach its contract in any other way."  *Ixchel Pharma, LLC v. Biogen Inc.,* 2018 WL 558781, at *2 (E.D. Cal. Jan. 25, 2018).  CDK's opposition brief refers to "intentional acts" by InDesign (at 22), but none of the cited conduct goes beyond the ordinary operation of InDesign's data integration business to show that InDesign acted specifically to cause dealerships to breach their MSAs.  CDK's only potential allegation in this regard (Compl., ¶ 100) is a comment by InDesign President Dave Lampert offering to be a dealer's "Plan B" if CDK did not convert that dealer's data to the new DMS company—but Mr. Lampert's comment on its face did not disparage CDK or suggest that the dealer should breach its contract.  CDK's reliance on *Tradeshift, Inc. v. BuyerQuest, Inc.,* 2020 WL 8920622 (N.D. Cal. May 20, 2020) to show intentional acts is misplaced, as CDK does not allege that InDesign "disparaged [plaintiff's] software and performance 'in order to secure a direct contract with [client] for itself.'"  *Id*. at *4.

    CDK's attempt to distinguish *Agfa Corp. v. Richard*, 2018 WL 3078585, at *4 (C.D. Cal. June 1, 2018) also fails because CDK's complaint lacks allegations that InDesign's conduct "actually disrupted a relationship with one of its customers."  *Id.*  For example, CDK "does not allege that it lost a contract, or negotiations failed, with one of its customers as a result of Defendant's conduct." *Id.*  Nor do the complaint paragraphs that CDK cites (at 22) contain any relevant facts regarding lost customers or

---

[8] Although the complaint is unclear on this point, to the extent CDK is claiming it was harmed when dealers failed to pay CDK early termination fees as a result of InDesign's alleged interference, CDK would need to show InDesign knew about the early termination provision.  *See Variblend Dual Dispensing Sys. LLC v. Crystal Int'l (Grp.) Inc.*, 2022 WL 17156550, at *7 (S.D.N.Y. Nov. 22, 2022) (dismissing tortious interference claim where there was no basis to conclude that defendant "had actual knowledge of the terms of the contract and of the contractual obligation that was allegedly breached") (quotation omitted).  CDK's complaint includes no allegations in this regard.

business resulting from InDesign's conduct.  "Without identifying specific harm to specific relationships that resulted from Defendant's conduct, Plaintiff cannot state a claim for intentional interference."  *Agfa*, 2018 WL 3078585, at \*4.

### F.    CDK's claim under California's UCL must be dismissed

CDK's UCL claim must be dismissed because: (1) CDK has not shown injury to competition, as required for a UCL claim; and (2) CDK has otherwise not plausibly pled the elements of a UCL claim.

***First***, as InDesign showed in its motion, CDK lacks standing to assert a claim under California's UCL because the complaint does not allege harm to consumers or competition.  *See* Mot. at 21.  "A plaintiff alleging a violation of unfair competition must allege harm to competition, not harm to an individual competitor."  *Silverlit Toys Manufactory Ltd. v. Rooftop Grp., USA, Inc.*, 2010 WL 11509314, at \*7 (C.D. Cal. Jan. 21, 2010).  CDK does not dispute that it has not alleged harm to competition.  And for good reason: CDK can hardly say that InDesign's independent data integration offering somehow ***reduces*** competitive choice or causes prices to ***rise***.

CDK instead argues (at 24) that *Silverlit*—and InDesign's slew of other cited cases on this point—do not apply because CDK and InDesign are not "direct competitors" for DMS services.  But that argument is wrong for multiple reasons.  CDK and InDesign are plainly competitors for ***data integration services***.  Indeed, CDK's complaint alleges that InDesign's provision of independent data integration services has cost CDK "millions of dollars in lost customers and deprived revenue," Compl., ¶ 102, which would not happen if the two firms did not compete for data integration business.[9]  Regardless, CDK is not a customer of InDesign—to the extent InDesign has allegedly harmed CDK through "unfair competition," it can only be as a competitor.  Notably, CDK fails to proffer any authority holding that, contrary to the authority cited by InDesign, CDK does ***not*** need to allege harm to competition to state a

---

[9] CDK's argument that it does not compete with InDesign belies common sense.  CDK just paid enormous settlements in the recently concluded Antitrust MDL, which was entirely about CDK foreclosing competition from independent integrators.  *See, e.g., In re Dealer Mgmt. Sys. Antitrust Litig.*, 680 F. Supp. 3d 919, 935 (N.D. Ill. 2023) ("By eliminating competition for data integration services, Plaintiffs claim that CDK and Reynolds have usurped control over dealer data and thwarted dealers' ability to control who can access and use their data.  As a result, vendors have no choice but to access certified data integration from CDK and Reynolds, at a price much higher than they would pay to an independent integrator.").

claim for unfair competition.  *Cf. First Advantage Background Servs. Corp. v. Priv. Eyes, Inc.*, 2007 WL 2572191, at *5 (N.D. Cal. Sept. 5, 2007) ("California courts do not allow competitors to transform contract and tort claims into UCL claims.").

　　　　**Second,** CDK failed to plead a UCL claim under either the unlawful or unfair prongs.

　　　　<u>Unlawful Conduct.</u>  Because CDK's other claims fail as a matter of law, CDK necessarily has failed to plead unlawful conduct for purposes of the UCL.  *Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F. Supp. 1303, 1316 (N.D. Cal. 1997).

　　　　<u>Unfair Conduct.</u>  With respect to the unfair prong, CDK has not alleged unfair conduct that is "comparable to or the same as a violation of the law" or "otherwise significantly threatens or harms competition."  Mot. at 23.  As noted above, CDK makes no attempt to show that InDesign harmed competition distinct from harming CDK as a competitor.  *First Advantage*, 2007 WL 2572191, at *5 ("Under the UCL, 'injury to a competitor is not equivalent to injury to competition; only the latter is the proper focus of antitrust laws.'") (cleaned up) (quoting *Cel-Tech Comm. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 168, 186 (1999)).

　　　　CDK primarily relies on *In re Google Assistant Priv. Litig.*, 546 F. Supp. 3d 945 (N.D. Cal. 2021), to argue the unfairness analysis is subject to a balancing test and cannot be decided on a motion to dismiss—but Google Assistant reaffirmed that unfair competition must "be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition."  Id. at 974. Before reaching the balancing test, the court in Google Assistant first evaluated whether "[p]laintiffs have alleged harm to competition or violation of the 'letter, policy, or spirit of the antitrust laws.'"  Id. Here, CDK's UCL claim fails at that threshold step, because it has not alleged any actual or threatened harm to competition caused by InDesign's independent data integration services.

## CONCLUSION

　　　　The Court should grant InDesign's Motion to Dismiss.

1  Dated:  June 4, 2025                      **WINSTON & STRAWN LLP**

2

3                                            By:  _/s/ Joshua Hafenbrack_

4                                                 Joshua Hafenbrack (pro hac vice)
                                                   jhafenbrack@winston.com

5                                                 Jade Briana Baker (pro hac vice)
                                                   jbbaker@winston.com

6                                                 Sydney Hartman (pro hac vice)
                                                   shartman@winston.com

7                                                 1901 L Street NW

8                                                 Washington, DC 20036
                                                   Telephone: (202) 282-5017

9                                                 Fax: (202) 282-5100

10                                                Jeanifer E. Parsigian (SBN: 289001)
                                                   jparsigian@winston.com

11                                                101 California Street, 35th Floor

12                                                San Francisco, CA 94111
                                                   Telephone: (415) 591-1000

13                                                Facsimile: (415) 591-1400

14                                                Bethany Ao (pro hac vice)
                                                   bao@winston.com

15                                                WINSTON & STRAWN LLP

16                                                35 West Wacker Drive
                                                   Chicago, IL 60601

17                                                Telephone: (312) 558-5600
                                                   Fax: (312) 558-5700

18

19                                                *Counsel for Defendant and Counter-Plaintiff*
                                                   *Defendant INDESIGN DATA, LLC*

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I certify that on June 4, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all registered parties.

Dated: June 4, 2025                    */s/ Joshua Hafenbrack*
                                        Joshua Hafenbrack

                                        Counsel for InDesign Data, LLC