TYLER G. NEWBY (CSB No. 205790)
tnewby@fenwick.com
ARMEN N. NERCESSIAN (CSB No. 284906)
anercessian@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300
Facsimile: 415.281.1350

ADAM GAHTAN*
agahtan@fenwick.com
CORTNAY-BETH CYMROT*
ccymrot@fenwick.com
FENWICK & WEST LLP
902 Broadway, Floor 18
New York, NY 10010-6035
Telephone: 212.430.2600

Attorneys for Defendant TEKION CORP.

*attorneys admitted pro hac vice

VINEET BHATIA*
vbhatia@susmangodfrey.com
SHAWN RAYMOND*
sraymond@susmangodfrey.com
ROBERT SAFI*
rsafi@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

JESSE-JUSTIN CUEVAS (SBN 307611)
jcuevas@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

Attorneys for Plaintiff CDK GLOBAL, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| TEKION CORP.,<br><br>    Plaintiff,<br><br>v.<br><br>CDK GLOBAL, LLC,<br><br>    Defendant. | Case No.: 3:24-cv-08879-JSC |
| CDK GLOBAL, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>TEKION CORP.,<br><br>    Defendant. | Case No.: 3:25-cv-1394-JSC<br><br>**[PROPOSED] STIPULATED ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION**<br><br>Judge:    Hon. Jacqueline Scott Corley |

Upon the stipulation of the Parties, the Court ORDERS as follows:

1. This Order supplements all other discovery rules and orders. It streamlines Electronically Stored Information ("ESI") production to promote a "just, speedy, and inexpensive determination" of this action, as required by Federal Rule of Civil Procedure 1.

2. This Order may be modified at the Court's discretion or by stipulation.

3. The Parties are expected to comply with the District's E-Discovery Guidelines ("Guidelines") and are encouraged to employ the District's Checklist for Rule 26(f) Meet and Confer regarding Electronically Stored Information.

4. **Disclosure:** Pursuant to Federal Rules of Civil Procedure 26(a) and 26(g), and to the extent not already disclosed, the Parties shall disclose the following information.

   a. **Custodians**: Each Party will identify to the other side up to ten (10) custodians believed most likely to have discoverable ESI in their possession, custody, or control (hereinafter, "Document Custodians"). The Document Custodians shall be identified by name, title, and a brief description of their connection to this case. The Parties agree to mutually exchange Document Custodians on September 12, 2025.

   b. **Additional Custodians**: If, after the Parties identify Document Custodians as set forth in Section 4(a), a Requesting Party believes that additional Document Custodians should be added, then the Requesting Party shall advise the Producing Party in writing of up to five (5) proposed additional Document Custodians and the basis for the request. If the Parties have not agreed whether to add the Document Custodians within seven (7) days of the Requesting Party's request, or another deadline as agreed upon by the Parties acting in good faith, then the matter may be brought to the Court in accordance with the Court's procedures. Nothing in this paragraph waives any objection by a Producing Party that further investigation, discovery, or document production is needed before determining the necessity or lack thereof of additional Document Custodians.

        c.      **Data Sources**: The Producing Party will inform the Requesting Party about which data repositories within the Producing Party's possession, custody, or control have been searched and/or collected from to identify potentially responsive or relevant documents or ESI.

        d.      The Parties agree to meet and confer regarding the identification of any additional data repositories with potentially responsive information, in compliance with the Guidelines for the Discovery of Electronically Stored Information (ESI Guidelines) for the Northern District of California.

5.    **Search**: The Parties agree that each Producing Party is best situated to determine the most appropriate method or methods for that Producing Party to search, collect, cull, and produce documents responsive to discovery.

      **Search Terms**: Each Producing Party may—but is not required to—use search terms to locate potentially relevant documents for collection and/or culling after collection. As a general matter, each Producing Party will use search terms for searching email and other electronic communications, and other sources that are readily amenable to search terms. For sources not readily amenable to search terms, each Producing Party is best equipped to determine whether search terms or other approaches—such as retrieval of documents and sources identified during custodial interviews—is appropriate for each such source. For document collection or culling using search terms, the Producing Party will provide to the Requesting Party its suggested search terms and a hit report that shows the number of documents that hit on the search terms out of the total number of documents for each custodian. The Requesting Party will have seven (7) days, or another deadline agreed upon by the Parties acting in good faith, to add or propose modifications to the Requesting Party's terms. If the Producing Party objects to the Requesting Party's additional or modified terms based on overbreadth or burden, then the Producing Party will produce a hit count for the disputed terms and propose alternative terms. If the Parties continue to disagree, they will meet and confer to resolve the search terms.

6.    **TAR**: If a Party intends to use Technology Assisted Review ("TAR") (including Continuous Active Learning), the Parties will meet and confer regarding a separate TAR protocol

to govern that process. For avoidance of doubt, nothing in this provision modifies the parties' rights and obligations under the Federal Rules of Civil Procedure with respect to TAR, and this provision neither implies nor waives a Receiving Party's right to object to a Producing Party's use of TAR, nor a Producing Party's right to use TAR in a reasonable manner in the absence of agreement on a protocol.

7. **Other Review Procedures**: Nothing in this Order may be construed or interpreted as precluding a Producing Party from performing a responsiveness review to determine if documents captured by search terms are in fact relevant to the Requesting Party's discovery requests. Similarly, nothing may be construed or interpreted as precluding a Producing Party from performing, by any means, a privilege review of documents. Further, nothing in this Order requires the production of documents that are irrelevant, privileged, or otherwise protected from disclosure merely because the documents hit upon a search term.

8. **Known, Responsive ESI**: Specific, non-duplicative ESI that is identified by a Party as responsive to a discovery request shall not be withheld from review or production solely on the grounds that it was not identified by (or is subject to an exclusion set forth in) the protocols described in, or developed in accordance with, this Order.

9. **Production and Supplementation of ESI**: Production of responsive, non-privileged documents shall proceed on a rolling basis and be substantially completed in view of the Scheduling Order entered in this case. The parties may agree to a mutual date for substantial completion of document production.

10. **Preservation**: The Parties agree that parties will take all reasonable steps to preserve non-duplicative, relevant information currently in their possession, custody, or control.

11. **Production Format**: The Parties agree to produce documents in the formats described in Appendix 2 to this Order. If particular documents warrant a different format, the Parties will cooperate to arrange for the mutually acceptable production of such documents. The Parties agree, to the extent practicable, not to materially degrade the searchability of documents as part of the document production process.

12. **Enterprise Messaging, Mobile Device Data, and Other Communication Tools**:

a. The Parties will disclose at the outset any use of enterprise messaging tools used in the course of business (*e.g.*, Slack, MS Teams, Zoom, WhatsApp, Google Chat, Sametime, Signal, Telegram, etc.). The Parties will meet and confer regarding procedures for inclusive collection of such data, the format of the production, metadata fields, and other issues unique to this type of data. Electronically stored information associated with enterprise messaging tools should be collected and reviewed with emails and other custodian/non-custodial data sources. Documents produced from an enterprise messaging platform must clearly indicate, either in a unique metadata field or on the face of the document, the specific platform the documents are from.

b. The Parties agree to disclose whether any Document Custodians' mobile devices contain unique sources of relevant ESI, and to meet and confer regarding procedures for the inclusive collection of such data, the format of production, metadata fields, and other issues unique to this type of data.

13. **Deduplication and Threading**: A Party should use reasonable efforts to produce only a single copy of a responsive document. "Duplicate ESI" means files that are exact duplicates based on the files' MD5 hash, SHA-1 hash, email duplicate spare messages, or SHA-256 hash values. The Parties will make reasonable efforts to not produce Duplicate ESI. To the extent identical copies of documents appear in the files of multiple Document Custodians, the Producing Party will use reasonable efforts to produce only one such identical copy across all Document Custodians based on MD5 or SHA-1 hash values at the document level for file system data or the email family level for emails. De-duplication will not break apart families. When Duplicate ESI exists in the files of multiple Document Custodians, the names of all Document Custodians who were in possession of a document prior to de-duplication will be populated in the "AllCustodians" field identified in Appendix 1.

14. **Privilege Logs, Redactions, and Challenging Privilege**: A producing party shall create a privilege log of all documents fully withheld from production or produced with redactions on the basis of a privilege or protection, unless otherwise agreed or excepted by this Agreement

and Order, and produced in Excel format. Privilege logs shall include a unique identification number for each document and the basis for the claim (attorney-client privileged or work-product protection). For ESI, the privilege log may be generated using available non-privileged metadata that the parties have agreed to produce, including author/recipient or to/from/cc/bcc names or email addresses; the subject matter or title; and date created. Should the available metadata provide insufficient information for the purpose of evaluating the privilege claim asserted, the producing party shall include such additional information as required by the Federal Rules of Civil Procedure. Privilege logs will be produced to all other parties on a rolling basis no later than 60 days after delivering a production unless an earlier deadline is agreed to by the parties.

    a.    With respect to privileged or work-product information generated after the filing of the complaint in Tekion, Inc. v. CDK Global, Inc., Case No. 3:24-cv-08879-JSC (N.D. Cal.), parties are not required to include any such information in privilege logs.

    b.    Absent a showing of good cause, activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

    c.    Pursuant to Fed. R. Evid. 502(d), the production of any documents in this proceeding shall not, for the purposes of this proceeding or any other federal or state proceeding, constitute a waiver by the producing party of any privilege applicable to those documents, including the attorney-client privilege, attorney work-product protection, or any other privilege or protection recognized by law. If a Producing Party inadvertently produces material that is subject to a claim of privilege or work product or other protection, the obligations of the Requesting Party/Receiving Party are those set forth in Sections 12 and 15 of the Stipulated Protective Order.

15.    **Cost Shifting**: As in all cases, costs may be shifted for disproportionate ESI production requests pursuant to Federal Rule of Civil Procedure 26. Likewise, a Party's nonresponsive or dilatory discovery tactics are cost-shifting considerations. A Party's meaningful

compliance with this Order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations.

**PURSUANT TO STIPULATION, IT IS SO ORDERED.**

Dated: _____

Honorable Jacqueline Scott Corley
United States District Judge

By: /s/ *Vineet Bhatia*
VINEET BHATIA (*Admitted Pro Hac Vice*)
SHAWN RAYMOND (*Admitted Pro Hac Vice*)
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
vbhatia@susmangodfrey.com
sraymond@susmangodfrey.com

JESSE-JUSTIN CUEVAS (SBN 307611)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
jcuevas@susmangodfrey.com

EVE LEVIN (*Pro Hac Vice Forthcoming*)
SUSMAN GODFREY L.L.P.
One Manhattan West, 50th Floor
New York, NY 90001
Telephone: (212) 336-8330
Facsimile: (212) 336-8340
elevin@susmangodfrey.com

*Attorneys for Defendant CDK Global, LLC, a Delaware limited liability company*

By: /s/ *Tyler G. Newby*
Tyler G. Newby (CSB No. 205790)
tnewby@fenwick.com
Armen N. Nercessian (CSB No. 284906)
anercessian@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300
Facsimile: 415.281.1350

Adam Gahtan (admitted *pro hac vice*)
agahtan@fenwick.com
Cortnay-Beth Cymrot (admitted *pro hac vice*)
ccymrot@fenwick.com
FENWICK & WEST LLP
902 Broadway, Floor 18
New York, NY 10010-6035
Telephone: 212.430.2600

*Attorneys for Defendant TEKION CORP.*

By: /s/ *Joshua Hafenbrack*
Joshua Hafenbrack (*pro hac vice*)
jhafenbrack@winston.com
Benjamin Rudofsky (*pro hac vice*)
brudofsky@winston.com
Jade Briana Baker (*pro hac vice*)
jbbaker@winston.com
Sydney Hartman (*pro hac vice*)
shartman@winston.com
**WINSTON & STRAWN LLP**
1901 L Street NW
Washington, DC 20036-3506
Telephone: (202) 282-5017
Facsimile: (202) 282-5100

Jeanifer E. Parsigian (SBN: 289001)
jparsigian@winston.com

**WINSTON & STRAWN LLP**
101 California Street, 21st Floor
San Francisco, CA 94111
Telephone: (415) 591-1000
Facsimile: (415) 591-1400

Bethany Ao (*pro hac vice*)
bao@winston.com
**WINSTON & STRAWN LLP**
35 West Wacker Drive
Chicago, IL 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

*Counsel for Defendant and Counter-Plaintiff
INDESIGN DATA, LLC*

**APPENDIX 1**

**FIELDS AND METADATA TO BE PRODUCED**

1. The load files accompanying scanned paper documents will include the following objective coding fields, to the extent applicable:

| Field | Field Description |
|---|---|
| BEGBATES | First Bates identifier of item |
| ENDBATES | Last Bates identifier of item |
| BEGATTACH | Starting Bates number of a document family |
| ENDATTACH | Ending Bates number of a document family |
| PAGECOUNT | Number of pages |
| TEXTLINK | Link to text file for the document |
| CUSTODIAN | Name of custodian or custodial file |
| CONFIDENTIALITY | Confidentiality designation assigned to document |
| REDACTION | Indicate whether document was redacted electronically after scanning |

2. The following Metadata fields shall be included in Load files accompanying ESI, to the extent available and/or unredacted:

| Field[1] | Field Description for Electronic Documents | Field Description for Emails, Messages (*e.g.*, Slack, Messenger, Google Chat, etc.), or Calendar Entries |
|---|---|---|
| BEGBATES | First Bates identifier of item | First Bates identifier of item |
| ENDBATES | Last Bates identifier of item | Last Bates identifier of item |

---

[1] Field Names can vary from system to system and even between different versions of systems. Thus, Parties are to be guided by these Field Names and Field Descriptions when identifying the metadata fields to be produced for a given document pursuant to this ESI Protocol.

| Field[1] | Field Description for Electronic Documents | Field Description for Emails, Messages (*e.g.*, Slack, Messenger, Google Chat, etc.), or Calendar Entries |
|---|---|---|
| BEGATTACH | Starting Bates number of a document family | Starting Bates number of a document family |
| ENDATTACH | Ending Bates number of a document family | Ending Bates number of a document family |
| PRODVOL | Production volume | Production volume |
| PAGECOUNT | Number of pages | Number of pages |
| ATTACHCOUNT | Number of files attached to parent | Number of files attached to parent |
| CUSTODIAN | Custodian of the document | Custodian of the document |
| ALLCUSTODIANS | Individual(s) from whom the document was obtained and de-duplicated out during global de-duplication | Individual(s) from whom the document was obtained and de-duplicated out during global de-duplication |
| CONFIDENTIALITY | Confidentiality designation | Confidentiality designation |
| AUTHOR | Any value populated in the Author field of the document properties | n/a |
| FROM | n/a | Sender of email message, message sent via messaging platform, or calendar invite |

| Field[1] | Field Description for Electronic Documents | Field Description for Emails, Messages (*e.g.*, Slack, Messenger, Google Chat, etc.), or Calendar Entries |
|---|---|---|
| TO | n/a | All recipients that were included on the "To" line of an email message or calendar invite. Recipients of a message sent via messaging platform. |
| CC | n/a | All recipients that were included on the "CC" line of message or calendar invite |
| BCC | n/a | All recipients that were included on the "BCC" line of message or calendar invite |
| EMAILSUBJECT | n/a | Subject of message or calendar invite pulled from the document properties. Name of messaging channel. |
| TITLE | Any value populated in the Title field of the document properties | n/a |
| DATETIMECREATED | Date and time file was created according to filesystem information (format: MM/DD/YYYY HH:mm:ss) | n/a |
| DATETIMEMODIFIED | Date and time file was last modified according to filesystem information (format: MM/DD/YYYY HH:mm:ss) | n/a |

| Field[1] | Field Description for Electronic Documents | Field Description for Emails, Messages (*e.g.*, Slack, Messenger, Google Chat, etc.), or Calendar Entries |
|---|---|---|
| DATETIMESENT | n/a | The sent date and time of the message in the format MM/DD/YYYY HH:mm:ss. Date of 24-hour segment of message. |
| DATETIMERECEIVED | n/a | The received date of the message in the format MM/DD/YYYY HH:mm:ss |
| FILENAME | Contents of this Metadata field, or an equivalent | Contents of this Metadata field, or an equivalent |
| DOCEXT | File extension of document pulled from the document properties | File extension of document pulled from the document properties |
| FILESIZE | Size of the file in bytes | Size of the file in bytes |
| FILEPATH | The directory structure of the original file(s). Any container name is included in the path. | The directory structure of the original file(s). Any container name is included in the path. |
| HASHVALUE | MD5 or SHA1 hash of the document | MD5 or SHA1 hash of the email |
| THREADID | n/a | Unique identification number that permits threading of email or chat conversations. For instance, unique MS Outlook identification number ("PR_CONVERSATION_IN DEX") is 22 bytes in length, followed by zero or more child blocks each 5 bytes in |

| Field[1] | Field Description for Electronic Documents | Field Description for Emails, Messages (*e.g.*, Slack, Messenger, Google Chat, etc.), or Calendar Entries |
|---|---|---|
| | | length, that permits email threading in review software. |
| ITEMTYPE | Identifies whether the file is an email, attachment, or stand-alone efile. | Identifies whether the file is an email, attachment, or stand-alone efile. |
| NATIVEFILEPATH | Link to native file (if any) | Link to native file (if any) |
| TEXTFILEPATH | Link to extracted text/OCR file for the document | Link to extracted text/OCR file for the email |
| REDACTION | Identifies if a document has been redacted | Identifies if a document has been redacted |
| HASHIDDENCONTENT | Identifies if a document contains hidden content.[2] | |

These Metadata field values will be provided to the extent available at the time of collection and processing, except that they may be redacted if privileged or if the information in the Metadata is protected by law or Court Order. This list of fields does not create any obligation to create or manually code fields that do not exist as part of the original Metadata of the document.

---

[2] "Hidden Content" for purposes of this field shall include track changes, comments, hidden slides, hidden columns, hidden worksheets, or other hidden text.

# APPENDIX 2

## PRODUCTION AND LOAD FILE FORMAT FOR DOCUMENTS AND ESI

**1.  Delimited Text File.**

A delimited text file (.DAT File) containing the fields listed in Appendix 1 should be provided. The delimiters for the file should be Concordance defaults accordingly:

| | |
|---|---|
| Comma | ASCII character 20 (¶) |
| Quote | ASCII character 254 (þ) |
| Newline | ASCII character 174 (®) |

- The first record should contain the field names in the order of the data.
- All date fields should be produced in mm/dd/yyyy format.
- Use carriage-return line-feed to indicate the start of the next record.
- Load files should not span across media (*e.g.*, CDs, DVDs, Hard Drives, etc.); a separate volume should be created for each piece of media delivered.
- The name of the data load file should mirror the name of the delivery volume, and should have a .DAT extension (i.e., ABC001.DAT).
- The volume names should be consecutive (i.e., ABC001, ABC002, et. seq.).
- If Foreign Language / Unicode text exists, DAT file shall be in appropriate UTF-8 or
- UTF-16 format.

**2.  Image Cross-Reference File (.opt)**: The Opticon cross-reference file is a comma delimited file consisting of six fields per line. There must be a line in the cross-reference file for every image in the database. The format for the file is as follows:

ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount

Further definitions and instructions as follows:

| | |
|---|---|
| ImageID | The unique designation that Concordance and Opticon use to identify an image. This should be the BegBates Number of the Document. |
| VolumeLabel | The name of the volume. |
| ImageFilePath | The full path to the image file. |

| | |
|---|---|
| DocumentBreak | If this field contains the letter "Y," then this is the first page of a Document. If this field is blank, then this page is not the first page of a Document. |
| FolderBreak | Leave empty. |
| BoxBreak | Leave empty. |
| PageCount | Number of pages in the Document. |

- The name of the image load file should mirror the name of the delivery volume, and should have the appropriate extension (*e.g.*, ABC001.LFP).
- The volume names should be consecutive (i.e., ABC001, ABC002, et. seq.).
- There should be one row in the load file per TIFF image.
- Every image in the delivery volume should be contained in the image load file.
- The image key should be named the same as the Bates number of the page.
- Load files should not span across media (*e.g.*, CDs, DVDs, Hard Drives, Etc.), i.e., a separate volume should be created for each piece of media delivered.

   3.  **OCR / Extracted Text Files**: OCR or Extracted Text files shall be provided in a separate folder containing Document level text files. OCR text should be produced for hard copy documents and for any ESI where extracted text cannot be provided, using industry standard OCR technology (Redacted text will not be produced). File name convention shall be: Match BegBates Number. If Foreign Language / Unicode text exists, TEXT files shall be in appropriate UTF-8 or UTF-16 format.

   4.  **TIFFs**: Documents that exist only in hard copy format shall be scanned and produced as TIFFs. Documents that exist as ESI shall be converted and produced as TIFFs, except as provided in Paragraph 7 below. Unless excepted below, single page, black and white, Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. Each TIFF image shall be named according to a unique corresponding Bates number associated with the document. Each image shall be branded according to the Bates number and the agreed upon confidentiality designation. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). Where the TIFF image is unreadable or has materially degraded the

quality of the original, the Producing Party shall provide a higher quality TIFF image or the native or original file.

5.  **Color**: The Parties may request color copies where color is necessary to accurately interpret the document. The Parties agree to negotiate in good faith over producing images in color.

6.  **Text Files**: A single multi-page text file shall be provided for each document, and the filename should match its respective TIFF filename. When possible, the text of native files should be extracted directly from the native file. Text files will not contain the redacted portions of the documents. A commercially acceptable technology for optical character recognition "OCR" shall be used for all scanned, hard copy documents and for documents with redactions.

7.  **Native files**: Spreadsheet-type files (*e.g.*, Microsoft Excel or Google Sheets) and presentation files (*e.g.*, PowerPoint or Google Slides) will be produced in native format unless redacted, in which instance, spreadsheets will be produced in color (as appropriate) TIFF with OCR Text Files. To the extent that they are produced in this action, audio, video, and multi-media files will be produced in native format. If PDF or word processing files (e.g., Microsoft Word) contain comments, notes, revisions, track changes, hidden text, and/or annotations that cannot be viewed in TIFF, the document must include the metadata designation for HASHIDDENCONTENT, and Requesting party may request a file in native format. Native files will be produced with a link in the NATIVEFILEPATH field, along with extracted text (where extracted text is available) and applicable metadata fields set forth in paragraph 4 above. A Bates numbered TIFF placeholder indicating that the document was provided in native format must accompany every native file.

8.  **Confidentiality Designation**: Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order entered in this matter. Each responsive document produced in native format will have its confidentiality designation identified in the filename of the native file and indicated on its corresponding TIFF placeholder.

9.  **Families, Embedded Files, and Hyperlinks**: Parent-child relationships will be maintained in production. Links within a document are not considered attachments. A Producing Party is not required to match a responsive hyperlinked or embedded document identified in a

parent email, including hyperlinked documents utilizing Google Workspace, Microsoft Office's "Share Documents Via Link" feature, or other document sharing platforms, with the parent email to which the document was hyperlinked or embedded in the first instance, but will endeavor to do so for a reasonable number of such documents upon request. Documents extracted from embedded files shall be populated with the BEGATTACH and ENDATTACH metadata fields to show the family relationship. Embedded or hyperlinked files that are not otherwise produced will be produced upon reasonable request. Other links in email to non-file sources, such as a website or QR code URL destinations need not be produced. If documents cannot be extracted from links at the time of collection, the Parties agree to promptly meet and confer to discuss alternative methods of collection and production.