Vineet Bhatia *(Admitted Pro Hac Vice)*
vbhatia@susmangodfrey.com
Shawn Raymond *(Admitted Pro Hac Vice)*
sraymond@susmangodfrey.com
Robert Safi *(Admitted Pro Hac Vice)*
rsafi@susmangodfrey.com
Katherine Rose James *(Admitted Pro Hac Vice)*
rjames@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

Jesse-Justin Cuevas (SBN 307611)
jcuevas@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

Amy Gregory *(Admitted Pro Hac Vice)*
agregory@susmangodfrey.com
SUSMAN GODFREY L.L.P.
One Manhattan West, 50th Floor
New York, New York 10001
Telephone: (212) 336-8330
Facsimile: (212) 336-8340

Rachel L. Schaller *(Admitted Pro Hac Vice)*
rachel.schaller@blankrome.com
Daniel Saeedi *(Admitted Pro Hac Vice)*
daniel.saeedi@blankrome.com
BLANK ROME LLP
444 West Lake Street, Suite 1650
Chicago, Illinois 60606
Telephone: (312) 776-2600
Facsimile: (312) 776-2601

*Attorneys for Plaintiff/Counterclaim-Defendant CDK Global, LLC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| CDK GLOBAL, LLC<br><br>Plaintiff,<br><br>vs.<br><br>TEKION CORP., and INDESIGN DATA, LLC<br><br>Defendants. | Case No. 3:25-cv-01394-JSC<br><br>**PLAINTIFF/COUNTERCLAIM-DEFENDANT CDK GLOBAL, LLC'S ANSWER AND AFFIRMATIVE DEFENSES TO DEFENDANT/COUNTERCLAIM-PLAINTIFF INDESIGN DATA LLC'S AMENDED COUNTERCLAIMS FOR DAMAGES AND INJUNCTIVE RELIEF** |
| INDESIGN DATA, LLC,<br><br>Counter-Plaintiff,<br><br>vs.<br><br>CDK GLOBAL, LLC<br><br>Counter-Defendant | Jury Trial Demanded<br><br>Counterclaims Filed: August 28, 2025 |

Plaintiff-Counterclaim Defendant CDK Global, LLC ("CDK") by and through counsel, hereby answers the counterclaims of InDesign Data, LLC ("InDesign"), in the above-captioned proceeding. Any allegations not expressly admitted herein by CDK are denied. Further, CDK is not required to respond to headings, sub-headings, or footnotes of the counterclaims but, to the extent any response is required and unless otherwise expressly stated, CDK denies the allegations and characterizations of allegations set forth in the headings, sub-headings, or footnotes of the counterclaims. CDK answers the allegations of the like-numbered paragraphs and subparagraphs of the counterclaims as follows:

1.      CDK denies the allegations in Paragraph 1.

2.      CDK admits that automobile dealerships generate business data in their operations, that such data is input and stored in Dealer Management Systems ("DMSs"), and that DMSs are enterprise software and databases used by franchised dealerships. CDK denies the remaining allegations in Paragraph 2.

3.      CDK admits that dealerships may at times require access to data stored in the DMS. CDK denies the remaining allegations in Paragraph 3.

4.      CDK admits that DMS providers have historically offered services to facilitate transfers of data stored in DMSs and that dealers have used such services. CDK further admits that certain entities who are not DMS providers also purport to offer services related to data transfer. CDK denies the remaining allegations in Paragraph 4.

5.      CDK admits that InDesign purports to offer services related to data transfer. CDK denies the remaining allegations in Paragraph 5.

6.      CDK admits that it is a leading DMS provider in the United States but denies that it is the "dominant" provider in the United States. CDK further admits that it has acquired businesses that provide data-related services in the past. CDK denies the remaining allegations in Paragraph 6.

7.      CDK denies the allegations in Paragraph 7.

8.      CDK denies the allegations in Paragraph 8.

9.      CDK admits that it was a defendant in antitrust litigation in the Northern District of Illinois and that it settled certain claims. CDK admits that some states have enacted laws regarding dealer data. CDK denies the remaining allegations in Paragraph 9.

10.     CDK denies the allegations in Paragraph 10.

11.     CDK denies the allegations in Paragraph 11.

12.     CDK denies the allegations in Paragraph 12.

13.     CDK admits that InDesign is bringing certain counterclaims seeking damages and permanent injunctive relief. CDK denies any implication that InDesign is entitled to any such relief and denies the remaining allegations in Paragraph 13.

## THE PARTIES

14.     CDK admits that InDesign Data, LLC is a limited liability company organized under the laws of the State of Florida, with its principal place of business in Miami, Florida, and that InDesign purports to provide data services to automobile dealerships. CDK lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 14 and, on that basis, denies them.

15.     CDK admits that it is a limited liability company organized under the laws of the State of Delaware, with its principal place of business and corporate headquarters located at 11809 Domain Drive, Suite 200, Austin, Texas 78758. CDK denies the remaining allegations in Paragraph 15.

## JURISDICTION AND VENUE

16.     The allegations in Paragraph 16 contain legal conclusions regarding subject matter jurisdiction and compulsory counterclaims to which no response is required.

17.     The allegations in Paragraph 17 contain legal conclusions regarding personal jurisdiction and venue to which no response is required. To the extent a response is required, CDK does not contest personal jurisdiction or venue for purposes of this action only.

18.     The allegations in Paragraph 18 contain legal conclusions regarding venue to which no response is required. To the extent a response is required, CDK does not contest venue for purposes of this action only.

**FACTUAL ALLEGATIONS**

19.    CDK admits that there are approximately 18,000 franchised new-car dealerships in the United States and that such dealerships use DMSs to manage their operations. CDK admits that DMSs automate certain business functions. CDK denies the remaining allegations in Paragraph 19.

20.    CDK admits that DMSs include databases in which dealership employees may input and store data, and that such data may include customer information, inventory, repair orders, and other business records. CDK denies the remaining allegations in Paragraph 20.

21.    CDK admits that its standard DMS contract contains provisions regarding dealer data. Those provisions speak for themselves. CDK denies the remaining allegations in Paragraph 21.

22.    CDK admits that dealerships use various software applications in addition to the DMS, and that some such applications may require access to data stored in the DMS. CDK denies the remaining allegations in Paragraph 22.

23.    CDK admits that dealers may seek access to data stored in the DMS for use with other applications. CDK denies the remaining allegations in Paragraph 23.

24.    CDK admits that historically dealers could use services offered by DMS providers and that certain non-DMS providers also purported to offer data integration services, including the listed companies. CDK denies the remaining allegations in Paragraph 24.

25.    CDK lacks information or knowledge sufficient to form a belief as to the truth or falsity of the allegations regarding a 2016 email. CDK denies that the 2006, 2007, or 2008 quotes are attributable to CDK and denies that it made the quoted statement in a July 2013 press release. CDK denies the remaining allegations in Paragraph 25.

26.    CDK denies the allegations in Paragraph 26.

27.    CDK admits that InDesign purports to provide data-related services. CDK lacks information or knowledge sufficient to form a belief as to the remaining allegations in Paragraph 27.

28.    CDK admits that InDesign contracts with dealers and purports to provide certain data-related services. CDK denies the remaining allegations in Paragraph 28.

29. CDK admits that InDesign purports to offer a service called "DMSconnect." CDK denies the remaining allegations in Paragraph 29.

30. CDK admits that InDesign purports to offer bi-directional data integration functionality. CDK denies the remaining allegations in Paragraph 30.

31. CDK denies the allegations in Paragraph 31.

32. CDK lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 32 and, on that basis, denies them.

33. CDK denies the allegations in Paragraph 33.

34. CDK lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 34 and, on that basis, denies them.

35. CDK lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 35 and, on that basis, denies them.

36. CDK denies the allegations in Paragraph 36.

37. CDK denies the allegations in Paragraph 37.

38. CDK lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 38 and, on that basis, denies them.

39. CDK lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 39 and, on that basis, denies them.

40. CDK lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 40 and, on that basis, denies them.

41. CDK lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 41 and, on that basis, denies them.

42. CDK admits that it has made statements regarding dealer data access. CDK denies the remaining allegations in Paragraph 42.

43. CDK denies the allegations in Paragraph 43.

44. CDK denies the allegations in Paragraph 44.

45. CDK denies the allegations in Paragraph 45.

46. CDK denies the allegations in Paragraph 46.

1    47.    CDK denies the allegations in Paragraph 47.

2    48.    CDK denies the allegations in Paragraph 48.

3    49.    CDK denies the allegations in Paragraph 49.

4    50.    CDK denies the allegations in Paragraph 50.

5    51.    CDK denies the allegations in Paragraph 51.

6    52.    Paragraph 52 contains legal conclusions to which no answer is required. To the

7    extent that an answer may be required, CDK admits that on or about February 2015, CDK entered

8    into a written agreement that contains the quoted language, but denies that the section was titled

9    "Prohibition on DMS Access." That contractual language speaks for itself. CDK denies the

10   remaining allegations in Paragraph 52.

11   53.    CDK denies the allegations in Paragraph 53.

12   54.    CDK denies the allegations in Paragraph 54.

13   55.    CDK admits that CDK and Reynolds threw a party in 2016. CDK denies the

14   remaining allegations in Paragraph 55.

15   56.    CDK denies the allegations in Paragraph 56.

16   57.    CDK denies the allegations in Paragraph 57.

17   58.    CDK denies the allegations in Paragraph 58.

18   59.    CDK denies the allegations in Paragraph 59.

19   60.    CDK denies the allegations in Paragraph 60.

20   61.    CDK admits that CDK acquired ELEAD in 2018. CDK denies the remaining

21   allegations in Paragraph 61.

22   62.    CDK denies the allegations in Paragraph 62.

23   63.    CDK admits that the multidistrict litigation in the Northern District of Illinois

24   pertained to, among other things, allegations of a conspiracy between Reynolds and CDK. The

25   summary judgment opinion in that matter speaks for itself. The remaining allegations in

26   Paragraph 63 are legal conclusions to which no response is required. To the extent a response is

27   required, CDK denies the remaining allegations in Paragraph 63.

28   64.    CDK admits the allegations in Paragraph 64.

65.    CDK admits that several states have passed laws regarding dealer data. The language of Arizona's law speaks for itself. CDK denies the remaining allegations in Paragraph 65.

66.    CDK denies the allegations in Paragraph 66.

67.    CDK denies the allegations in Paragraph 67.

68.    CDK denies the allegations in Paragraph 68.

69.    CDK denies the allegations in Paragraph 69.

70.    CDK admits that CDK's standard Master Services Agreement contains the quoted language, which speaks for itself. CDK denies the remaining allegations in Paragraph 70.

71.    CDK admits that its contracts with dealerships prohibit giving unauthorized third parties access to CDK's DMS, including login credentials meant for use solely by dealership employees. CDK denies the remaining allegations in Paragraph 71.

72.    CDK denies the allegations in Paragraph 72.

73.    CDK admits that third parties cannot access CDK's DMS without dealerships' login credentials. CDK lacks information or knowledge sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 73, and denies them on that basis.

74.    CDK denies the allegations in Paragraph 74.

75.    CDK denies the allegations in Paragraph 75.

76.    The allegations of paragraph 76 state legal conclusions to which no response is required. To the extent a response is required, CDK denies the allegations in Paragraph 76.

77.    CDK denies the allegations in Paragraph 77.

78.    The allegations of paragraph 78 state legal conclusions to which no response is required. To the extent a response is required, CDK denies the allegations in Paragraph 78.

79.    CDK admits that it has initiated legal actions to enforce its contractual rights.  CDK denies the remaining allegations in Paragraph 79.

80.    CDK denies the allegations in Paragraph 80.

81.    CDK admits that it has initiated legal actions to enforce its contractual rights. CDK further admits that Asbury Automotive Group sued CDK in Georgia state court. The allegations in that action speak for themselves.  CDK denies the remaining allegations in Paragraph 81.

82.     CDK admits that it sent cease and desist letters to Authenticom and Tekion in 2024 relating to violations of CDK's rights under state and federal law. CDK denies the remaining the allegations in Paragraph 82.

83.     CDK admits that it filed suit against InDesign on February 10, 2025.  The pleadings in this matter speak for themselves.  CDK lacks information or knowledge sufficient to form a belief as to the truth or falsity of the allegation regarding the effect of CDK's lawsuit on InDesign, and denies it on that basis. CDK denies the remaining allegations in Paragraph 83.

84.     CDK admits that it sent a cease and desist letter to InDesign on February 11, 2025. The pleadings in this matter speak for themselves.  CDK lacks information or knowledge sufficient to form a belief as to the truth or falsity of the allegation regarding the effect of CDK's demand on InDesign and denies it on that basis. CDK denies the remaining allegations in Paragraph 84.

85.     CDK denies the allegations in Paragraph 85.

86.     The allegations of Paragraph 86 state legal conclusions to which no response is required. To the extent a response is required, CDK denies the allegations in Paragraph 86.

87.     The allegations of Paragraph 87 state legal conclusions to which no response is required. To the extent a response is required, CDK denies the allegations in Paragraph 87.

88.     CDK admits that franchised dealerships use a DMS to manage certain business operations. CDK admits that the quoted language appears in a Complaint filed by the Federal Trade Commission in an action against CDK related to CDK's proposed acquisition of Auto/Mate. CDK denies the remaining allegations in Paragraph 88.

89.     CDK lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 89, and denies them on that basis.

90.     CDK denies the allegations in Paragraph 90.

91.     Paragraph 91 contains legal conclusions to which no response is required. To the extent a response is required, CDK denies the allegations.

92.     CDK admits that annual DMS fees for large dealership groups may reach millions of dollars. CDK lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 92, and denies them on that basis.

93.    Paragraph 93 contains legal conclusions to which no response is required. To the extent a response is required, CDK admits that DMSs may require OEM certifications, and otherwise denies the allegations.

94.    CDK admits it has been a leading DMS provider in the United States for over a decade. CDK denies the remaining allegations in Paragraph 94.

95.    CDK denies the allegations in Paragraph 95.

96.    CDK admits that AutoNation, Lithia Motors, Group 1 Automotive, and Asbury Automotive use the CDK DMS. CDK denies the remaining allegations in Paragraph 96.

97.    CDK denies the allegations in Paragraph 97.

98.    CDK denies the allegations in Paragraph 98.

99.    Paragraph 99 contains legal conclusions to which no response is required. To the extent a response is required, CDK denies the allegations in Paragraph 99.

100.    CDK denies the allegations in Paragraph 100.

101.    CDK denies the allegations in Paragraph 101.

102.    CDK denies the allegations in Paragraph 102.

103.    CDK admits that developing a DMS may require a significant upfront financial investment, and that a DMS company must obtain certifications from OEMs. CDK denies the allegations in Paragraph 103.

104.    CDK admits that its DMS contracts with dealers are typically multiyear contracts and may exceed five years. CDK lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 104, and denies them on that basis.

105.    CDK denies the allegations in Paragraph 105.

106.    CDK lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 106, and denies them on that basis.

107.    CDK lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 107, and denies them on that basis.

108.    CDK lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 108, and denies them on that basis.

109.    CDK lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 109, and denies them on that basis.

110.    CDK denies the allegations in Paragraph 110.

111.    CDK denies the allegations in Paragraph 111.

112.    CDK lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 112, and denies them on that basis.

113.    The allegations of paragraph 113 state legal conclusions to which no response is required. To the extent a response is required, CDK denies the allegations in Paragraph 113.

114.    The allegations of paragraph 114 state legal conclusions to which no response is required. To the extent a response is required, CDK denies the allegations in Paragraph 114.

115.    CDK admits that dealers use services that allow certain software vendors access to the data stored in the DMS. CDK denies the remaining allegations in Paragraph 115.

116.    CDK admits that dealers who use CDK's DMS can use only those data services that are compatible with CDK's DMS to access data stored on CDK's DMS.  CDK denies the remaining allegations in Paragraph 116.

117.    CDK lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 117, and denies them on that basis.

118.    CDK admits that dealers that use the CDK DMS may use certified data integration programs.  CDK denies the remaining allegations in Paragraph 118.

119.    CDK denies the allegations in Paragraph 119.

120.    CDK admits that a dealer's employees calling in sick or making a mistake might affect the quality of their work.  CDK lacks knowledge or information sufficient to form a belief as to the truth or falsity of the attribution of the quoted statement, and denies it on that basis. CDK denies the remaining allegations in Paragraph 120.

121.    CDK denies the allegations in Paragraph 121.

122.    CDK lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding dealers', software vendors', and OEMs' perceptions, and denies them on that basis. CDK denies the remaining allegations in Paragraph 122.

123.    The allegations in Paragraph 123 contain legal conclusions to which no response is required. To the extent a response is required, CDK denies the allegations in Paragraph 123.

124.    CDK denies the allegations in Paragraph 124.

125.    CDK denies the allegations in Paragraph 125.

126.    The allegations in Paragraph 126 contain legal conclusions to which no response is required. To the extent a response is required, CDK denies the allegations in Paragraph 126.

127.    CDK denies the allegations in Paragraph 127.

128.    CDK lacks knowledge or information sufficient to form a belief as to the truth or falsity of the attribution of the quoted testimony to Dominion Enterprises. CDK denies the remaining allegations in Paragraph 128.

129.    CDK denies the allegations in Paragraph 129.

130.    CDK denies the allegations in Paragraph 130.

131.    CDK denies the allegations in Paragraph 131.

132.    CDK denies the allegations in Paragraph 132.

133.    CDK denies the allegations in Paragraph 133.

134.    CDK denies the allegations in Paragraph 134.

135.    CDK denies the allegations in Paragraph 135.

136.    CDK denies the allegations in Paragraph 136.

137.    CDK denies the allegations in Paragraph 137.

138.    CDK denies the allegations in Paragraph 138.

139.    CDK denies the allegations in Paragraph 139.

140.    CDK denies the allegations in Paragraph 140.

141.    CDK denies the allegations in Paragraph 141.

142.    CDK denies the allegations in Paragraph 142.

143.    CDK denies the allegations in Paragraph 143.

144.    CDK denies the allegations in Paragraph 144.

145.    CDK denies the allegations in Paragraph 145.

146.    CDK denies the allegations in Paragraph 146.

147.    CDK admits that its contracts with dealerships prohibit giving unauthorized third parties access to CDK's DMS. CDK denies any implication that InDesign is entitled to access CDK's DMS. CDK denies the remaining allegations in Paragraph 147.

148.    CDK admits that its February 10, 2025, Complaint quoted InDesign's form "Document Conversion Agreement" but denies that it quoted from any executed contracts with any specific dealer. CDK denies the remaining allegations in Paragraph 148.

149.    CDK lacks information or knowledge sufficient to form a belief as to the truth or falsity of the allegations regarding the content of InDesign's contracts with the enumerated dealers, and denies the allegations on that basis. CDK denies the remaining allegations in Paragraph 149.

150.    CDK denies the allegations in Paragraph 150.

151.    CDK denies the allegations in Paragraph 151.

152.    CDK denies the allegations in Paragraph 152.

153.    CDK lacks information or knowledge sufficient to form a belief as to the truth or falsity of the allegations regarding the entire history of security incidents among all DMS providers and InDesign, and denies them on that basis. CDK denies the remaining allegations in Paragraph 153.

154.    CDK denies the allegations in Paragraph 154.

155.    CDK admits that InDesign purports to incorporate the allegations of the preceding paragraphs by reference, but denies any liability or wrongdoing as alleged in those paragraphs. To the extent a response is required to the allegations purported to be incorporated by reference, CDK incorporates by reference its responses to the preceding paragraphs as if fully set forth herein.

156.    CDK denies the allegations in Paragraph 156.

157.    CDK denies the allegations in Paragraph 157.

158.    CDK denies the allegations in Paragraph 158.

159.    CDK denies the allegations in Paragraph 159.

160.    CDK denies the allegations in Paragraph 160.

161.    CDK admits that InDesign purports to incorporate the allegations of the preceding paragraphs by reference, but denies any liability or wrongdoing as alleged in those paragraphs. To

the extent a response is required to the allegations purported to be incorporated by reference, CDK incorporates by reference its responses to the preceding paragraphs as if fully set forth herein.

162.    CDK denies the allegations in Paragraph 162.

163.    CDK denies the allegations in Paragraph 163.

164.    CDK denies the allegations in Paragraph 164.

165.    CDK denies the allegations in Paragraph 165.

166.    CDK denies the allegations in Paragraph 166.

167.    CDK denies the allegations in Paragraph 167.

168.    CDK denies the allegations in Paragraph 168.

169.    CDK admits that InDesign purports to incorporate the allegations of the preceding paragraphs by reference, but denies any liability or wrongdoing as alleged in those paragraphs. To the extent a response is required to the allegations purported to be incorporated by reference, CDK incorporates by reference its responses to the preceding paragraphs as if fully set forth herein.

170.    CDK denies the allegations in Paragraph 170.

171.    CDK denies the allegations in Paragraph 171.

172.    CDK denies the allegations in Paragraph 172.

173.    CDK denies the allegations in Paragraph 173.

174.    CDK denies the allegations in Paragraph 174.

175.    CDK admits that InDesign purports to incorporate the allegations of the preceding paragraphs by reference, but denies any liability or wrongdoing as alleged in those paragraphs. To the extent a response is required to the allegations purported to be incorporated by reference, CDK incorporates by reference its responses to the preceding paragraphs as if fully set forth herein.

176.    CDK denies the allegations in Paragraph 176.

177.    CDK denies the allegations in Paragraph 177.

178.    CDK denies the allegations in Paragraph 178.

179.    CDK denies the allegations in Paragraph 179.

180.    CDK denies the allegations in Paragraph 180.

181.    CDK denies the allegations in Paragraph 181.

182.    CDK admits that InDesign purports to incorporate the allegations of the preceding paragraphs by reference, but denies any liability or wrongdoing as alleged in those paragraphs. To the extent a response is required to the allegations purported to be incorporated by reference, CDK incorporates by reference its responses to the preceding paragraphs as if fully set forth herein.

183.    CDK lacks information or knowledge sufficient to form a belief as to the truth or falsity of the allegations regarding the content of InDesign's contracts, and denies the allegations in Paragraph 183 on that basis.

184.    CDK denies the allegations in Paragraph 184.

185.    CDK admits that without login credentials, InDesign's access to CDK's DMS is limited. CDK denies any implication that InDesign is entitled to such access. CDK denies the remaining allegations in Paragraph 185.

186.    CDK lacks information or knowledge sufficient to form a belief as to the truth or falsity of the allegations regarding the content of InDesign's contracts with third parties, and denies them on that basis.  CDK denies the remaining allegations in Paragraph 186.

187.    CDK denies the allegations in Paragraph 187.

188.    CDK denies the allegations in Paragraph 188.

### PRAYER FOR RELIEF

CDK denies that InDesign is entitled to any of the relief requested in the Counterclaims, or any other relief whatsoever, and specifically denies all of the allegations and prayers for relief contained in InDesign's Prayer for Relief. CDK further denies that InDesign is entitled to any relief against CDK under any cause of action alleged in the Counterclaims.

### JURY TRIAL DEMAND

CDK demands a trial by jury on all issues so triable.

### AFFIRMATIVE DEFENSES

CDK asserts the following affirmative defenses to the claims alleged in the Amended Counterclaims, without assuming the burden of proof on such defenses that would otherwise fall on InDesign. CDK reserves the right to supplement and/or amend these defenses, including to assert new defenses, as discovery is conducted.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FIRST AFFIRMATIVE DEFENSE**

InDesign's counterclaims are barred, in whole or in part, by the doctrine of unclean hands. InDesign is not entitled to the relief it seeks because its own conduct with respect to the matters alleged in the Amended Counterclaims has been inequitable, improper, and in bad faith.

For example, as set forth in greater detail in CDK's Amended Complaint, which is incorporated herein by reference, InDesign has engaged in a pattern of conduct designed to induce CDK's dealer–customers to breach their contractual obligations to CDK, including their payment and confidentiality obligations. Plaintiff has also sought to circumvent CDK's Dealer Management System (DMS) access controls and to improperly obtain access to CDK's proprietary systems and data, in violation of CDK's rights and the terms of its agreements with its dealer–customers.

InDesign's efforts to interfere with CDK's contractual relationships and to gain unauthorized access to CDK's systems constitute inequitable conduct directly related to the subject matter of InDesign's counterclaims. By engaging in such conduct, Plaintiff has acted with unclean hands and should be precluded from obtaining any equitable relief or other remedy from this Court.

**SECOND AFFIRMATIVE DEFENSE**

Any and all actions CDK is alleged to have taken, as set forth in InDesign's Amended Counterclaims were lawful, justified, and undertaken in furtherance of CDK's legitimate business interests. Such actions constituted *bona fide* competitive conduct, the procompetitive benefits of which substantially outweigh any purported anticompetitive effects alleged by InDesign.

By way of example, and as described in greater detail in CDK's Amended Complaint, which is incorporated herein by reference, the conduct challenged by InDesign in fact comprised CDK's legitimate efforts to enforce its contractual rights with its dealer–customers, to protect its proprietary systems and data, and to defend against Tekion and InDesign's improper attempts to induce CDK's dealer–customers to breach their contractual obligations and default on their payment commitments. CDK's actions also included reasonable and good-faith measures to maintain the integrity and security of its Dealer Management System (DMS) access controls.

**THIRD AFFIRMATIVE DEFENSE**

InDesign's counterclaims are barred, in whole or in part, by the *Noerr-Pennington* doctrine. To the extent InDesign proves the conduct alleged in InDesign's Amended Counterclaims, including but not limited to seeking to enforce its contractual and statutory rights and defending itself in court, such conduct constitutes protected First Amendment activity immune from statutory liability under the *Noerr-Pennington* doctrine.

**FOURTH AFFIRMATIVE DEFENSE**

InDesign is not entitled to equitable relief because, assuming InDesign were able to prove one or more of its alleged claims for relief, InDesign has an adequate remedy at law.

**FIFTH AFFIRMATIVE DEFENSE**

InDesign's counterclaims are barred, in whole or in part, by applicable statutes of limitations. Any claim for damages under the Sherman Act, 15 U.S.C. §§ 1–2, is limited to injuries caused by overt acts within four years before the filing of the counterclaims, 15 U.S.C. § 15b. Any claim under California's Unfair Competition Law is barred to the extent based on conduct occurring more than four years prior to filing, Cal. Bus. & Prof. Code § 17208. The tortious interference claim is barred to the extent based on conduct occurring outside the two-year limitations period, Cal. Code Civ. Proc. § 339(1).

**SIXTH AFFIRMATIVE DEFENSE**

InDesign's counterclaims are also barred, in whole or in part, by the doctrine of laches, as InDesign unreasonably delayed in asserting its claims to the prejudice of CDK.

**SEVENTH AFFIRMATIVE DEFENSE**

InDesign's counterclaims are barred, in whole or in part, by the doctrine of collateral estoppel and/or issue preclusion. The issues underlying one or more of InDesign's counterclaims were previously litigated and actually decided in a prior judicial proceeding to which InDesign was a party or in privity with a party. For example, to the extent InDesign intends to rely on the theory that CDK has monopoly power based on its alleged market share by number of dealer customers, that issue was previously resolved in *In re Dealer Mgmt. Sys. Antitrust Litig.*, No. 1:18-cv-864 (N.D. Ill. 2024).

**EIGHTH AFFIRMATIVE DEFENSE**

Any recovery by InDesign is barred or must be reduced to the extent InDesign failed to take reasonable steps to mitigate its alleged damages, including but not limited to InDesign's failure to take advantage of data extraction tools CDK itself makes available at no cost, such as Data Your Way.

Dated:  September 19, 2025

SUSMAN GODFREY L.L.P.

By: /s/ *Vineet Bhatia*
VINEET BHATIA (*Admitted Pro Hac Vice*)
vbhatia@susmangodfrey.com
SHAWN RAYMOND (*Admitted Pro Hac Vice*)
sraymond@susmangodfrey.com
ROBERT SAFI (*Admitted Pro Hac Vice*)
rsafi@susmangodfrey.com
K. ROSE JAMES (*Admitted Pro Hac Vice*)
rjames@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

JESSE-JUSTIN CUEVAS (SBN 307611)
jcuevas@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

AMY GREGORY (*Admitted Pro Hac Vice*)
agregory@susmangodfrey.com
SUSMAN GODFREY L.L.P.
One Manhattan West, 50th Floor
New York, New York 100001
Telephone: (212) 336-8330
Facsimile: (212) 336-8340

RACHEL SCHALLER (*Admitted Pro Hac Vice*)
DANIEL SAEEDI (*Admitted Pro Hac Vice*)
rachel.schaller@blankrome.com
daniel.saeedi@blankrome.com
BLANK ROME LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

444 West Lake Street, Suite 1650
Chicago, Illinois 60606
Telephone: (312) 776-2600
Facsimile: (312) 776-2601

*Attorneys for Plaintiff CDK GLOBAL, LLC*

**SERVICE LIST**

| ATTORNEYS FOR PLAINTIFFS | ATTORNEYS FOR DEFENDANT |
|---|---|

VINEET BHATIA (*Admitted Pro Hac Vice*)
vbhatia@susmangodfrey.com
SHAWN RAYMOND (*Admitted Pro Hac Vice*)
sraymond@susmangodfrey.com
ROBERT SAFI (*Admitted Pro Hac Vice*)
rsafi@susmangodfrey.com
K. ROSE JAMES (*Admitted Pro Hac Vice*)
rjames@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

JESSE-JUSTIN CUEVAS (SBN 307611)
jcuevas@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

AMY GREGORY (*Admitted Pro Hac Vice*)
agregory@susmangodfrey.com
SUSMAN GODFREY L.L.P.
One Manhattan West, 50th Floor
New York, New York 100001
Telephone: (212) 336-8330
Facsimile: (212) 336-8340

RACHEL SCHALLER (*Admitted Pro Hac Vice*)
DANIEL SAEEDI (*Admitted Pro Hac Vice*)
rachel.schaller@blankrome.com
daniel.saeedi@blankrome.com
BLANK ROME LLP
444 West Lake Street, Suite 1650
Chicago, Illinois 60606
Telephone: (312) 776-2600
Facsimile: (312) 776-2601

*Attorneys for Plaintiff CDK Global, LLC*

TYLER G. NEWBY
tnewby@fenwick.com
ARMEN N. NERCESSIAN
anercessian@fenwick.com
FENWICK & WEST LLP
555 California St., 12th Floor
San Francisco, California 94104
Telephone: (415) 875-2300

ERICA R. SUTTER
esutter@fenwick.com
CORTNAY CYMROT
ccymrot@fenwick.com
ADAM ROBERT GAHTAN
agahtan@fenwick.com
FENWICK & WEST LLP
902 Broadway, 18th Floor
New York, New York 10010
Telephone: (650) 335-7626

*Attorneys for Defendant Tekion Corp.*

JENNIFER ELLEN PARSIGIAN
jparsigian@winston.com
BETHANY AO
bao@winston.com
JADE BRIANA BAKER
jbbaker@windston.com
JOSHUA HAFENBRACK
jhafenbrack@winston.com
SYDNEY HARTMAN
shartman@winston.com
WINSTON & STRAWN, LLP
101 California St, 21st Floor
San Francisco, California 94111
Telephone: (415) 591-1400

*Attorneys for Defendant InDesign Data*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28