TYLER G. NEWBY (CSB No. 205790)
tnewby@fenwick.com
FENWICK & WEST LLP
One Front Street, 33rd Floor
San Francisco, CA 94111
Telephone: 415.875.2300
Facsimile: 415.281.1350

ERICA R. SUTTER (CSB No. 309182)
esutter@fenwick.com
ADAM GAHTAN (*pro hac vice*)
agahtan@fenwick.com
KEVIN X. MCGANN (*pro hac vice*)
kmcgann@fenwick.com
NOAH SOLOWIEJCZYK (*pro hac vice*)
nsolowiejczyk@fenwick.com
CORTNAY-BETH CYMROT (*pro hac vice*)
ccymrot@fenwick.com
FENWICK & WEST LLP
902 Broadway, Floor 18
New York, NY 10010-6035
Telephone: 212.430.2600

*Attorneys for Defendant Tekion Corp.*

FENWICK & WEST LLP
ATTORNEYS AT LAW

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

CDK GLOBAL, LLC,

Plaintiff,

v.

TEKION CORP. and INDESIGN DATA, LLC,

Defendants.

Case No.: 3:25-cv-01394-JSC

**DEFENDANT TEKION CORP.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Date: November 19, 2026
Time: 10:00 a.m.
Court: 8, 19th Floor
Judge: Hon. Jacqueline Scott Corley

**REDACTED**

FENWICK & WEST LLP
ATTORNEYS AT LAW

## NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

PLEASE TAKE NOTICE that, on November 19, 2026, at 10:00 a.m., before the Honorable Jacqueline S. Corley, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, California, Courtroom 8, 19th Floor, Defendant Tekion Corp. ("Tekion") will and hereby does move for an order granting summary judgment, or in the alternative partial summary judgment, to Tekion on all counts of Plaintiff CDK Global, LLC's ("CDK") First Amended Complaint (Dkt. 93) ("FAC"). The motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the pleadings and papers on file in this action, the arguments of counsel, and any other matter that the Court may properly consider.

Dated: October 8, 2026

FENWICK & WEST LLP

By: */s/ Erica R. Sutter*

Tyler G. Newby (CSB No. 205790)
FENWICK & WEST LLP
One Front Street, 33rd Floor
San Francisco, CA 94111
Telephone: 415.875.2300
Facsimile: 415.281.1350
tnewby@fenwick.com

Erica R. Sutter (CSB No. 309182)
Adam Gahtan (*pro hac vice*)
Kevin X. McGann (*pro hac vice*)
Noah Solowiejczyk (*pro hac vice*)
Cortnay-Beth Cymrot (*pro hac vice*)
FENWICK & WEST LLP
902 Broadway, Floor 18
New York, NY 10010-6035
Telephone: 212.430.2600
esutter@fenwick.com
agahtan@fenwick.com
kmcgann@fenwick.com
nsolowiejczyk@fenwick.com
ccymrot@fenwick.com

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF CONTENTS

Page

STATEMENT OF ISSUES TO BE DECIDED ..... 1

MEMORANDUM OF POINTS AND AUTHORITIES ..... 1

INTRODUCTION ..... 1

RELEVANT UNDISPUTED MATERIAL FACTS ..... 2

I. Dealer Management Systems and Data Migration ..... 2

II. Tekion's Dealer-Authorized Data Migration Assistance ..... 4

III. Third-Party Access to CDK's DMS ..... 5

IV. CDK's Yearslong Knowledge and Tracking of Tekion's Access ..... 7

V. CDK Used Tekion Tracking Data for Competitive Intelligence ..... 9

LEGAL STANDARD ..... 10

ARGUMENT ..... 11

I. The Court Should Grant Summary Judgment to Tekion on All Claims, Because CDK's Claims Are Time-Barred ..... 11

A. CDK's Trade Secret Claims are Barred by the Statute of Limitations ..... 11

B. CDK's DMCA Claim Is Barred by the Statute of Limitations ..... 12

C. CDK's CFAA and CCDAFA Claims Are Barred by the Statute of Limitations ..... 13

D. CDK's Tortious Interference and UCL Claims Are Barred by the Statute of Limitations ..... 14

II. Tekion Is Entitled to Summary Judgment on its Affirmative Defense of Laches ..... 15

A. CDK's Delay in Filing Suit Was Unreasonable ..... 15

B. CDK's Yearslong Delay Prejudiced Tekion ..... 16

III. The Court Should Grant Summary Judgment on the CFAA and CCDAFA Claims Because CDK's Acquiescence to Tekion's Conduct Constitutes Authorization of It ..... 19

A. Tekion Had Inherent Authorization to Access CDK's DMS, Which CDK Failed to Revoke ..... 19

IV. CDK's Yearslong Acquiescence to Tekion's Conduct Defeats Its DMCA Claim ....................20

V. Tekion Is Entitled to Summary Judgment on CDK's Trade Secret Counts Under the DTSA and CUTSA ....................21

VI. Tekion Is Entitled to Summary Judgment on CDK's Claim for Equitable Relief Because CDK Cannot Show a Threat of Irreparable Harm ....................22

CONCLUSION ....................23

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Am. Int'l Grp., Inc. v. Am. Int'l Bank*,
926 F.2d 829 (9th Cir. 1991) .......... 15

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) .......... 14

*CDK Glob. LLC v. Brnovich*,
16 F.4th 1266 (9th Cir. 2021) .......... 5

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .......... 10

*Danjaq LLC v. Sony Corp.*,
263 F.3d 942 (9th Cir. 2001) .......... 16, 18

*Estate of Tucker ex rel. Tucker v. Interscope Records, Inc.*,
515 F.3d 1019 (9th Cir. 2008) .......... 11

*Experexchange, Inc. v. Doculex, Inc.*,
No. C-08-03875 JCS, 2009 WL 3837275 (N.D. Cal. Nov. 16, 2009) .......... 11, 16

*Facebook, Inc. v. Power Ventures, Inc.*,
844 F.3d 1058 (9th Cir. 2016) .......... 19, 20

*Factory Direct Wholesale, LLC v. iTouchless Housewares & Products, Inc.*,
411 F. Supp. 3d 905 (N.D. Cal. 2019) .......... 14

*Gemisys Corp. v. Phoenix Am., Inc.*,
186 F.R.D. 551 (N.D. Cal. 1999) .......... 21

*Harman Int'l Indus., Inc. v. Jem Accessories, Inc.*,
668 F. Supp. 3d 1025 (C.D. Cal. 2023) .......... 15, 18

*In re Dealer Mgmt. Sys. Antitrust Litig.*,
362 F. Supp. 3d 558 (N.D. Ill. 2019) .......... 5

*InteliClear, LLC v. ETC Glob. Holdings, Inc.*,
978 F.3d 653 (9th Cir. 2020) .......... 21

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
304 F.3d 829 (9th Cir. 2002) .......... 15, 17

*Knoell v. Petrovich*,
76 Cal. App. 4th 164 (1999) .......... 14

FENWICK & WEST LLP
ATTORNEYS AT LAW

*Luke v. Sonoma Cnty*, 43 Cal. App. 5th 301 (2019) .................... 15

*LVRC Holdings LLC v. Brekka*, 581 F.3d 1127 (9th Cir. 2009).................... 19

*Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211 (9th Cir. 1984).................... 23

*Media Rights Techs., Inc. v. Microsoft Corp.*, 922 F.3d 1014 (9th Cir. 2019).................... 13

*Meyer Tech. Solutions, LLC v. Kaegem Corp.*, No. 17 C 281, 2017 WL 4512918 (N.D. Ill. Oct. 10, 2017) .................... 13, 14

*Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975 (9th Cir. 2006).................... 16

*Nano-Second Tech. Co., Ltd. v. Dynaflex Int'l.*, No. CV 10-9176 RSWL (MANx), 2013 WL 1855828 (C.D. Cal. May 1, 2013) .................... 15

*Novoselskiy v. New U Women's Clinic & Aesthetics PLLC*, No. 4:24-CV-05155-RLP, 2025 WL 2524224 (E.D. Wash. Sep. 2, 2025) .................... 19

*Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374 (9th Cir. 1985).................... 23

*Oracle Am., Inc. v. Hewlett Packard Ent. Co.*, 971 F.3d 1042 (9th Cir. 2020).................... 12

*Pitt v. Metro. Tower Life Ins. Co.*, 675 F. Supp. 3d 1073 (S.D. Cal. 2023) .................... 22

*Protech Diamond Tools v. Liao*, No. C 08-3684 SBA, 2009 WL 1626587 (N.D. Cal. June 8, 2009) .................... 22

*Ruckelshaus v. Monsanto Co.*, 467 U.S. 986 (1984) .................... 22

*Saul Zaentz Co. v. Wozniak Travel, Inc.*, 627 F. Supp. 2d 1096 (N.D. Cal. 2008) .................... 16

*Silicon Image, Inc. v. Analogix Semiconductor, Inc.*, No. C-07-00635 JCS, 2008 WL 166950 (N.D. Cal. Jan. 17, 2008) .................... 21

*Smartix Int'l Corp. v. MasterCard Int'l LLC*, No. 06 CV 5174(GBD), 2008 WL 4444554 (S.D.N.Y. Sep. 30, 2008), *aff'd*, 355 F. App'x 464 (2d Cir. 2009) .................... 13

*Stern v. Weinstein*, No. CV-09-1986-GHK, 2010 WL 1145971 (C.D. Cal. Jan. 6, 2010) .................... 20

FENWICK & WEST LLP
ATTORNEYS AT LAW

*Stevens v. Corelogic, Inc.*,
194 F. Supp. 3d 1046 (S.D. Cal. 2016) .......... 20

*Ticketmaster L.L.C. v. Prestige Entm't, Inc.*,
306 F. Supp. 3d 1164 (C.D. Cal. 2018) .......... 19

*Wang v. Palo Alto Networks, Inc.*,
No. C 121-05579 WHA, 2014 WL 1410346 (N.D. Cal. Apr. 11, 2014) .......... 12

*Whittaker Corp. v. Execuair Corp.*,
736 F.2d 1341 (9th Cir. 1984) .......... 17, 18

*Wolf v. Travolta*,
167 F. Supp. 3d 1077 (C.D. Cal. 2016) .......... 14, 15

**STATUTES**

17 U.S.C. § 507(b) .......... 11, 12

17 U.S.C. § 1201(a)(1)(A) .......... 20

17 U.S.C. § 1201(a)(3)(A) .......... 20

18 U.S.C. § 1030 .......... 18

18 U.S.C. § 1030(g) .......... 11, 13

18 U.S.C. § 1836(d) .......... 11, 12

18 U.S.C. § 1839(3)(A) .......... 22

Cal. Bus. & Prof. Code § 17208 .......... 11, 14

Cal. Civ. Code § 3426.1(d)(2) .......... 22

Cal. Civ. Code § 3426.6 .......... 11, 12

Cal. Civ. Proc. Code § 339 .......... 11

Cal. Civ. Proc. Code § 339(1) .......... 14

Cal. Pen. Code § 502 .......... 20

Cal. Pen. Code § 502(e)(5) .......... 11, 13

**RULES**

Fed. R. Civ. P. 56(a) .......... 10, 11

FENWICK & WEST LLP
ATTORNEYS AT LAW

## STATEMENT OF ISSUES TO BE DECIDED[1]

1. Whether Tekion is entitled to summary judgment on all counts because CDK's claims are time-barred by the applicable statutes of limitations.

2. Whether Tekion is entitled to summary judgment on all counts because CDK's claims are barred by the equitable doctrine of laches.

3. Whether Tekion is entitled to summary judgment on Counts I, II, and IV of the FAC because CDK acquiesced to Tekion's access of data on CDK's DMS with the dealerships' authorization and thus cannot establish that Tekion's access was "unauthorized," or that Tekion circumvented any access control, as a matter of law.

4. Whether Tekion is entitled to summary judgment on Counts III and V of the FAC because CDK has failed to take reasonable measures to protect its alleged trade secrets.

5. Whether Tekion is entitled to summary judgment on CDK's request for injunctive relief because CDK cannot establish a threat of irreparable harm.

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

The Court should grant Tekion summary judgment on every count of CDK's First Amended Complaint due to CDK's yearslong delay in bringing suit against Tekion. CDK's lawsuit rests on its assertion that it only "recently discovered," in late 2024, that Tekion had been accessing CDK's customers' DMS data stored on CDK servers through the customers' accounts. *See, e.g.*, FAC ¶¶ 5, 89, 191, 300, 312. Discovery has shown that allegation to be false. CDK has known about and continuously monitored Tekion's conduct since 2019, more than five years before it filed suit. [redacted]

CDK allowed dealers to create and manage DMS credentials, and dealers exercised that authority to provide the credentials through which Tekion accessed the DMS. To the extent CDK

[1] This motion does not address every basis on which Tekion may be entitled to summary judgment. Tekion expressly reserves all rights to raise additional grounds for summary judgment in a subsequent motion.

now contends that access was unauthorized, it acquiesced in the practice for more than five years. CDK's knowledge and acquiescence to Tekion's use of dealerships' account credentials to migrate those dealerships' data from CDK's DMS to Tekion defeat CDK's claims for several independent reasons. First, every claim is time-barred: CDK's suit comes years after expiration of even the longest applicable limitations period. Second, CDK's unreasonable, prejudicial delay bars its claims under the doctrine of laches. Third, CDK's knowledge and acceptance of Tekion's dealer-authorized access defeat its CFAA and CCDAFA claims. Fourth, its allowance of Tekion's access to DMS features it now claims to be trade secrets for years defeats its trade secret claims. Fifth, having waited five years to sue, CDK cannot show the irreparable harm required for injunctive relief.

CDK's delay was a business strategy, not an oversight. Tekion invested capital and personnel for years into helping dealers access their own data in CDK's DMS so that they could timely migrate and validate that data in Tekion's new DMS. Rather than act on conduct that it now claims to have been unlawful all along, CDK acquiesced in Tekion's access to the dealers' data using the dealer-provided credentials, impliedly acknowledging the dealers' rights to grant that access to Tekion. It did not do so unintentionally; [redacted] CDK would presumably have continued its competitively useful, silent monitoring of Tekion had Tekion not sued it for antitrust violations. The timing of CDK's suit—only after Tekion sued to stop CDK's anticompetitive efforts to keep dealerships from migrating to Tekion—confirms that its suit is nothing more than a counternarrative to Tekion's monopolization allegations and an attempt to scare dealers away from leaving CDK for Tekion. In any event, it is time-barred. The Court should enter summary judgment for Tekion on each of CDK's claims.

## RELEVANT UNDISPUTED MATERIAL FACTS

### I. Dealer Management Systems and Data Migration

Car dealerships depend on a dealer management system (DMS) to operate their business, including sales, inventory management, accounting, payroll, service and repair operations. FAC ¶

FENWICK & WEST LLP
ATTORNEYS AT LAW

27; *see also,* Ex. 1[2] (*Tekion Corp. v. CDK Global, LLC*, No. 3:24-CV-08879-JSC (N.D. Cal. Aug. 14, 2025), Dkt. 53 ¶¶ 3, 25, 68) ("CDK Answer").

The DMS is indispensable because it is the dealership's central data repository for customer information, transaction histories, vehicle sales records, repair orders, parts sales, accounting data, and general ledger information. FAC ¶ 27; CDK Answer ¶¶ 22–25. The DMS also facilitates reporting these transactions and records to the original equipment manufacturers (OEMs), which require their franchised or authorized dealerships to provide operational and sales data. FAC ¶ 27 (e), (g). [redacted] Ex. 2, (Bales Tr.) 15:12–20. CDK, the dominant DMS provider, has served dealerships for more than 40 years. FAC ¶ 2. Tekion, founded in 2016, launched the world's first end-to-end cloud-based DMS platform in 2020. Ex. 3 (Declaration of James Livingstone in Support of Tekion Corp.'s Opposition to CDK Global, LLC's Motion for Preliminary Injunction (Dkt. 65-3 ("Livingstone Decl.")) ¶ 4.

Dealerships increasingly seek modern DMS solutions, like Tekion's, but switching providers is a significant undertaking, not least because the DMS underpins the dealership's core business functions. CDK Answer ¶ 28 ("CDK admits that launching or migrating to a new DMS is a significant undertaking for a dealership and that it requires planning and preparation."). A necessary, labor-intensive first step in a DMS conversion is data validation. Given the vast volume of a dealer's customer, operational, financial, and historical records maintained in the DMS, verifying that the data is accurately migrated is a crucial, technically complex process. *See* Ex. 4 (CDK Supp. Rog Responses) at 6–7 [redacted]; *see also* Ex. 3 (Livingstone Decl.) ¶ 6. [redacted] Ex. 5 (Lampert Tr.) 30:14–18; Ex. 6 (Declaration of James Bradley Fox in Support of Tekion Corp.'s Opposition to CDK Global, LLC's Motion for Preliminary Injunction (Dkt. 65-1)) ("Fox Decl.")) ¶ 12.

[2] Unless otherwise noted, exhibits numbered 1-49 refer to exhibits to the Declaration of Erica R. Sutter.

FENWICK & WEST LLP
ATTORNEYS AT LAW

**II. Tekion's Dealer-Authorized Data Migration Assistance**

[redacted]. Ex. 7 (LaGreca Tr.) 113:20–114:4; Ex. 8 (Rowland Tr.) 141:16–142:1; Ex. 9 (Gerlich Tr.) 286:22–25; Ex. 10 (Verity Tr.) 98:13–22; Ex. 11 (Cole Tr.) 198:2–4. From 2019 to December 2024, [redacted] Ex. 6 (Fox Decl.) ¶ 15; Ex. 12 (Fox Tr.) 18:14–20:20, 23:24–24:17, 53:9–17; Ex. 13 (Sankararaman Tr.) 103:4–15; Ex. 14 (Tiwari Tr.) 29:2–18. [redacted] Ex. 15 (LaGreca 30(b)(6) Memo) at 6. [redacted] Ex. 6 (Fox Decl.) ¶ 17; Ex. 16 (CDK_01111636). [redacted] Ex. 17 (Johnson Tr.) 62:11–14.

[redacted] *Id.* 94:13–21.

[redacted] FAC ¶¶ 44–47; Ex. 4 (CDK Supp. Rog Responses) at 12. [redacted] *See, e.g.*, Ex. 18 (LaGreca 30(b)(6) Tr.) 102:10–103:2.

[redacted] *See, e.g.*, Ex. 9 (Gerlich Tr.) 288:12–22; Ex. 17 (Johnson Tr.) 62:15–20; Ex. 20

(Noser Tr.) 200:20–23. Because Tekion used the dealer's credentials through the dealer's network, [redacted] Ex. 8 (Rowland Tr.) 228:5–11. [redacted] *See, e.g.*, Ex. 9 (Gerlich Tr.) 287:23–288:1. [redacted] Ex. 13 (Sankararaman Tr.) 187:18–24; Ex. 18 (LaGreca 30(b)(6) Tr.) 100:9–13.

**III. Third-Party Access to CDK's DMS**

Dealers enter into a contractual relationship with their chosen DMS provider. [redacted] Ex. 15 (LaGreca 30(b)(6) Memo) at 2. [redacted] *See* Ex. 18 (LaGreca 30(b)(6) Tr.) 25:6–13, 27:13–16. [redacted]. *See id*. 25:17–26:20. In 2018, through multi-district antitrust proceedings against CDK, the former version of CDK's MSA—which endorsed third-party DMS access—became public. *See In re Dealer Mgmt. Sys. Antitrust Litig.*, 362 F. Supp. 3d 558, 565–66 (N.D. Ill. 2019) (quoting excerpts of "CDK's standard DMS contract with dealers" which allowed dealers to share "CDK Products" with their "agents"); *see also* Ex. 18 (LaGreca 30(b)(6) Tr.) 69:3–14. The terms of CDK's MSAs with dealers are otherwise kept confidential. *See* Ex. 18 (LaGreca 30(b)(6) Tr.) 63:8–21, 70:9–12 (testifying that commercial terms are confidential); Ex. 21 (Dkt. 45-8) § 4(d) (CDK's standard confidentiality provision in its MSA does not distinguish between commercial and non-commercial terms).

In 2019, Arizona enacted a law barring DMS providers from restricting dealers' ability to share DMS data with authorized third-party integrators. CDK and another DMS provider sued to block it. *See CDK Glob. LLC v. Brnovich*, 16 F.4th 1266, 1272 (9th Cir. 2021). [redacted]

[redacted] Ex. 15 (LaGreca 30(b)(6) Memo) at 3. [redacted]. *Id.*; Ex. 22 (CDK_01122127) at 2; Ex. 23 (CDK_00986809 (Data Your Way launched March 2023)).

CDK promotes Data Your Way as a free, self-service program that enables dealers to export their own data, [redacted]. Ex. 20 (Noser Tr.) 149:1–9, 217:20–218:18. [redacted]. Ex. 24 (Schlather 30(b)(6) Tr.) 89:5–7; Ex. 8 (Rowland Tr.) 214:13–215:3; Ex. 20 (Noser Tr.) 217:20–218:18. [redacted] Ex. 25 (Thomason Tr.) 101:1–23; Ex. 26 (Ex. 1380); *see also* Ex. 8 (Rowland Tr.) 215:13–16.

Dealers routinely share their DMS login credentials with third parties. *See, e.g.*, Livingstone Decl. ¶¶ 7–9; Ex. 27 (CDK_00546260) at 43:7–17 [redacted]); Ex. 28 (CDK_MDL01048221) ¶ 11 ([redacted] Ex. 9 (Gerlich Tr.) 35:11–14; Ex. 29 (Conver Tr.) 30:7–18. [redacted] *See* Ex. 9 (Gerlich Tr.) 98:20–99:12. [redacted] Ex. 30 (CDK_01876632). [redacted]

FENWICK & WEST LLP
ATTORNEYS AT LAW

[redacted]. Ex. 31 (CDK_01152738) at 22–23. [redacted] *Id.*

Against this backdrop of widespread dealer-authorized access, [redacted] Ex. 32 (CDK_00002345). [redacted] *See id.* § 7(a) ([redacted]); Ex. 33 (TEKION00021825) [redacted]).

**IV. CDK's Yearslong Knowledge and Tracking of Tekion's Access**

According to CDK's FAC, it only "recently discovered," in late 2024, that Tekion was accessing dealers' DMS data. FAC ¶¶ 5, 89. CDK's documents and witnesses tell a different story. CDK has known that Tekion had been accessing CDK's customers' DMS data since 2019. *See* Ex. 34 (2019 Cease-and-Desist Letter) at 1 (referencing discussions earlier in 2019 between CDK and Tekion about Tekion's access). [redacted] Ex. 17 (Johnson Tr.) 22:8–23:11. On May 8, 2019, before Tekion launched its DMS, CDK sent Tekion a cease-and-desist letter in which it accused Tekion of accessing its DMS using automated processing in violation of "multiple state and federal laws," including the CFAA, DMCA, CCDAFA, and UCL. Ex. 34 (2019 Cease-and-Desist Letter) at 1–2. Tekion responded, denying that the access was unauthorized and explaining that dealers, themselves, ran the scripts for use in Tekion's Digital Service Environment, a product that pre-dated Tekion's DMS. Ex. 35 (TEKION00021981–2), *see also* Ex. 36 (CDK_00001772); Ex. 37 (CDK_00002338).

When Tekion launched its own DMS product later in 2020, it accessed dealers' DMS data that they stored in CDK's DMS, with the dealers' authorization, to ensure timely migration onto

Fenwick & West LLP
Attorneys at Law

Tekion's DMS. CDK observed that access and CDK continued to monitor it for years without further complaint to Tekion. [redacted] Ex. 31 (CDK_01152738) at 35. CDK alleges in its FAC that CDK had "attempted to but has been unable to identify a definitive pattern of activity to serve as a 'fingerprint' for all unauthorized . . . Tekion activity on CDK's DMS," (FAC ¶ 154), [redacted] Ex. 17 (Johnson Tr.) 52:22–55:9. [redacted] Ex. 17 (Johnson Tr.) 22:22–23:7. [redacted] Ex. 31 (CDK_01152738).

Mr. Johnson's monitoring was not a one-off exercise, but was an organized effort to learn about the dealerships Tekion was competing for and to try to retain those customers. [redacted] Ex. 17 (Johnson Tr.) 26:10–27:18. [redacted] Ex. 17 (Johnson Tr.) 172:8–173:2. [redacted] Ex. 17 (Johnson Tr.) 26:10–27:18. [redacted] Ex. 18 (LaGreca 30(b)(6) Tr.) 98:20–99:12.

Fenwick & West LLP
Attorneys at Law

## V. CDK Used Tekion Tracking Data for Competitive Intelligence

CDK sought to leverage its monitoring of Tekion's access to its DMS to its own benefit. [redacted] *See* Ex. 31 (CDK_01152738). [redacted] *Id.* at 34. [redacted] *Id.* at 24.

[redacted] Ex. 31 (CDK_01152738). [redacted] Ex. 38 (CDK_1148737); Ex. 39 (Herbers Tr.) 188:22–189:24. [redacted] Ex. 39 (Herbers Tr.) 189:3–5; *see also* Ex. 31 (CDK_01152738). [redacted] Ex. 39 (Herbers Tr.) 187:24–188:3. [redacted] Ex. 39 (Herbers Tr.)

FENWICK & WEST LLP
ATTORNEYS AT LAW

188:22–189:24. [redacted] Ex. 39 (Herbers Tr.) 173:15–174:1. [redacted] Ex. 40 (Heniff Tr.) 115:11–16.

[redacted] Ex. 31 (CDK_01152738); Ex. 17 (Johnson Tr.) 150:8–19. [redacted] Ex. 16 (CDK_01111636). In other words, CDK favored staying silent about Tekion's access to its DMS so that it could continue to monitor Tekion.

CDK changed course only after it came to see Tekion as a competitive threat, and its response grew more aggressive from there. [redacted]. [redacted] *See infra* p. 17. Then, on December 6, 2024, CDK escalated further by sending a cease-and-desist letter asserting many of the same allegations that now form the basis of this lawsuit. *See* Ex. 41 (2024 Cease-and-Desist Letter). In response, Tekion stopped assisting dealers in accessing their own data so that it could get a judicial determination on the propriety of its access. On December 9, 2024, Tekion also filed its antitrust lawsuit challenging CDK's anticompetitive conduct, including its increasing efforts to impede dealers' migration of their data to Tekion, and seeking a judicial declaration that its conduct was lawful. Ex. 42 (*Tekion Corp. v. CDK Global, LLC*, No. 3:24-cv-08879-JSC, Dkt. 1). CDK filed this action two months later, on February 10, 2025.

## LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If a party fails to sufficiently establish the existence of an element essential to their case, an entry of summary judgment against them is required. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–

FENWICK & WEST LLP
ATTORNEYS AT LAW

23 (1986). A party opposing summary judgment cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for trial.'" *Estate of Tucker ex rel. Tucker v. Interscope Records, Inc.*, 515 F.3d 1019, 1030 (9th Cir. 2008).

A court may grant summary judgment regarding any affirmative defense or *part thereof*. Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim *or* defense—or the part of each claim or defense—on which summary judgment is sought").

## ARGUMENT

### I. The Court Should Grant Summary Judgment to Tekion on All Claims, Because CDK's Claims Are Time-Barred

CDK has known since at least 2019 that Tekion was accessing its DMS through dealer credentials. That is indisputable, based on CDK's own allegations, e.g., FAC ¶ 66; on CDK's 2019 cease-and-desist letter to Tekion, Ex. 34 (2019 Cease-and-Desist Letter) at 2; and on the extensive discovery detailed above, which shows not only that CDK knew about Tekion's access, but also that CDK monitored Tekion's access for years for its own benefit.

Even applying the most generous applicable statute of limitations—the four-year period tied to CDK's UCL claim—CDK's deadline for commencing this action was in 2023.[3] Because CDK failed to bring suit in a timely manner, Tekion is entitled to summary judgment on all claims as a matter of law. *See Experexchange, Inc. v. Doculex, Inc.*, No. C-08-03875 JCS, 2009 WL 3837275, at *20 (N.D. Cal. Nov. 16, 2009) (granting summary judgment on statute of limitations grounds because plaintiff had actual and constructive notice of defendant's conduct many years before plaintiff brought suit).

#### A. CDK's Trade Secret Claims are Barred by the Statute of Limitations

CDK's trade secret misappropriation claims depend on CDK's allegation that its "trade secrets are embedded within the DMS," and that Tekion accessed the DMS without its

[3] The relevant statutes of limitations are as follows: CFAA (2 years, *see* 18 U.S.C. § 1030(g)); DMCA (3 years, *see* 17 U.S.C. § 507(b)); DTSA (3 years, *see* 18 U.S.C. § 1836(d)); CCDAFA (3 years, *see* Cal. Pen. Code § 502(e)(5)); CUTSA (3 years, *see* Cal. Civ. Code § 3426.6); tortious interference with contract (2 years, *see* Cal. Civ. Proc. § 339); UCL (4 years, *see* Bus. & Prof. Code § 17208).

authorization. FAC ¶¶ 218–23, 271–76. These claims are time-barred by the DTSA's and CUTSA's three-year statutes of limitations. 18 U.S.C. § 1836(d); Cal. Civ. Code § 3426.6. Both statutes provide that the three-year period begins running on the date the misappropriation "is discovered" or "by the exercise of reasonable diligence should have been discovered." *Id.* And under both statutes, "a continuing misappropriation constitutes a single claim." *Id.*

At latest, CDK discovered the conduct underlying its trade secret misappropriation allegations in 2019. [redacted] Ex. 17 (Johnson Tr.) 22:8–23:11. And CDK's May 2019 cease and desist letter also showed awareness of that access. *See* Ex. 34 (2019 Cease-and-Desist Letter stating "[i]t has come to CDK's attention that Tekion Corporation has been accessing" and "utilizing the functionality of" CDK's DMS). At a minimum, CDK's awareness of Tekion's access put CDK on inquiry notice: with reasonable diligence, CDK could have discovered the alleged misappropriation between 2019 and 2021. *See, e.g., Wang v. Palo Alto Networks, Inc.*, No. C 121-05579 WHA, 2014 WL 1410346, at *5 (N.D. Cal. Apr. 11, 2014) (quoting *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807–08 (Cal. 2005) ("Plaintiffs are required to conduct a reasonable investigation after becoming aware of an injury, and are charged with knowledge of the information that would have been revealed by such an investigation").

Because CDK's trade secret misappropriation claims expired in or before it filed its Complaint, Tekion is entitled to summary judgment on Counts III and V of the FAC.

**B. CDK's DMCA Claim Is Barred by the Statute of Limitations**

CDK's DMCA claim is also fully time-barred by the three-year statutes of limitations. 17 U.S.C. § 507(b). A DMCA claim "accrues—and the statute of limitations begins to run—when a party discovers, or reasonably should have discovered, the alleged infringement." *Oracle Am., Inc. v. Hewlett Packard Ent. Co.*, 971 F.3d 1042, 1047 (9th Cir. 2020).

Like its trade secret misappropriation claims, CDK knew the factual basis for its DMCA claim by 2019, and no later than 2021. CDK's DMCA claim is based on CDK's alleged "copyrights over its proprietary DMS system," and Tekion's alleged circumvention of "technological measures employed by CDK to effectively control access to" that system. FAC ¶¶ 197, 203. [redacted]

FENWICK & WEST LLP
ATTORNEYS AT LAW

[redacted]. And CDK's 2019 cease-and-desist letter expressly invoked the DMCA and accused Tekion, over five years earlier, of the same circumvention conduct underlying its FAC. Ex. 34 (2019 Cease-and-Desist Letter) at 3. Moreover, the Ninth Circuit has clarified that, while copyright law sometimes recognizes successive violations as new "accruals" for statute of limitations purposes, "there is no parallel separate-accrual rule that applies to [plaintiff's] DMCA claim." *Media Rights Techs., Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1025–26 (9th Cir. 2019) (dismissing DMCA claim as time-barred because a new claim does not accrue based upon subsequent use of software that was copied by "circumventing measures"). Thus, the only clock relevant to CDK's DMCA claim began ticking when CDK knew, or should have known, that Tekion circumvented an access control for the first time. Later instances of the same alleged conduct do not restart that clock. It started in 2019 and ran out in 2022 and certainly no later than 2024. Tekion is therefore entitled to summary judgment on Count II of the FAC.

### C. CDK's CFAA and CCDAFA Claims Are Barred by the Statute of Limitations

Under the CFAA, CDK has "2 years of the date of the act complained of or the date of the discovery of the damage" to bring suit. 18 U.S.C. § 1030(g). The CCDAFA applies the same rule to a three-year limitations period. Cal. Pen. Code § 502(e)(5). In the May 2019 cease-and-desist letter, CDK challenged Tekion's access *and* acknowledged the alleged associated damage. Ex. 34 (2019 Cease-and-Desist Letter) (claiming that Tekion's DMS access "creates significant security risks and degrades system performance"). This is all that is required to start the clock on CDK's CFAA and CCDAFA claims. *See, e.g.*, *Smartix Int'l Corp. v. MasterCard Int'l LLC*, No. 06 CV 5174(GBD), 2008 WL 4444554, at *3–4 (S.D.N.Y. Sep. 30, 2008), *aff'd*, 355 F. App'x 464 (2d Cir. 2009) (rejecting argument that CFAA clock starts only after a forensic reconstruction of data to investigate scope of damage).

Later instances of Tekion's DMS access do not revive CDK's expired claims. That Tekion continued accessing CDK's DMS in exactly the same manner as when CDK first discovered it is "irrelevant for timeliness purposes." *Meyer Tech. Solutions, LLC v. Kaegem Corp.*, No. 17 C 281, 2017 WL 4512918, at *1 (N.D. Ill. Oct. 10, 2017) (dismissing entire CFAA claim as time-barred even though the defendant allegedly "continued accessing certain [of Defendant's] business

FENWICK & WEST LLP
ATTORNEYS AT LAW

information housed on the [] platform in the same fashion" within the limitations period). "The 'continuing violation' exception to federal statutes of limitations only allows suit to be delayed in cases where the first instance of misconduct may be insufficient—and indeed the 'cumulative effect' of a series of acts is necessary—to make out an actionable claim." *Id.*; *accord Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 137–38 (N.D. Cal. 2020) (holding the continuing violation doctrine inapplicable where the injury became apparent at first access and did not result from an "accumulation of a series of harms"). Here, CDK does not allege that its injury built up quietly over time; [redacted]. Ex. 15 (LaGreca 30(b)(6) Memo); Ex. 18 (LaGreca 30(b)(6) Tr.) 100:14–101:7. CDK knew of the very same alleged DMS "degradation" tied to Tekion's DMS access in both 2019 and 2024. CDK's CFAA and CCDAFA claims are therefore time-barred, and Tekion is entitled to summary judgment on Counts I and IV. At a minimum, even if a later act could give rise to a timely claim, CDK's damages must be limited to those stemming from acts occurring on or after February 10, 2022 (for purposes of the CCDAFA) or February 10, 2023 (for purposes of the CFAA).

### D. CDK's Tortious Interference and UCL Claims Are Barred by the Statute of Limitations

In California, tortious interference claims must be brought within two years of when the claim accrued. Cal. Civ. Proc. Code § 339(1); *Knoell v. Petrovich*, 76 Cal. App. 4th 164, 168 (1999). A claim under California's Unfair Competition Law must be "commenced within four years after the cause of action accrued." Cal. Bus. & Prof. Code § 17208. Under both statutes, a claim accrues when the plaintiff discovers, or has reason to discover, the cause of action. *Wolf v. Travolta*, 167 F. Supp. 3d 1077, 1102 (C.D. Cal. 2016) (dismissing tortious interference and UCL claims as time-barred). CDK did not merely *suspect* that Tekion was accessing its DMS using dealers' credentials. It *knew* of the access, watched it in real time, and let it continue for its own benefit for over five years before suing Tekion in February 2025.

CDK cannot save its time-barred claims by recasting Tekion's access as a "continuing" wrong. California courts apply continuing-wrong principles narrowly, and courts in this Circuit have consistently refused to extend them to tortious interference claims. *See Factory Direct*

FENWICK & WEST LLP
ATTORNEYS AT LAW

*Wholesale, LLC v. iTouchless Housewares & Products, Inc.*, 411 F. Supp. 3d 905, 918–19 (N.D. Cal. 2019) ("[T]he Court has not found [] a case that applied the California continuous accrual doctrine to tortious interference claims"); *Wolf*, 167 F. Supp. 3d at 1104–06 (rejecting both the continuing violation and continuous accrual doctrines for tortious interference claims); *Nano-Second Tech. Co., Ltd. v. Dynaflex Int'l.*, No. CV 10-9176 RSWL (MANx), 2013 WL 1855828, at *3 (C.D. Cal. May 1, 2013) ("[T]he theory of continuous accrual does not toll the statute of limitations for tortious interference claims"). CDK's UCL claim fares no better. Since Tekion owes no "recurring obligation" to CDK, the continuous accrual doctrine is inapposite. *See Luke v. Sonoma Cnty*, 43 Cal. App. 5th 301, 306–10 (2019) (declining to apply continuous accrual doctrine to UCL claim). Every element of CDK's tortious interference and UCL claims was complete at a discrete point in time, no later than 2019, when CDK learned of the contested activity. CDK's tortious interference and UCL claims are therefore barred.



## II. Tekion Is Entitled to Summary Judgment on its Affirmative Defense of Laches

A district court may grant summary judgment to defendant on the basis of laches. *Am. Int'l Grp., Inc. v. Am. Int'l Bank*, 926 F.2d 829, 831 (9th Cir. 1991); *see Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 833–34 (9th Cir. 2002) (affirming grant of summary judgment to defendant on basis of laches). "'[T]he party asserting laches . . . must show that (1) [plaintiff's] delay in filing suit was unreasonable, and (2) [defendant] would suffer prejudice caused by the delay if the suit were to continue.'" *Jarrow*, 304 F.3d at 838.

### A. CDK's Delay in Filing Suit Was Unreasonable

Determining whether CDK's delay in filing suit was unreasonable is a two-part inquiry. First, the Court assesses the length of CDK's delay, which is measured from the time CDK knew or should have known about its potential cause of action. *Id.* Second, the Court assesses the reasonableness of CDK's delay, factoring in (i) the time allotted by analogous statutes of limitations, and (ii) any legitimate excuse proffered by CDK. *Id.*

Because CDK's delay—more than five years from discovery—exceeds the statutes of limitations associated with every count in the FAC, a presumption in favor of laches applies. *See, e.g.*, *Harman Int'l Indus., Inc. v. Jem Accessories, Inc.*, 668 F. Supp. 3d 1025, 1038 (C.D. Cal.

2023). No facts justify CDK's delay or otherwise rebut the presumption. [redacted] Ex. 4 (CDK Supp. Rog Responses). [redacted]. *See supra* pp. 7–9. This Court has already rejected CDK's efforts to explain away a similar extended delay in pursuing InDesign. In seeking a preliminary injunction against InDesign, CDK claimed it had "only recently learned the scope of InDesign's access," but the Court found that CDK's declarations did "not supply any investigatory justification for its years-long delay," and that CDK "does not explain why it delayed its investigation . . . for all those years." Ex. 43 (Dkt. 86 at 8) ("PI Order"). CDK's delay is even more glaring here. It knew of Tekion's access, tracked it for years, and used that information for competitive purposes before going to the Court claiming that it had only recently learned of the access.

And even if CDK had in fact been unaware of every dealership account that Tekion accessed, a party's "purported ignorance" does not excuse its delay in the face of clear evidence that it should have known of the facts supporting its belated claim. *See Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 999 (9th Cir. 2006) (affirming summary judgment ruling that claim was barred by laches); *see also Saul Zaentz Co. v. Wozniak Travel, Inc.*, 627 F. Supp. 2d 1096, 1114 (N.D. Cal. 2008) (a party's "subjective ignorance and lack of curiosity . . . are not valid excuses"). Nor can CDK avoid laches by pointing to later instances of Tekion's access. Where conduct is ongoing, "there may be undue delay even as to later conduct where," as here, "that conduct is identical in all relevant respects to earlier conduct." *Experexchange*, 2009 WL 3837275, at *22 (citing *Danjaq LLC v. Sony Corp.,* 263 F.3d 942, 952–53 (9th Cir. 2001)). CDK did not merely sleep on its rights. It chose not to act so that it could gain competitive intelligence on Tekion and try to retain dealers who were at risk of leaving CDK, and it sued only after Tekion filed its antitrust case challenging CDK's withholding of dealer data.

**B. CDK's Yearslong Delay Prejudiced Tekion**

1. As a result of CDK's intentional delay, Tekion must now defend conduct that CDK knew about and tacitly condoned for years. While CDK was covertly monitoring Tekion's activity

FENWICK & WEST LLP
ATTORNEYS AT LAW

on its DMS, Tekion invested capital, hired personnel and scheduled conversions and "Go Live" dates with customers premised on its ability, unchallenged for years, to access the dealers' data in CDK's DMS, sufficiently in advance of the migration to Tekion to validate the data and train dealer employees on Tekion's DMS. CDK's calculated silence while Tekion [redacted],[4] of which its DMS is the flagship product, created classic detrimental reliance. Ex. 49 (Declaration of Jacob Shulman In Support of Tekion Corp.'s Motion for Summary Judgment ("Shulman Decl.")) ¶ 5; *see also* , *Jarrow*, 304 F.3d at 839–40 (holding that defendant was prejudiced because an earlier-filed suit would have allowed defendant to allocate its resources differently); *Whittaker Corp. v. Execuair Corp.*, 736 F.2d 1341, 1347 (9th Cir. 1984) (finding prejudice where the defendant made "capital investments to expand its business" during the plaintiff's delay). CDK's tacit acknowledgment of the right of dealers to authorize Tekion to use their credentials to access their data on CDK's DMS, and CDK's acquiescence of Tekion access using those credentials, became central to Tekion's conversion model. Tekion would not have made these sizeable investments in its business over the course of more than five years if it did not believe it could timely and accurately migrate dealers' data from their existing DMS provider to Tekion with sufficient time to validate the data and train dealerships on Tekion's DMS. Ex. 49 (Shulman Decl.) ¶ 5.

CDK's delay is all the more prejudicial given how CDK began introducing artificial barriers to a dealer's ability to move its data from CDK's DMS to Tekion's DMS. [redacted] Ex. 44 (Snodgrass 30(b)(6) Tr.) 43:15–20, 71:3–6, 94:21–95:4, 107:7–12. [redacted] *See* Ex. 45 (CDK_00699801) [redacted]); Ex. 46 (CDK_01383301) ([redacted]

---

[4] [redacted] Ex. 49 (Shulman Decl.) ¶ 5.



FENWICK & WEST LLP ATTORNEYS AT LAW

final 30 days). Meanwhile, Tekion entered into many contracts with dealerships that [redacted]. *See* Ex. 47 (TEKION01729843) [redacted]). To meet its contractual commitments, Tekion had to facilitate the migration and integration of dealer data, including through early access for validation and testing. Tekion signed those agreements believing, based on CDK's years of acquiescence, that it could continue helping dealers extract their data from CDK's DMS using dealer-provided credentials. CDK then waited to sue until Tekion had invested enormous resources into its conversion infrastructure and processes, and was locked into those contractual commitments, knowing that its own policies and offerings (e.g., Data Your Way) made migration difficult. Thus, through "continued engag[ement] in its existing practices" during CDK's delay, Tekion "incurr[ed] additional potential liability," creating classic prejudice. *Whittaker*, 736 F.2d at 1347; *see also Harman*, 668 F. Supp. 3d at 1044 ("[C]ontinued accrual of liability during [delay] period is exactly the type of detrimental reliance laches seeks to prevent").

CDK's delay was intentional, moreover. CDK knew that Tekion had access to its DMS, [redacted] *See supra* pp. 8–9. Each day that CDK sat on its rights was another day it gained valuable, hidden insight into Tekion's business. Only when Tekion sued CDK for antitrust violations did CDK decide that publicly framing Tekion as a "hacker" and scaring potential dealers away from a competitive option, outweighed the advantages of surveilling Tekion in secret. This is yet another form of prejudice that laches guards against. *See Danjaq*, 263 F.3d at 951 (recognizing prejudice where a plaintiff "stand[s] inactive" while defendant "spends large sums of money" then "intervene[s] only" when doing so suits plaintiff).

## III. The Court Should Grant Summary Judgment on the CFAA and CCDAFA Claims Because CDK's Acquiescence to Tekion's Conduct Constitutes Authorization of It

### A. Tekion Had Inherent Authorization to Access CDK's DMS, Which CDK Failed to Revoke

To prevail on its CFAA claim, CDK must establish that Tekion accessed its system "without authorization." 18 U.S.C. § 1030. The Ninth Circuit's "[c]ase law is clear that the misuse or misappropriation of information through *authorized access* is not covered by the CFAA." *Novoselskiy v. New U Women's Clinic & Aesthetics PLLC*, No. 4:24-CV-05155-RLP, 2025 WL 2524224, at *4 (E.D. Wash. Sep. 2, 2025) (emphasis added); *see also LVRC Holdings LLC v. Brekka,* 581 F.3d 1127, 1135 (9th Cir. 2009) (limiting CFAA liability to scenarios where party "has not received permission to use the computer for any purpose").

The factual record leaves no doubt that Tekion accessed CDK's DMS only with the express authorization of the dealers whose accounts it accessed, using credentials that those dealers had the right to create and that they shared with Tekion. *See supra* pp. 4–5. Neither Tekion nor CDK's dealer customers breached any technical barrier to hack into the dealers' accounts. On the contrary, [redacted] *See supra* p. 4. And CDK did not know merely that its credentials *could* be shared with third parties, it knew for more than five years that (i) dealers were sharing their credentials with Tekion (and had been doing so with other third parties for far longer), *and* (ii) Tekion was using those credentials to access CDK's DMS. *See supra* pp. 6–9.

Nor can CDK establish a CFAA violation based on an alleged revocation of Tekion's access before it sent its December 2024 cease-and-desist letter. Under Ninth Circuit precedent, "revocation" requires "clear[ ] notificat[ion]." *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1069 (9th Cir. 2016); *see also Ticketmaster L.L.C. v. Prestige Entm't, Inc.*, 306 F. Supp. 3d 1164, 1175 (C.D. Cal. 2018) (merely "admonish[ing] Defendants for violating the [terms of use]" does not "actually revoke access authority"). After sending its 2019 letter and receiving Tekion's response, and after its employee Loy Johnson began tracking Tekion's access, CDK sat on its self-proclaimed rights for years. [redacted]



FENWICK & WEST LLP ATTORNEYS AT LAW

[redacted]. But its two-plus year delay in taking even this action can best be explained only as an anticompetitive effort to impede dealers' ability to switch to Tekion, rather than a clear revocation of access that CDK had acquiesced for years. Ex. 4 (CDK Supp. Rog Responses). Notably, when CDK disabled these accounts, it did not send a demand letter clearly revoking access, nor did it assert its claims in court. *See* Ex. 48 (Livingstone Tr.) 63:25–65:2. Silently disabling of accounts, without explanation, is the opposite of the "clear notification" that *Power Ventures* requires.

CDK's own conduct during the period confirms the point. Even if it did disable certain accounts, CDK was aware that Tekion continued to assist other dealers in accessing their data from CDK's DMS using dealer-provided credentials without objection. A party that spends years monitoring access without complaint, and permits that access to continue, has not "affirmatively rescinded" it. *Stern v. Weinstein*, No. CV-09-1986-GHK (PLAx), 2010 WL 1145971, at *2 (C.D. Cal. Jan. 6, 2010) (citing *Brekka*, 581 F.3d at 1130–35) (CFAA liability "require[s] affirmative conduct terminating authorization").

The CCDAFA parallels the CFAA and prohibits access "without permission." Cal. Penal Code § 502. For the same reasons CDK's acquiescence defeats CDK's CFAA claim, it defeats the CCDAFA claim; access that a computer owner knowingly permits for years is not access "without permission."

## IV. CDK's Yearslong Acquiescence to Tekion's Conduct Defeats Its DMCA Claim

The DMCA's anti-circumvention provision prohibits "circumvention" of a "technological measure that effectively controls access" to a copyrighted work. 17 U.S.C. § 1201(a)(1)(A). To "circumvent" means "to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner." *Id.* § 1201(a)(3)(A). Because Tekion exclusively logged into CDK's DMS with valid credentials, through CDK-approved networks, CDK cannot establish "circumvention" as a matter of law.

Because CDK knew of and indeed tolerated dealers sharing access credentials with Tekion, Tekion did not act "without the authority of the copyright owner." *See id.* § 1201(a)(3)(A). Courts



FENWICK & WEST LLP
ATTORNEYS AT LAW

recognize an "implied license" when a copyright owner "engages in conduct from which [another party] may properly infer that the owner consents to his use." *Stevens v. Corelogic, Inc.*, 194 F. Supp. 3d 1046, 1053–54 (S.D. Cal. 2016). Among the ways implied consent may be shown are "[s]ilence or lack of objection" and "[c]ommon industry practice." *Id.* CDK's years of silence—especially in the face of extensive, industry-wide credential-sharing—negates the "without [] authority" element of CDK's DMCA claim, warranting summary judgment in favor of Tekion.

## V. Tekion Is Entitled to Summary Judgment on CDK's Trade Secret Counts Under the DTSA and CUTSA

In addition to being time-barred, CDK's yearslong acquiescence of Tekion's access to its DMS forfeited any claim to trade secret ownership in the elements of its DMS that Tekion observed. Courts have analyzed DTSA and CUTSA claims together "because the elements are substantially similar." *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657 (9th Cir. 2020). To qualify as a trade secret under either statute, CDK's information must *actually be kept secret*, deriving value from the fact that it is neither "generally known" nor "readily ascertainable" to others. *Id.* at 661. This requires that the owner of the information take "reasonable measures to keep such information secret." *Id.* at 660.

CDK did not take reasonable measures to keep its alleged (and unidentified) trade secrets a secret. CDK claims its alleged trade secrets are "embedded within the DMS", FAC ¶ 218, but the facts are to the contrary. First, [redacted] *See supra* pp. 4, 6–7. Information that thousands of dealers can access and pass to others through accounts that CDK cannot reliably identify, is not information that CDK has kept secret. *See, e.g.*, *Gemisys Corp. v. Phoenix Am., Inc.*, 186 F.R.D. 551, 560 (N.D. Cal. 1999) ("[M]ultiple failures by a party to protect alleged trade secret, combined with the extensive disclosure of such information, [is] sufficient to extinguish a party's property right in the information"). CDK will likely point to the MSA provision barring dealerships from giving third parties access to the DMS, but a contract restriction that CDK cannot monitor and, by its own account, has not enforced, is not

FENWICK & WEST LLP
ATTORNEYS AT LAW

a reasonable measure to maintain secrecy. *See Silicon Image, Inc. v. Analogix Semiconductor, Inc.*, No. C-07-00635 JCS, 2008 WL 166950, at *17 (N.D. Cal. Jan. 17, 2008) (finding that plaintiff's NDAs did not reflect reasonable secrecy efforts where plaintiff "sometimes disregarded and failed to respect confidentiality designations and associated obligations").

Second, CDK permitted Tekion, its direct competitor, to access its DMS, and the alleged "trade secrets" housed within it, repeatedly, *for years*, without consequence. [redacted] Ex. 4 (CDK Supp. Rog Responses). An owner that knows a competitor is accessing its alleged secrets, keeps handing that competitor access to its supposed confidential information, and for more than five years relies on countermeasures it admits are imperfect, has not made "efforts that are reasonable under the circumstances to maintain [their] secrecy." Cal. Civ. Code § 3426.1(d)(2); *see* 18 U.S.C. § 1839(3)(A); *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984) ("[i]f an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information . . . his property right is extinguished").

**VI. Tekion Is Entitled to Summary Judgment on CDK's Claim for Equitable Relief Because CDK Cannot Show a Threat of Irreparable Harm**

Permanent injunctive relief is available only when a plaintiff proves: "(1) . . . an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Pitt v. Metro. Tower Life Ins. Co.*, 675 F. Supp. 3d 1073, 1087 (S.D. Cal. 2023) (citing *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). CDK's request fails at the first factor, and Tekion is entitled to summary judgment on it.

Among other reasons, which Tekion might address in future motions, CDK's yearslong acquiescence to Tekion's conduct forecloses its claim of irreparable harm. *See, e.g.*, *Protech Diamond Tools v. Liao*, No. C 08-3684 SBA, 2009 WL 1626587, at *6 (N.D. Cal. June 8, 2009)

FENWICK & WEST LLP
ATTORNEYS AT LAW

(delay filing suit rebuts assertion of irreparable injury). The undisputed record establishes that CDK learned of Tekion's access no later than 2019, then closely monitored it for years. CDK did not seek injunctive relief until February 2025, and, in the interim, took no reasonable measures to shut down Tekion's access. Instead, the record shows that CDK made a deliberate choice to let that access continue, so that it could covertly extract competitive intelligence from Tekion's access patterns. Having slept on its rights for years, CDK cannot now credibly claim an emergency requiring the extraordinary remedy of a permanent injunction. *See Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213–14 (9th Cir. 1984) ("[A] long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm"); *Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985) (affirming denial of preliminary injunction based on delay alone); *see also* Ex. 43 (PI Order at 7) (denying CDK's motion for a preliminary injunction against InDesign because CDK knew of InDesign's conduct for years and "did not act diligently" after discovering it). Tekion is entitled to summary judgment on CDK's demands for equitable relief.

FENWICK & WEST LLP
ATTORNEYS AT LAW

## CONCLUSION

For the foregoing reasons, Tekion respectfully requests that the Court grant summary judgment, or in the alternative partial summary judgment, in Tekion's favor.

Dated: October 8, 2026

FENWICK & WEST LLP

By: */s/ Erica R. Sutter*

Tyler G. Newby (CSB No. 205790)
FENWICK & WEST LLP
One Front Street, 33rd Floor
San Francisco, CA 94111
Telephone: 415.875.2300
Facsimile: 415.281.1350
tnewby@fenwick.com

Erica R. Sutter (CSB No. 309182)
Adam Gahtan (*pro hac vice*)
Kevin X. McGann (*pro hac vice*)
Noah Solowiejczyk (*pro hac vice*)
Cortnay-Beth Cymrot (*pro hac vice*)
FENWICK & WEST LLP
902 Broadway, Floor 18
New York, NY 10010-6035
Telephone: 212.430.2600

esutter@fenwick.com
agahtan@fenwick.com
kmcgann@fenwick.com
nsolowiejczyk@fenwick.com
ccymrot@fenwick.com

*Attorneys for Defendant Tekion Corp.*

FENWICK & WEST LLP
ATTORNEYS AT LAW